

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FT. LAUDERDALE DIVISION

CASE NO. 00-6227-CIV-MORENO
Magistrate Judge: Dubé

JACQUELINE IAIA,

    Plaintiff,

v.

GALEN HOSPITAL-PEMBROKE PINES,
INC., f/d/b/a PEMBROKE PINES
HOSPITAL,

    Defendant.
_____/

### DEFENDANT GALEN HOSPITAL—PEMBROKE PINES, INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

The Defendant, GALEN HOSPITAL—PEMBROKE PINES, INC., f/d/b/a PEMBROKE PINES HOSPITAL ("Galen Hospital" or "Defendant"), hereby submits this Memorandum of Law in support of its Motion for Summary Judgment as to all claims.

    I.    **SUMMARY OF FACTAL BACKGROUND**[1]

The Plaintiff, JACQUELINE IAIA, was employed by Defendant at Pembroke Pines Hospital (the "Hospital") as the Director of Marketing and Public Relations from October, 1991, until her job was eliminated in November, 1993.

---

[1] As required by Local Rule 7.5, a *Statement of Undisputed Material Facts* is being filed simultaneously with this Motion and Memorandum of Law.



In November of 1993, the Hospital went through a reduction in work force due to declining patient census and financial losses. Approximately fifty (50) employees were adversely affected by this employee reduction. In connection with the reduction, the Hospital's Chief Executive Officer made the decision to eliminate the position of Director of Marketing and Public Relations. Ms. Iaia was placed on a six month unpaid leave of absence with the understanding that if not recalled, she would be removed from the Hospital's employment. In May of 1994, Ms. Iaia was advised that her employment was terminated. Ms. Iaia claims her elimination was the result of age discrimination. She was forty-five (45) years old at the time of these events.

On November 14, 1994, Ms. Iaia filed her Charge of Discrimination with the Florida Commission on Human Relations. The Commission failed to make any determination within 180 days of the filing of her Charge, as required by Florida Statute § 760.11(3). This lawsuit was commenced on January 31, 2000, more than five years later, and consists of two counts as follows:

> Count I -   Age Discrimination under the Florida Civil Rights Act of 1992, Fla. Stat. §760.01 et seq.[2] ("FCRA").
>
> Count II -  Age Discrimination under the Age Discrimination in Employment Act of 1967, 28 U.S.C. § 621 et seq. ("ADEA").

Because Ms. Iaia failed to file her lawsuit within the time limitations of the FCRA, and because she can neither state a prima facie case nor rebut the Hospital's legitimate,

---

[2] Since the FCRA was patterned after federal statutes, federal case law is applicable to construing its provisions. See McKenzie v. EAP Management Corp., 40 F.Supp.2d 1369-1375 n. 3 (S.D. Fla. 1999).

nondiscriminatory reasons for her layoff, Galen Hospital is entitled to summary judgment on her claims.

## II. – SUMMARY JUDGMENT STANDARD

Rule 56 of the Federal Rules of Civil Procedure provides that a summary judgment may be entered:

> if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Here, Galen Hospital bears the initial burden of demonstrating that there is no genuine issue of material fact to support Plaintiff's claims. *American Viking Contractors, Inc. v. Scribner Equipment, Inc.*, 745 F.2d 1365, 1369 (11th Cir. 1984). Once Galen Hospital meets this burden, the Plaintiff must produce evidence demonstrating the existence of a triable issue of fact. The question then is "not whether there is literally no evidence, but whether there is any evidence upon which a jury could properly proceed to find a verdict for the party producing it, upon whom the onus of burden of proof is imposed." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). Initially, the movant's burden is limited to pointing out the likelihood that the party with the substantive burden of proof cannot satisfy its burden. The moving party is then entitled to judgment as a matter of law if the opposing party fails to establish the essential elements with respect to which it has the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).

