

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FT. LAUDERDALE DIVISION

CASE NO. 00-6227-CIV-MORENO
Magistrate Judge: Dubé

JACQUELINE IAIA,

    Plaintiff,

v.

GALEN HOSPITAL-PEMBROKE PINES,
INC., f/d/b/a PEMBROKE PINES
HOSPITAL,

    Defendant.
_____/

### DEFENDANT'S STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

The Defendant, GALEN HOSPITAL—PEMBROKE PINES, INC., f/d/b/a PEMBROKE PINES HOSPITAL, pursuant to Local Rule 7.5 of this Court, hereby files this Statement of Material Facts as to which there is no genuine issue to be tried.

1. Pembroke Pines Hospital (the "Hospital") was a 300-bed acute care hospital located in Pembroke Pines, Florida. At all relevant times, the Defendant was the owner of The Hospital.

    (7/24/00 Deposition of Jerry Sutphin, pp. 16-17; Stipulation for Substitution of Named Defendants, and 10/12/00 Order Substituting Named Defendant)

2. From 1987 until October, 1991, the Plaintiff, Jacqueline Iaia, was employed at Humana Hospital—South Broward as the Director of Marketing and Public Relations. When that hospital closed in October 1991, Ms. Iaia's employment was transferred to the Hospital where she



began working as the Director of Marketing and Public Relations.

(6/28/00 Deposition of Jacqueline Iaia, pp. 29, 36-37)

3. Ms. Iaia was employed at the Hospital as the Director of Marketing/Public Relations from October 1991 until her position was eliminated on November 11, 1993.

(6/28/00 Deposition of Jacqueline Iaia, pp. 33-34)

4. Monique Monteiro began working at the Hospital on August 1990 as the Director of Senior Friends. The Senior Friends program was a concept designed to provide services and benefits to individuals over the age of 55. It was intended to create an alliance between the Hospital and seniors within the community, and marketing was a large component of this program.

(7/24/00 Deposition of Jerry Sutphin, pp. 20-21;
10/18/00 Deposition of Monique Monteiro, p. 16, l. 19, pp. 100 and 109)

5. Ms. Iaia is older than Ms. Monteiro.

6. Ms. Monteiro had experience in marketing and public relations as part of her Senior Friends position, and Ms. Monteiro had more seniority than Ms. Iaia at the Hospital.

(6/28/00 Deposition of Jacqueline Iaia, p. 74, l. 7;
10/18/00 Deposition of Monique Monteiro, pp. 95-100, 108-109)

7. At all relevant times, both the Director of Marketing/Public Relations and the Director of Senior Friends reported to the CEO, Mr. Jerry Sutphin.

(6/28/00 Deposition of Jacqueline Iaia, pp. 48-49;
10/18/00 Deposition of Monique Monteiro, pp. 37-38;
7/24/00 Deposition of Jerry Sutphin, pp. 18-19)

8. As the Director of Marketing and Public Relations, Ms. Iaia functioned as a one-person department.

(6/28/00 Deposition of Jacqueline Iaia, p. 71)

9. Mr. Sutphin began working at the Hospital as the CEO in January of 1992. He had previously worked as the Chief Administrator at a variety of other hospitals, and had prior experience in employee work force reductions at hospitals when necessary to reduce operating expenses.

(7/24/00 Deposition of Jerry Sutphin, pp. 11-12, 15-16)

10. In 1993, the Hospital suffered a significant decline in patient census. The Hospital had changed its affiliation with Humana which led to reduced reimbursement rates. Additionally, the Hospital's major competitor (Memorial Hospital West) had opened its new facility nearby. As a result, the Hospital was losing money.

(7/24/00 Deposition of Jerry Sutphin, pp. 33-34, p. 37, l. 14;
Affidavit of Pam Corliss, ¶ 4)

11. As a result of its financial losses, the Hospital decided to implement an employee reduction in work force in order to decrease its costs.

(7/24/00 Deposition of Jerry Sutphin, pp. 35-36; Affidavit of Pam Corliss, ¶ 4)

12. The reduction in force affected approximately 50 employees throughout the Hospital. Those employees were identified in connection with recommendations from their individual directors. Mr. Sutphin himself selected those employees that reported directly to him who would be affected by the RIF. Ultimately, Mr. Sutphin approved all decisions concerning employees affected by this reduction. He made the decision to eliminate positions, not individuals.

(Affidavit of Pam Corliss ¶ 6 and Exhibit 1 thereto;
7/24/00 Deposition of Jerry Sutphin, pp. 15-16, pp. 44, 96)

13. Mr. Sutphin made the decision to eliminate the position of Director of Marketing/Public Relations. He did this because he did not plan any future marketing efforts at the Hospital and, in a general sense, did not consider marketing to be a non-clinical priority within

3

the Hospital setting, feeling that the funds could be better used to support other programs within the Hospital.

