NON-COMPLIANCE OF S.D. fla. L.R. 5.1.B

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 00-6227 CIV MORENO
Magistrate Judge Dube

JACQUELINE IAIA,

    Plaintiff,

v.

GALEN HOSPITAL-PEMBROKE
PINES, INC., d/b/a PEMBROKE
PINES HOSPITAL, a foreign corporation,

    Defendant.

_____/



FILED by _____ D.C.

FEB 14 2000

CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA. FT. LAUD.

## PLAINTIFF'S LOCAL RULE 7.5 STATEMENT OF MATERIAL FACTS WHICH DEMONSTRATE THE EXISTENCE OF ISSUES OF MATERIAL FACT IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Plaintiff, JACQUELINE IAIA, by and through her undersigned counsel, pursuant to Rule 7.5 of the Local Rules of the Southern District of Florida, hereby files her Statement of Material Facts which sets forth the existence of issues of material fact to be tried before a jury as follows:

1.    Plaintiff, began her career with Defendant and its predecessors in February, 1974. (Plaintiff Dep. p. 21).[1]  She was 45 years old at the time of her termination on May 11, 1994 and was in her 20th year of seniority with extensive employee benefits.  (Plaintiff Dep. p. 116).

2.    Defendant, Galen Hospital - Pembroke Pines, Inc. became the owner of Pembroke Pines Hospital in mid 1993.

3.    In 1987, four years prior to her transfer to Pembroke Pines Hospital, Plaintiff became the Director of Marketing and Public Relations for South Broward Hospital which

---

[1]Transcript excerpts of the deposition of Plaintiff are referenced as "Plaintiff Dep." and are attached to the Appendix as Exhibit "A".

DEC 13 2000

Rec'd in MIA DKt _____

Iaia v. Galen Hospital-Pembroke Pines, Inc.
Case No.: 00-6227-CIV-MORENO

was owned and operated by Defendant's predecessor. (Plaintiff Dep. pp. 28-29). Plaintiff transferred to Pembroke Pines Hospital in 1991, and remained in the same position as Director of Public Relations and Marketing for that hospital until November, 1993. (Plaintiff Dep. pp. 31-32; Pierce Dep. pp. 21-22).[2]

4.      In 1990 and 1991, during her tenure as Director of Public Relations and Marketing for South Broward Hospital, Plaintiff also served as the hospital's Director of Senior Friends. (Plaintiff Dep. pp. 72-73, 122; Pierce Dep. p. 46, Def. Ex. 1; Monteiro Dep. p.113).[3]

5.      During her 20 years of continuous employment with Defendant and its predecessors, Plaintiff consistently earned above average to excellent annual reviews in her job related evaluations. (Plaintiff Dep., Def. Ex. 1-6). In addition, Plaintiff consistently received top-end salary increases (to as high as nine percent), and received promotions. (Plaintiff Dep. pp. 28-33, Def. Ex. 1-6). Plaintiff received no reprimands or warnings.

6.      During her tenure of employment with the Defendant, Plaintiff had experience in both positions which are material to this litigation: 1) as hospital Director of Marketing and Public Relations, and 2) as head of the hospital's Senior Friends program. (Plaintiff Dep. pp. 72-73, 122; Pierce Dep. p. 46, Def. Ex. 1; Monteiro Dep. p. 113).

7.      On November 11, 1993, Plaintiff was informed by the CEO of Pembroke

---

[2]Transcript excerpts for the deposition of Patricia Pierce are referenced as "Pierce Dep." and attached as Exhibit "B".

[3]Transcript excerpts for the deposition of Monique Monteiro are referenced as "Monteiro Dep." and are attached to the Appendix as Exhibit "C".

Pines Hospital, Jerry Sutphin, that her job was to be eliminated and that she was to be placed on an unpaid leave of absence for six months. (Plaintiff Dep. pp. 92-98). Sutphin departed from the hospital within a matter of days thereafter. During her unpaid leave of absence, Plaintiff was subject to recall. (Plaintiff Dep. pp. 97-98; and Manager's Manual at Ex. E, § 4.2.5.). However, Plaintiff's job responsibilities and duties were immediately assumed by Monique Monteiro, who was, at the time, the hospital's Director of Senior Friends. (Monteiro Dep. pp. 82-84). At that time, Plaintiff was 45 years old. (Plaintiff Dep. p. 116). Ms. Monteiro was 27 years old, and thus was not in the protected class for age discrimination.