A simple factual dispute is not in itself sufficient to survive a motion for summary judgment. The factual issue(s) presented by Ms. Iaia must be outcome determinative. *Anderson*, 477 U.S. at 248. Moreover, the plaintiff is required to show more than the existence of some "metaphysical doubt" as to material facts. "Where the record as a whole could not lead a rational

trier of fact to find for the nonmoving party, there is not a genuine issue for trial." *Matsushita Electrical Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

In an employment discrimination case, the plaintiff has the initial burden of establishing a prima facie case of discrimination. If the initial burden is met, the defendant must then produce legitimate non-discriminatory reasons for the adverse employment action at issue. Because the employer need only produce, not prove, a non-discriminatory reason, this burden is exceedingly light. *Combs v. Plantation Planters*, 106 F.3d 1519, 1528 (11th Cir. 1997). The burden then shifts to the plaintiff to establish that the employer's proffered reasons were pretextual and that the adverse employment action was motivated by an intent to discriminate, such that the action would not have been taken but for the plaintiff's membership in a protected group. *Reeves v. Sanderson Plumbing Products, Inc.*, 120 S.Ct. 2097 (2000).

To meet her burden of establishing pretext, the plaintiff must present "concrete evidence in the form of specific facts" demonstrating that the employer's proffered reason was actually pretextual. *Earley v. Champion International Corp.*, 907 F.2d 1077, 1081 (11th Cir. 1990). The plaintiff's evidence must be sufficient to permit a reasonable factfinder to conclude that the reasons given by the employer were not the real reasons for the adverse employment action. *Combs*, 106 F.3d at 1528. Conclusory allegations of discrimination are insufficient to raise an inference of pretext or discriminatory intent, particularly where an employer offers extensive evidence of non-discriminatory reasons for its actions. *Elrod v. Sears, Roebuck and Co.*, 939 F.2d 1466, 1471 (11th Cir. 1991).

Under the above standard for summary judgment review, the Court of Appeals for the Eleventh Circuit has frequently found summary judgment appropriate in employment discrimination cases. *See, e.g., Combs*. In this case, Ms. Iaia has failed to bring forth evidence

necessary to sustain her claims for age discrimination. There are no genuine issues of material fact that could lead a rational jury to find Galen Hospital liable for discrimination. Defendant is therefore entitled to summary judgment.

### III. – ARGUMENT

1. **PLAINTIFF'S FCRA CLAIM IS TIME BARRED**

Count I asserts a claim for age discrimination under the Florida Civil Rights Act of 1992, Fla. Stat. Ch. 760. Because Ms. Iaia failed to comply with the specific time limitations stated within the Act, her claim is untimely and subject to summary judgment.

The FCRA provides that any person aggrieved by a violation of its provisions has 365 days from the date of the alleged violation to file a complaint of discrimination with the Commission. Fla. Stat. § 760.11(1). Section 760.11(3) provides that the Commission shall investigate the allegations in the Complaint and that "within 180 days of the filing of the complaint, the Commission shall determine if there is reasonable cause to believe that discriminatory practice has occurred. . ." If the Commission determines that reasonable cause exists, the aggrieved individual has one year to file an appropriate lawsuit: "a civil action brought under this section shall be commenced no later than 1 year after the date of determination of reasonable cause by the Commission." Fla. Stat. § 760.11(5).

In the instant case, the Commission failed to make its determination within the required 180-day period. In *Joshua v. City of Gainesville*, 2000 WL 122755 (Fla. 2000), the Supreme Court recently held that the one-year statute of limitations found in Section 760.11(5) does not apply when the Commission fails to make its determination within the 180 day period. Instead, courts should apply the four year statute of limitations found at Florida Statute Section 95.11(3)(f), which governs actions founded on a statutory liability. *Id.* at 2. As a result, if the Commission

5

makes its determination of reasonable cause within 180 days, then the one year limitations period of Section 760.11(5) applies and requires the plaintiff to commence a civil action within one year from the date of that determination. But if, as here, the Commission fails to make a determination of reasonable cause within 180 days, then the four year limitations period of Section 95.11(3)(f) controls, and a plaintiff has four years from the date of the discriminatory act within which to file a civil action.