(7/24/00 Deposition Jerry Sutphin, pp. 45-48;
6/28/00 Deposition of Jacqueline Iaia, p. 81, 1.7)

14.   In his decision to eliminate the position of Director of Marketing/Public Relations, Mr. Sutphin never considered the age of Ms. Iaia. Nor did he consider Ms. Monteiro with respect to this decision.

(7/24/00 Deposition of Jerry Sutphin, pp. 49, 53, 147)

15.   Mr. Sutphin did not consolidate the job of Director of Marketing/Public Relations with the Director of Senior Friends. Instead, Ms. Iaia's position was eliminated, and Mr. Sutphin did not replace her.

(7/24/00 Deposition of Jerry Sutphin, pp. 60, 86-89, 93, 113-116, 134, 144-145;
Affidavit of Pam Corliss ¶ 8)

16.   Mr. Sutphin met with Ms. Iaia on November 11, 1993, and told her that her position was being eliminated as part of the reduction if work force.

(6/28/00 Deposition of Jacqueline Iaia, p. 92, p. 96, 1.1
7/24/00 Deposition of Jerry Sutphin, pp. 60-61)

17.   At the time of this employee reduction, Mr. Sutphin met with Ms. Monteiro to advise her about the RIF and his decision to eliminate the Direction of Marketing/Public Relations. He asked Ms. Monteiro whether Ms. Monteiro would help out if there was anything in the interim that needed to be done regarding the duties and responsibilities of marketing/public relations. Ms. Monteiro agreed to do this. Mr. Sutphin never asked her to become the Director of Marketing/Public Relations.

(Deposition of Monique Monteiro, pp. 83-84, p. 120, 1. 6)

18.   Mr. Sutphin left his employment at the Hospital in November, 1993, approximately one to two weeks after the reduction in work force.

(6/28/00 Deposition of Jacqueline Iaia, p. 63, l. 1;
7/24/00 Deposition of Jerry Sutphin, p 67, l. 11, p. 87, l. 11)

19.   Mr. Sutphin was replaced at the Hospital by a new CEO, Rick O'Connell.

(Affidavit of Pam Corliss, ¶ 9)

20.   At some point thereafter, Mr. O'Connell and Ms. Corliss discussed the need to have an employee handle matters relating to public relations and marketing for the Hospital. It was decided to approach the Director of Senior Friends, Monique Monteiro, to see if she would assume these additional duties and responsibilities.

(Affidavit of Pam Corliss, ¶ 10)

21.   On January 11, 1999, at the time of Ms. Monteiro's annual evaluation, Ms. Corliss asked Ms. Monteiro if she was willing to assume the additional duties of Marketing/Public Relations in addition to her duties as the Director of Senior Friends. Ms. Monteiro was offered a ten percent salary increase for assuming these additional job functions. Ms. Monteiro agreed to do this.

(10/18/00 Deposition of Monique Monteiro, pp. 74-75, 83, 120-121;
Affidavit of Pam Corliss, ¶ 11)

22.   The decision to combine the functions of Marketing/Public Relations with those of Senior Friends was made by Rick O'Connell. The decision was not made by Mr. Sutphin, who had since left the Hospital.

(Affidavit of Pam Corliss, ¶ 12)

23.  On November 4, 1994, Ms. Iaia submitted her Charge of Discrimination to the Florida Commission on Human Relations. The Charge was received by the Commission on November 14, 1994.

(6/28/00 Deposition of Jacqueline Iaia, p. 134;
8/14/00 Deposition of Joseph A. Cash, pp. 9-10)

24.  The Florida Commission on Human Relations failed to make any determination within 180 days of Ms. Iaia's filing of her Charge, as required by Florida Statute § 760.11(3).

(8/14/00 Deposition of Joseph A. Cash, pp. 50-51)

25.  Plaintiff commenced this lawsuit on January 31, 2000.

(Docket Entry No. 1)

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was mailed this 3 day of November, 2000, to Roderick V. Hannah, Esq., Becker & Poliakoff, P.A., P.O. Box 9057, Ft. Lauderdale, Florida 33310-9057; and to John F. Jankowski, Jr., Esq, John F. Jankowski, Jr., P.A., 2 South University Drive, Suite 265, Plantation, Florida 33324.

LEVY, KNEEN, MARIANI, CURTIN,
KORNFELD & DEL RUSSO, P.A.

By: _____
Alexander D. del Russo
1400 Centrepark Boulevard, Suite 1000
West Palm Beach, Florida 33401
(561) 478-4700
Fax (561) 478-5811
Florida Bar No. 350273

\\LAW_SERVER\SYS\Data\LIT4\4871.042\statement.undisputed.material.facts.msj.doc