8.     Prior to notifying Plaintiff of her job's elimination, Mr. Sutphin made certain age-related remarks at a manager's meeting. (Plaintiff Dep. pp. 65-66, 132). The comments included the statement: "If your attitude is old and complacent, you're not going to make it around here." (Id.) In addition, both Plaintiff and Patricia Pierce testified that Mr. Sutphin had a preference for young, attractive women. (Plaintiff Dep. pp. 56-57, 121; Pierce Dep. pp. 55-56).

9.     From November, 1993 through May, 1994, there were no job listings or postings for the positions of Director of Marketing/Public Relations or Director of Senior Friends, or any combination of these positions or responsibilities. (Monteiro Dep. p. 83.) The Defendant's Manager's Manual dated June, 1993, required that management positions for transfer or promotion be posted. (Scialdone Dep., Pl. Ex. 1 and Manager's Manual at Ex. E §2.2.; *see also,* paragraph 13 below and footnote 4).

10.    Neither Plaintiff nor her replacement, Ms. Monteiro, were ever interviewed for the combined position of Director of Senior Friends and Director of Marketing/Public Relations. (Plaintiff Dep. p. 125; Monteiro Dep. p. 83). However, Ms. Monteiro, at the request of Defendant's CEO in 1993, Jerry Sutphin, immediately assumed the job responsibilities and duties previously handled by Plaintiff. (Monteiro Dep. pp. 82-84). In December, 1993, Ms. Monteiro received both a five percent (5%) merit raise as well as a ten percent (10%) raise for her new responsibilities as Director of Marketing/Public Relations. (Monteiro Dep. pp. 70-75).

11.    In January, 1994, Ms. Monteiro received her 1993 performance evaluation authored by the hospital's new COO, Pam Corliss. (Monteiro Dep. pp. 110-111, Pl. Ex. 19). Ms. Corliss noted in that evaluation that Ms. Monteiro had assumed the duties and position of Director of Public Relations, and that she required further development of her marketing skills. (Id.) Ms. Monteiro acknowledged that she required development of her marketing skills to properly perform the new Director functions. (Monteiro Dep. p. 111, Pl. Ex. 19).

12.    At the time of the alleged reduction in force and consolidation of the directorship positions, Ms. Monteiro had substantially less experience than Plaintiff in the areas of marketing and public relations. (Monteiro Dep. pp. 113-114). Indeed, Pat Pierce, Defendant's former Director of Risk Management, testified in deposition and affidavit that, at the time Ms. Monteiro took over Plaintiff's duties as Director of Marketing/Public Relations, Ms. Monteiro had no marketing and public relations experience. (Pierce Dep. p. 53, Def. Ex. 1). Ms. Monteiro herself testified in deposition that, as of November, 1993,

Iaia v. Galen Hospital-Pembroke Pines, Inc.
Case No.: 00-6227-CIV-MORENO

there was a "substantial difference" between her and Plaintiff with respect to marketing and public relations skills. (Monteiro Dep. pp. 113-114). Ms. Monteiro further acknowledged that she was deficient in her marketing skills at the time she was awarded the combined position of Director of Marketing/Public Relations and Director of Senior Friends. (Monteiro Dep. pp. 110-111). This fact was further emphasized in Ms. Monteiro's performance evaluation prepared by Defendant's COO, Pam Corliss. (Monteiro Dep., Pl. Ex. 19). Plaintiff, in contrast, had six years of experience as Defendant's Director of Marketing and Public Relations. (Plaintiff Dep. pp. 28-33). Moreover, and most significantly, Plaintiff had performed the combined duties of Director of Marketing/Public Relations and head of the Senior Friends program at South Broward Hospital. (Plaintiff Dep. pp. 72-73, 122).

13.    In addition to having substantially more experience than Ms. Monteiro in the area of Marketing and Public Relations, Plaintiff had much greater seniority (20 years) than Ms. Monteiro (3 years) at the time of the reduction in force. Pursuant to the Defendant's Manager's Manual, the hospital was required to take an employee's seniority into consideration when deciding who to eliminate in a reduction in force. (Scialdone Dep. pp. 19-21, Pl. Ex. 1).[4] The Manager's Manual further provided that even where the candidates for a position were equally qualified, the position should be given to the employee with greater seniority (Id.). The Manager's Manual defined "seniority" as time spent with both the then current owner, Galen, as well as with its predecessor, Humana. (Id. at §7.1.3).