> We hold that the statute of limitations for causes of action based on statutory liability, section 95.11(3)(f), applies to situations where the Commission has not made a reasonable cause determination within 180 days.

*Id.* at 8. The Florida Supreme Court, therefore, rejected earlier decisions which had concluded that if the Commission failed to make its determination within 180 days, then the one-year statute of limitations of Section 760.11(5) begins to run at the expiration of that 180-day period. *E.g. Milano v. Moldmaster, Inc.*, 703 So.2d 1093 (Fla. 4th DCA 1997).

Applying the four year limitations period of Section 95.11(3)(f), Ms. Iaia's FCRA claim is untimely and subject to summary judgment. On **November 11, 1993**, she was advised that her position was being eliminated as part of the Hospital's reduction in work force, and that she was being placed on a six month unpaid leave of absence. The termination memorandum she received, and signed, stated that "if, at the end of the six months, you are not recalled, you will be removed from our employment records." Thereafter, on May 5, 1994, Ms. Iaia was advised in writing that she was not being recalled and her employment was terminated as of **May 11, 1994**. Ms. Iaia filed her claim of discrimination with the Commission on November 14, 1994. At the latest, Ms. Iaia's cause of action for age discrimination accrued on **May 11, 1994**—the date she learned her

employment was terminated.[3] Therefore, she had four years from that date within which to file her suit, or no later than **May 11, 1998**, since Section 95.11(3)(f) bars actions founded on a statutory liability if they are not commenced within four years from the time the cause of action accrues. Ms. Iaia filed her lawsuit on **January 31, 2000**, more than twenty (20) months after the deadline of this four year limitations period.

Defendant did nothing to interfere with Ms. Iaia's right to bring her action, or even to request a Right to Sue letter. In fact, Defendant was unaware of the very existence of Plaintiff's claim until the end of 1997, since the Commission failed to even notify Defendant of Plaintiff's Charge of Discrimination.[4] Ms. Iaia's claim was not filed within the limitations period specifically addressed in *Joshua*. As such, her FCRA claim is time barred, and Galen Hospital is entitled to summary judgment on Count I.

2. **PLAINTIFF CANNOT STATE A PRIMA FACIE CLAIM OF AGE DISCRIMINATION**

In the case of a reduction-in-force or a job elimination, the elements of a prima facie case have been slightly modified since a reduction-in-force plaintiff is normally unable to show that she was replaced by another person. In order to state a prima facie case of age discrimination involving a reduction-in-force, Ms. Iaia must show (1) that she was within the protected age

---

[3] Plaintiff's cause of action accrues at the time of the alleged discriminatory act. *See Delaware State College v. Ricks*, 449 US 250, 258 (1980)(statute of limitations period under Title VII commences at time of discriminatory acts); *Saint Petersburg Motor Club v. Cook*, 567 So.2d 488, 489 (Fla. 2nd DCA 1990) (citing *Ricks*, limitations period under FCRA commenced on date of alleged discriminatory decision).
[4] 8/14/00 Deposition of Joseph A. Cash, p. 32.

group, (2) that she suffered some adverse employment action, (3) that she was qualified for her position or to assume another available position at the time of her discharge, and (4) that there is evidence from which a reasonable factfinder could conclude Galen Hospital intended to discriminate on the basis of age in making its employment decision. *Mitchell v. USBI Company*, 186 F.3d 1352, 1354 (11th Cir. 1999). Ms. Iaia cannot meet the third element of proof since there were no other positions available at the time of her discharge, nor can she meet the fourth element of proof since she lacks evidence that Galen Hospital intended to discriminate against her on the basis of age.