---

[4]Transcript excerpts for the deposition of Michael Scialdone are referenced as "Scialdone Dep." and are attached to the Appendix as exhibit "D". Excerpts from the Manager's Manual which is Plaintiff's Exhibit 1 to Scialdone's deposition, are separately attached to the Appendix as Exhibit "E".

Patricia Pierce testified that seniority was to be considered in a reduction in force and job consolidation situations. (Pierce Dep. p. 52). Ms. Monteiro admitted in her deposition that, as of November, 1993, Plaintiff had greater seniority than her. (Monteiro Dep. p. 108).

14.    Both Plaintiff and Ms. Monteiro, had reported directly to Mr. Sutphin, the CEO. Mr. Sutphin terminated Plaintiff. Ms. Monteiro, however, was retained and replaced Plaintiff as Director of Marketing and Public Relations.

15.    Defendant's management policies and procedures called for review and consideration of a person's seniority and qualifications as part of the review process. (Scialdone Dep. pp. 19-21, Pl. Ex. 1 at §4.2). However, Defendant did not review the qualifications and employment history of Plaintiff since the relevant decision maker, Mr. Sutphin, testified he was not aware of Plaintiff's experience as head of Senior Friends. (Sutphin Dep. pp. 91-92.).[5] Indeed, Defendant, in its Position Statement to the FCHR, stated that **"Ms. Iaia was not experienced in the area of Senior Friends and could not perform that function when the positions were combined. Consequently, her position was eliminated."** (Lomaga Dep. at Pl. Ex. 5).[6]

16.    Plaintiff's complaint of discrimination on the basis of age was timely filed with the FCHR and was dual filed with the U.S. Equal Employment Opportunity

---

[5]Transcript excerpts for the deposition of Jerry Sutphin are referenced as "Sutphin Dep." and are attached to the Appendix as Exhibit "F".

[6]Transcript excerpts for the deposition of Maria Lomaga are referenced as "Lomaga Dep." and are attached to the Appendix as Exhibit "G". The position statement of Defendant to the FCHR is separately attached as Exhibit "H".

Commission. ("EEOC"). (Cash Dep. at Def. Ex. 1).[7]

17.    The FCHR forwarded its Document Request Letter to Defendant on September 26, 1997. (Cash Dep. pp. 35-37, 47-48, Def. Ex. 1). Despite being fully aware in September of 1997 of Plaintiff's Complaint of Discrimination with the FCHR and EEOC, Defendant allowed Plaintiff's complete personnel records to be destroyed at the end of 1997. (Lomaga Dep. pp. 51-52).

18.    Defendant submitted its position statement dated March 6, 1998 to the FCHR through its general outside counsel, Mark E. Edwards. (Lomaga Dep. at Pl. Ex. 5). Defendant stated in its position statement that:

> **This decision was made because the employee performing the function of the Director of Public Relations and Senior Friends was capable of performing the duties and responsibilities of both areas. Ms. Iaia was not experienced in the area of Senior Friends and could not perform that function when the positions were combined. Consequently, her position was eliminated.**

19.    There were *substantial* delays in the FCHR's processing, investigation, and making a determination on Plaintiff's complaint of discrimination that resulted in Plaintiff filing her lawsuit after the expiration of four years from the date of her termination from employment. In his deposition, Joseph Cash of the FCHR admitted that there were extraordinary delays in the processing of Plaintiff's complaint of discrimination. Although Plaintiff filed her complaint of discrimination with the agency on November 14, 1994, the agency did not acknowledge receipt of the complaint, did not notify the employer, and did not in any way commence its investigation of the complaint until September 26, 1997, *more*

---

[7]Transcript excerpts for the deposition of Joseph Cash are referenced as "Cash Dep." and are attached to the Appendix as Exhibit "?".