At the outset, it is clear that the reduction-in-force at the end of 1993 was a legitimate management decision based on the Hospital's poor financial condition. Prior to 1993, the Hospital had been affiliated with Humana and benefited through the admission of Humana's health insurance patients. That relationship changed in early 1993 when the ownership of Pembroke Pines Hospital was separated from Humana: Humana no longer routinely referred its patients to the Hospital and, further, changed its reimbursement rates. At the same time, the Hospital's major competitor (Memorial Hospital West) opened a new facility several miles away. These combined events led to a significant decline in patient census at the Hospital. The resulting financial losses led hospital management to implement an economically based reduction in its employee work force in order to offset operating losses and reduce expenses.

Financial losses constitute a legitimate reason for a reduction in employee work force, *Beaver v. Rayonier*, 200 F.3d 723, 728 (11th Cir. 1999), and there is no evidence that the Hospital's reduction-in-force was merely a pretext for age discrimination. *See also Chiaramonte v. Fashion Bed Group, Inc.*, 129 F.3d 391, 398 (7th Cir. 1997)(affirming summary judgment for

employer on ground that employer's "need to reduce operating costs" is legitimate business reason for laying off employee).

The Hospital's Chief Executive Officer, Mr. Jerry Sutphin, had discussions with the new Chief Operating Officer, Ms. Pam Corliss, regarding how to implement the reduction in force and, specifically, what positions would be affected. Employees were identified in connection with recommendations from their individual directors, and Mr. Sutphin selected from those employees that reported directly to him which would be affected by the reduction-in-force. Mr. Sutphin made the ultimate decisions as to all employees adversely affected. Approximately 50 employees were affected, including Ms. Iaia.

It was Mr. Sutphin who made the decision to eliminate the position of Director of Marketing/Public Relations. He felt that marketing was not a critical function within the hospital setting and that marketing funds could be better used to support other areas, since he anticipated no marketing programs in the near future. In contrast, Mr. Sutphin did not decide to eliminate the position of Director of Senior Friends (held by Monique Monteiro) since that program was very successful and provided good access to seniors within the Hospital's community. Mr. Sutphin testified that the decision to retain the position of Director of Senior Friends had nothing to do with the decision to eliminate the position of Director of Marketing/Public Relations.

On November 11, 1993, Mr. Sutphin met with Ms. Iaia and advised her that the Hospital was eliminating her position. Under the Hospital's policy, she would be placed on a six-month unpaid leave of absence. If not recalled at the end of that period, then her position would be eliminated. Mr. Sutphin left the Hospital within one or two weeks following this meeting and the RIF. He was replaced by a new Chief Executive Officer, Mr. Rick O'Connell. At some point thereafter, the decision was made by Mr. O'Connell to combine Marketing/Public Relations with

9

Senior Friends. This decision, however, was made (1) after the Plaintiff's termination and (2) by a different decision-maker. The combined job of Director of Public Relations/Senior Friends was not available at the time of Ms. Iaia's termination. In early January of 1994, Ms. Monteiro was asked to accept the job of Public Relations in addition to her ongoing duties in Senior Friends, and she was offered a 10% salary increase for assuming these new duties. This latter decision to consolidate job functions of Public Relations and Senior Friends was not made by Mr. Sutphin, who had since left the Hospital.

In *Jameson v. Arrow Company*, 75 F.3d 1528, 1532 (11th Cir. 1996), an ADEA suit, the plaintiff had lost her job as part of a reduction-in-force. Although another position was available at the time of the reduction and although the plaintiff had expressed her interest in applying for this position, she was not considered. In fact, she was informed that the company did not plan to fill the position. *Id.* at 1532. The Eleventh Circuit reversed a summary judgment entered against the employee on her ADEA claim. The critical distinction between the *Jameson* plaintiff and Ms. Iaia, of course, is that another job opening existed at the time of termination for which the *Jameson* plaintiff was qualified and expressed an interest. The court noted that during a reduction in force,

> a discharged employee who applies for a job for which she is qualified **and which is available at the time of her termination** must be considered for that job along with all other candidates, and cannot be denied the position based upon her age. An employer's decision to transfer or to hire a younger employee for that available position is sufficient evidence to support an inference of discrimination for the limited purpose of establishing the plaintiff's prima facie case.