*than 22 months later.* (Cash Dep. pp. 35-37, 47-48, Def. Ex. 1). One of the reasons for this unusually lengthy delay was the fact that the FCHR had lost Plaintiff's file. (Plaintiff Dep. p. 136; Cash Dep. p. 12, Def. Ex. 2). Indeed, the FCHR, as a result of losing Plaintiff's file, did not notify Plaintiff of the need to complete a new complaint form until July of 1995, some *nine months after Plaintiff had initially filed her complaint.* Id. Plaintiff sent the "amended charge' to the FCHR on or about July 25, 1995, and the FCHR thereafter waited *another eight months* – until March 20, 1996 -- before forwarding the matter to the Miami office of the EEOC for investigation. (Cash Dep. Def. Ex. 7). While the EEOC subsequently sent the matter back to the FCHR for investigation, the FCHR did not commence any form of investigation of its own into the complaint until September 26, 1997 – *another eighteen months later.* (Cash Dep. Def Ex. 8). Indeed, from the FCHR's own Complaint Log, it appears that an investigator was not even assigned to the file until November 18, 1997, *three years after Plaintiff initially filed her complaint with the agency.* (Cash Dep. pp. 48-49, Def. Ex. 9). Plaintiff, in fact, did not learn that an FCHR investigator had been assigned to investigate her complaint until the FCHR sent her a notice on November 21, 1997. (Cash Dep. pp. 49-50, Def. Ex. 14). Significantly, at the time Plaintiff was so notified, it had already been *over three years* since Plaintiff initially filed her complaint with the agency. Thereafter the FCHR conducted its investigation, and issued its reasonable cause determination on February 1, 1999 – over four years and two months from Plaintiff's initial filing. (*See,* Cash Dep. at Pl. Ex. 1 and 2).

20. Following a full investigation, the FCHR made its Findings, Analysis, and Conclusion under its Determination: Cause dated February 1, 1999. The FCHR specifically

held "that there is reasonable cause to believe that an unlawful employment practice has occurred." (*See* Cash Dep. at Pl. Ex. 1 and 2). In addition, "[t]he EEOC found reasonable cause to believe that violation of the statute(s) occurred with respect to some or all of the matters alleged in the charge..." (*See* EEOC determination attached to the Appendix as Exhibit "J").

21.    The FCHR filed its Notice of Dismissal under certificate dated April 27, 1999. The EEOC filed its Notice of Suit Rights dated December 28, 1999 without Defendant engaging in conciliation.

22.    Plaintiff timely filed this litigation on January 31, 2000 within one year from the FCHR's cause determination, and within 90 days from her receipt of the EEOC's Notice of Suit.

23.    During the litigation of this case, Plaintiff sent a Request for Production requesting, among other things, all documents relating to the issues in the case (item 3), all documents which in any way support Defendant's answer and affirmative defenses in the case (item 4), all documents that refer or relate to any procedures, policies, terms and/or conditions of employment upon which Defendant intends to rely in the case (item 8), and all documents which in any way relate to the allegations set forth in Plaintiff's Complaint (item 29)[8]. In defense of this action, Defendant is relying almost exclusively on an alleged reduction in force in 1993, in which it was decided that Plaintiff's position would be eliminated. However, despite repeated demands for production of documents pertaining to

_____

[8] A copy of the Request for Production is attached to the Appendix as Exhibit "J".

the reduction in force, Defendant has not produced them and apparently no longer has such documents.

Respectfully submitted,

JOHN F. JANKOWSKI, JR., ESQ., P.A.
Co-Counsel for Plaintiff
2 South University Dr.
Suite 265
Plantation, FL 33324
Tel. (954) 370-1026
Fax. (954) 382-4322

BECKER & POLIAKOFF, P.A.
Counsel for Plaintiff
3111 Stirling Road
Ft. Lauderdale, FL 33312
Tel. (954) 985-4145
Fax (954) 985-4176

By: _____
John F. Jankowski, Jr., Esq.
Fla. Bar No.: 833533

By _____
Roderick V. Hannah, Esq.
Fla. Bar No. 435384

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was furnished by mail to: Alexander D. del Russo, Esq., Levy, Kneen, Mariani, Curtin, Kornfeld & Del Russo, P.A., Counsel for Defendant, 1400 Centrepark Boulevard, West Palm Beach, FL 33401, this 8th day of December, 2000.

BECKER & POLIAKOFF, P.A.
Attorneys for Plaintiff
3111 Stirling Road
Ft. Lauderdale, FL 33312
Tel. (954) 985-4145

By: _____
Roderick V. Hannah, Esq.