*Id.* at 1533 (emphasis added).[5] In our case, however, there were no other open positions available at the time of Ms. Iaia's termination. In that instance, Defendant had no obligation to transfer Ms. Iaia to another position within the Hospital simply to save her employment. *Id.* at 1532.

Of equal import, the decision to combine the jobs of Marketing/Public relations with Senior Friends was made by a different decision-maker. It was Mr. Sutphin who implemented the reduction-in-force and decided to eliminate the Marketing/Public Relations position. Yet it was Mr. O'Connell who subsequently made the decision to combine the duties of that position with the duties of Senior Friends. Since Ms. Iaia claims that the decision by Mr. Sutphin to eliminate her job was an act of age discrimination, she cannot rely on a subsequent decision by a subsequent decision-maker as "evidence" to conclude that Defendant intended to discriminate against her on the basis of age.

After Ms. Iaia's elimination, Ms. Monteiro was asked by Mr. Sutphin "if there was anything in the interim that would be considered emergency or, you know, that needed to be done in the realm of [Ms. Iaia's] duties, if I would consider helping them out with that."[6] Consequently, although the two positions were not combined until after Ms. Iaia's elimination, Ms. Iaia may argue that Ms. Monteiro had effectively taken over her job by assuming its responsibilities. This argument, however, fails.

> During a reduction in the employer's work force, the fact that the plaintiff's duties were assumed by a younger person is not in itself enough to establish a prima facie case. . . Otherwise every plaintiff in a protected age group would be allowed a trial simply because he was discharged during a reduction in force.

---

[5] In *Watkins v. Sverdrup Technology, Inc.*, 153 F.3d 1503 (11th Cir. 1998), the Eleventh Circuit concluded that when an employer eliminates positions in a reduction-in-force, but simultaneously hires younger workers in other positions, this does not by itself establish a pretext for discrimination unless the new positions were "similarly situated" to those that were eliminated in the reduction-in-force. *Id.* at 1315-16.
[6] 10/18/00 Deposition of Monique Monteiro, p. 84, 1. 3.

*Bialis v. Greyhound Lines, Inc.*, 59 F.3d 759, 763 (8th Cir. 1995). Job responsibilities may continue to exist even after a position is eliminated, and the assigning of those responsibilities to other employees is not evidence from which a reasonable factfinder could find age discrimination. *Id.*

As a matter of law, Ms. Iaia cannot establish her prima facie case based merely on her own subjective perceptions that age must have been a motivating factor in the Hospital's employment decision. Her "evidence" is insufficient to allow a reasonable factfinder to conclude that Defendant intended to discriminate against her because of her age. Accordingly, she cannot state a prima facie case of age discrimination against Galen Hospital.

3. **PLAINTIFF CANNOT REBUT DEFENDANT'S NONDISCRIMINATORY EXPLANATION FOR ITS EMPLOYMENT ACTIONS.**

Even if Ms. Iaia can state a prima facie claim for age discrimination, this does not preclude the entry of summary judgment on Defendant's behalf. "The court's inquiry merely begins with the establishment of a prima facie case." *Kounelis v. Mount Sinai Medical Center of Greater Miami, Inc.*, 987 F.Supp. 1452, 1457 (S.D. Fla. 1997). The burden then shifts to Galen Hospital to articulate a legitimate, nondiscriminatory reason for its actions. *Chapman v. A-1 Transport*, 2000 WL 1459447, at p. 8 (11th Cir. October 2, 2000). To satisfy this intermediate burden, Galen Hospital need only produce evidence that its actions were not motivated by a discriminatory purpose. *Combs v. Plantation Patterns*, 106 F.3d at 1528. It is a burden of production, not of persuasion, and it does not involve a "credibility assessment." *Reeves v. Sanderson Plumbing Products, Inc.*, 120 S.Ct. 2097, 2106 (2000). As the Eleventh Court stated in *Chapman:*

> The employer's burden to proffer a non-discriminatory reason is merely one of production; it 'need not persuade the court that it was actually motivated by the proper reasons. It is sufficient if the

>     defendant's evidence raised a genuine issue of fact as to whether it
>     discriminated against the plaintiff.'

*Chapman* at p. 8, *quoting Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 254-55 (1981).

At that point, the burden shifts back to Ms. Iaia to produce "significantly probative evidence" for a reasonable factfinder to conclude that Defendant's asserted reasons were pretextual and that the employment decision was motivated by an attempt to discriminate against her because of her age. *Standard v. A.B.E.L. Services, Inc.*, 161 F.3d 1318, 1332 (11th Cir. 1998). While Plaintiff need not introduce additional, independent evidence of discrimination, the Plaintiff must still provide sufficient evidence that the employer's proffered non-discriminatory reason is false. *Reeves v. Sanderson Plumbing Products, Inc.*, 120 S.Ct. at 2109. Mere conclusory allegations or assertions, or a plaintiff's subjective belief in discrimination, will never suffice.

At the outset, it should be noted that the Florida Commission of Human Relations' determination of reasonable cause neither establishes a prima facie case nor creates an issue that Defendant's proffered reasons are pretextual, since this court conducts a *de novo* review of Plaintiff's Complaint. The existence or nonexistence of discrimination depends upon the facts before this court, not upon the agency's conclusions regarding those facts. In any event, the determination by the Florida Commission of Human Relations is not admissible as a matter of law. Florida Statute § 760.11(5) provides that "the commission's determination of reasonable cause is not admissible into evidence in any civil proceeding, including any hearing or trial, except to establish for the court the right to maintain the private right of action."

As discussed, the Hospital conducted an economically induced reduction-in-force in November of 1993. As part of that reduction, Mr. Sutphin decided to eliminate the position of

Marketing/Public Relations. He explained why this position was included within the reduction as follows:

> Q   Okay. What was it about the position itself that you felt made it appropriate to include in the reduction in force?
>
> A   Well, under the circumstances that we were under, and I think it was fairly well known that I am not a big supporter of various and sundry marketing programs within hospitals. Under the circumstances of the reduction and census at Pembroke Pines, I suspect that I looked at that position as a position which the funds could be used better to support other areas because I had, as far as I can recall, no marketing programs set forth in the future.
>
> \* \* \*
>
> Q   Can you explain that for me a little bit, you know, what is it—your belief your beliefs in regards to marketing positions in hospitals?
>
> A   I guess it's not necessarily marketing positions as it's so much as marketing programs. Over my years of experience to do what I call media advertising, that being newspapers, TV, whatever, unless it is related to a very specific program, I have not found it to be beneficial to hospitals. . .[7]

Mr. Sutphin did not consider eliminating the Director of Senior Friends since he felt that the marketing of seniors within the community was important to the Hospital and to the allegiance it had developed.[8] Accordingly, the position of Director of Marketing/Public Relations (held by Ms. Iaia) was eliminated, and the position of Director of Senior Friends (held by Monique Monteiro) was not. Mr. Sutphin's decision to eliminate the former had nothing to do with his decisions to retain the latter.[9]

Indeed, Ms. Iaia is older than Ms. Monteiro and had more experience in terms of years

---

[7] 7/24/00 Deposition of Jerry Sutphin, pp. 46-48.
[8] 7/24/00 Deposition of Jerry Sutphin, pp. 142-143.
[9] 7/24/00 Deposition of Jerry Sutphin, p. 144, l. 19.

within the work force. While Mr. Sutphin could have transferred Ms. Iaia to the position of Ms. Monteiro, and then eliminated Ms. Monteiro in the reduction-in-force, such inter-department transfers are not required in order to save the jobs of employees within the protected age class. "The ADEA does not require employers to establish interdepartmental transfer programs during a RIF," *Beaver v. Rayonier, Inc.*, 200 F.3d 723, 729 (11th Cir. 1999), nor does it require that "younger employees be fired so that employees in the protected age group can be hired" or otherwise retained. *Jameson v. Arrow Company*, 75 F.3d 1528, 1532-33 (11th Cir. 1996). It is undisputed that Ms. Iaia worked in a separate department from Ms. Monteiro.[10] Thus, Mr. Sutphin's failure to transfer Plaintiff to Ms. Monteiro's position, or to any other position at the Hospital that was not vacant at the time, cannot be evidence of discriminatory intent.

Ms. Iaia asserts that the two positions of Marketing/Public Relations and Senior Friends were in fact combined at the time of the reduction-in-force, and that she was never considered for this new position.[11] Yet this assumption is unsupported by anything other than her own subjective belief. Ms. Iaia concedes that she was told the Hospital was eliminating her position and has only hearsay knowledge that the two positions were later consolidated.

> Q    Ms. Iaia, in your lawsuit you state that in connection with the reduction in work force the Defendant, which is the hospital, decided to combine your position with the Director of Senior Friends position. Is that something that Mr. Sutphin told you at that meeting on November 11?
>
> A    No, sir.
>
> Q    When did you first learn that those two positions were being combined?
>
> A    At some point later when I had heard through the rumor mill that it was announced in a manager's meeting that Monique Monteiro was the new

---

[10] 6/28/00 Deposition of Jacqueline Iaia, p. 71, l. 14.
[11] See Complaint ¶ 6, 6/28/00 Deposition of Jacqueline Iaia, p. 125, l. 4.

Director of Marketing and Public Relations and that she was assuming those positions.[12]

In contrast, every witness with personal knowledge has testified that these two positions were <u>not</u> consolidated as part of the reduction-in-force. Mr. Sutphin was asked this question on at least eight separate occasions, and he consistently testified that he eliminated the position of Marketing/Public Relations and did not combine it with Senior Friends. For example, Mr. Sutphin stated as follows:

> Q  Now, Mr. Sutphin was your decision in keeping the Senior Friends Director position in any way tied to your decision to eliminate the Director of Marketing position?
>
> A  Not that I recall.
>
> Q  Did you subsequent to making the decision to eliminate the Director of Marketing position make any subsequent decisions to combine any of those functions in conjunction with the Senior Friends?
>
> A  Sir, I cannot remember doing that.[13]
>
> * * *
>
> Q  With regard to the actual reduction-in-force, isn't it true that Ms. Iaia's position was not actually eliminated?
>
> A  I don't recall that being anything but that.
>
> Q  Isn't it true that that position was combined with the Director of Senior Friends position?
>
> A  I do not recall that happening, sir.[14]
>
> * * *

---

[12] 6/28/00 Deposition of Jacqueline Iaia, pp. 98-99.
[13] 7/24/00 Deposition of Jerry Sutphin, pp. 59-60.
[14] 7/24/00 Deposition of Jerry Sutphin, p. 86.

    A    Sir, I have told you, I do not recall assigning those responsibilities to Mrs. Monteiro.[15]

    Q    So her position—one of the reasons her position was eliminated was because it was determined by you in the Hospital that she did not have experience in the area of Senior Friends, could not perform that function?

    A    I do not recall the specifics behind that. I will go back to what I said earlier. We eliminated the position of Director of Public Relations and Marketing. . .[16]

The Hospital's Chief Operating Officer, Ms. Pam Corliss, testified in her Affidavit that the position of Director of Marketing and Public Relations was eliminated by Mr. Sutphin. It was after the reduction-in-force, and after Mr. Sutphin left the Hospital and was replaced by a new Chief Executive Officer, that the Hospital decided to assign the duties and responsibilities to Ms. Monteiro.[17] Ms. Monteiro testified that she was not offered the job of Public Relations/Marketing until January 11, 1994, after Mr. O'Connell came to the Hospital.[18] While the responsibilities of these two positions were ultimately combined, this was done at the Hospital after Ms. Iaia's termination and by a different decision-maker.

Ms. Iaia may claim that the two positions were *de facto* combined at the time of the reduction, since Ms. Monteiro had been asked to assume some of the job responsibilities in the interim. *See supra* p. 11. For example, Ms. Monteiro was asked to prepare the Hospital's employee newsletter—"The Stat"—a function previously handled by Ms. Iaia. This argument, however, fails to appreciate the objective of a reduction-in-force—a reduction of operating costs through non-critical employees. The hospital duties do not disappear at the time of a reduction-in-

---

[15] 7/24/00 Deposition of Jerry Sutphin, p. 115.
[16] 7/24/00 Deposition of Jerry Sutphin, p. 116.
[17] See Affidavit of Pam Corliss, ¶7-12.
[18] 10/18/00 Deposition of Monique Monteiro, pp. 74-75, 83, 120-21.

force. Ms. Monteiro may have been asked to help out with some of the duties previously handled by Ms. Iaia, but it is undisputed that the Plaintiff's position was eliminated and that her job was never offered to Ms. Monteiro. "The test for position elimination is not whether the responsibilities were still performed, but rather whether the responsibilities still constituted a single, distinct position." *Furr v. Seagate Technology, Inc.*, 82 F.3d 980, 988 (10th Cir. 1996). Ms. Iaia concedes that her position was "closed down as a separate department" and that no one succeeded her in her position as Director of Marketing/Public Relations.[19] While the job of Marketing/Public Relations was later offered to, and accepted by, Ms. Monteiro, it was handled by Ms. Monteiro in conjunction with her ongoing duties as Director of Senior Friends.

Although Ms. Iaia claims that other employees over 40 years of age were adversely affected by the RIF, she does not know the number of employees affected, and she offers no analysis of the hospital work force or of the employees adversely affected to suggest that age played any role in the employment decisions.

Ms. Iaia believes that she must have been terminated because of her age since, after all, she was qualified, she was terminated, and she was within the protected age group. However, her subjective belief is insufficient to avoid summary judgment.

> [C]onclusory allegations of age discrimination, based exclusively on [the plaintiff's] subjective beliefs, do not suffice to overcome the plaintiff's burden of rebutting the non-discriminatory reasons for termination set forty by [the employer].

*Kouneilis v. Mount Sinai Medical Center of Greater Miami, Inc.*, 987 F.Supp. 1452, 1459 (S.D. Fla. 1997). *See also Dingman v. Delta Health Group, Inc.*, 26 F.Supp.2d 1349, 1354 (S.D. Fla. 1998).

---

[19] 6/28/00 Deposition of Jacqueline Iaia, pp. 126-129.

The Defendant has proffered substantial, credible evidence to justify the implementation of a reduction-in-force and the decision to eliminate the position of Director of Marketing/Public Relations as part of that reduction. Ms. Iaia, however, has failed to demonstrate that the proffered reason was not the real reason for her termination. Ms. Iaia has failed to demonstrate "such weaknesses, implausibilities, inconsistencies, incoherences, or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable factfinder could find [all of those reasons] unworthy of credence." *Combs v. Plantation Patterns*, 106 F.3d at 1538. Accordingly, Defendant is entitled to summary judgment on Ms. Iaia's age discrimination claims.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was mailed this 3rd day of November, 2000, to Roderick V. Hannah, Esq., Becker & Poliakoff, P.A., P.O. Box 9057, Ft. Lauderdale, Florida 33310-9057; and to John F. Jankowski, Jr., Esq, John F. Jankowski, Jr., P.A., 2 South University Drive, Suite 265, Plantation, Florida 33324.

LEVY, KNEEN, MARIANI, CURTIN,
KORNFELD & DEL RUSSO, P.A.

By: _____
   Alexander D. del Russo
1400 Centrepark Boulevard
Suite 1000
West Palm Beach, Florida 33401
(561) 478-4700
(561) 478-4744
Fax (561) 478-5811
Florida Bar No. 350273

F:\Data\LIT4\4871.042\memo.law.sj..doc