UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FT. LAUDERDALE DIVISION

CASE NO. 00-6227-CIV-MORENO
Magistrate Judge: Dube

JACQUELINE IAIA,

        Plaintiff,

v.

GALEN HOSPITAL-PEMBROKE
PINES, INC., d/b/a PEMBROKE
PINES HOSPITAL, a foreign corporation,

        Defendant.

_____/



FILED by _____ D.C.

DEC 1 1 2000

CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA. FT. LAUD.

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

    Plaintiff, JACQUELINE IAIA, by and through her undersigned counsel, for her Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment, states as follows:

### I.   INTRODUCTION

    As shown below, Defendant's Motion and supporting Memorandum of Law are rife with misstatements of fact, unsupported accusations, and improper inferences which repeatedly mischaracterize the evidence and testimony accumulated in this case. Rather, the substantial, competent evidence supports the conclusion that (1) Plaintiff has timely brought her claim under the Florida Civil Rights Act, §760.01, *et seq.*, Fla. Stat. ("FCRA"); (2) Plaintiff has and can show a *prima facie* case of age discrimination under the Age Discrimination in Employment Act, 28 U.S.C. §621, *et seq.* ("ADEA"), and the FCRA; and (3) Plaintiff has and can show that Defendant's articulated "legitimate, non-discriminatory" reasons for its actions against Plaintiff were a pretext for discrimination.

### II.   STANDARD FOR SUMMARY JUDGMENT

    In ruling on Defendant's Motion for Summary Judgment, this Court is obligated to follow the standards for summary judgment set forth by the United States Supreme Court in the

DEC 1 3 2000

Rec'd in MIA Dkt _____

cases of Celotex Corp. v. Catrette, 477 U.S. 317, 106 S.Ct. 2548 (1986), Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S.Ct. 2505 (1986), and Matsushita Electric Industrial Corp. v. Zenith Radio Corp., 475 U.S. 574, 106 S.Ct. 1358 (1986). In applying these standards, this Court is obligated to consider all of the admissible evidence presented, and must view all of the facts —as well as the reasonable inferences to be drawn from those facts – in the light most favorable to the non-moving party, which in the instant case is Plaintiff. Anderson, 106 S.Ct. at 2510-11. At the summary judgment stage, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but determine whether there is a genuine issue for trial." Id. at 2511.

In analyzing a summary judgment motion, the Court must consider all fact questions with deference to the non-moving party. Waltman v. International Paper Co., 875 F.2d 468 (5th Cir. 1989). Giving the benefit of every favorable inference to the non-moving party, the Court may not usurp the fact-finding role of the jury by determining credibility, weighing the evidence, or making factual choices. Rollins v. Tech South, Inc., 833 F.2d 1525, 1528 (11th Cir. 1987); Branch v. Chevron International Oil Co., 681 F.2d 426, 432 (5th Cir. 1982).

Here, all of the competent evidence, and the reasonable inferences derived therefrom, show that genuine, triable issues of material fact exist warranting the denial of Defendant's Motion.

## III. PLAINTIFF'S FCRA CLAIM WAS TIMELY FILED[1]

Defendant's first point of argument is that Plaintiff's FCRA claim is time barred because Plaintiff failed to file her lawsuit within four years from the date she was terminated. (See, Defendant's Memorandum of Law, pp. 5-7). For this argument, Defendant relies exclusively on the Florida Supreme Court's recent decision in Joshua v. City of Gainesville, 768 So.2d 432 (Fla. 2000). In that case, the Florida Supreme Court held that where the Florida Commission on Human Relations ("FCHR") fails to take any action on a complaint of discrimination within 180 days from the date the complaint is filed with the agency, an aggrieved party has, pursuant to Fla. Stat. §95.11(3)(f), up to four years from the alleged discriminatory action in which to file suit under the FCRA. Joshua, 768 So.2d at 439. Joshua, however, is distinguishable from the instant case as set forth below, and Defendant's reliance thereon is both misplaced and contrary

---

[1]It should be noted that a review of Defendant's Answer reveals no Statute of Limitations defense.

2

to the express statutory language of the FCRA. Moreover, even if a four-year statute of limitations were applicable here, Plaintiff's FCRA claim would still be timely in that, pursuant to the doctrine of equitable tolling, the limitations period was extended by agency inaction and error.

      **A.**    **The *Joshua* decision is inapplicable and distinguishable.**

Under the FCRA, an aggrieved party is obligated to file his or her complaint of discrimination within 365 days from the date of the alleged discriminatory action. Fla. Stat. §760.11(1). After the complaint is filed, the FCHR is obligated to investigate and determine whether there is reasonable cause to believe a violation has occurred within 180 days. Fla. Stat. §760.11(3). If the FCHR makes a reasonable cause determination[2], the aggrieved party may request an administrative hearing or file suit. Fla. Stat. §760.11(4).

The FCRA contains a specific limitations period for the filing of suit where the FCRA makes a determination of reasonable cause that a discriminatory action has occurred. Subsection (5) of §760.11 provides, in pertinent part, that

> A civil action brought under this section shall be commenced no later than 1 year after the date of determination of reasonable cause by the commission.

The FCRA, however, does not expressly address the situation of how an aggrieved party's rights are impacted, if at all, where the FCHR fails to make a reasonable cause finding within the initial 180-day period set forth in the statute. Section 760.11(8) provides:

> In the event that the commission fails to conciliate or determine whether there is reasonable cause on any complaint under this section within 180 days of the filing of the complaint, an aggrieved person may proceed under subsection (4), as if the commission determined that there was reasonable cause.

Prior to the Florida Supreme Court's decision in <u>Joshua</u>, the lower Florida appellate courts had interpreted the above-described provisions of the FCRA, in particular §§760.11(5) and 760.11(8), to provide a limitations period of one year plus 180 days from the date of the discriminatory action for a party to bring suit if the FCHR failed to make a reasonable cause determination within the initial 180-day period. The Florida Supreme Court in <u>Joshua</u>, however, rejected this position.

---

[2]The FCHR indeed found reasonable cause in this case. *See*, Cash Dep. at Pl. Ex. 1 and 2.

3

While it is true, as Defendant contends, that the Florida Supreme Court in Joshua held that the four-year limitations period for statutory causes of action contained in Fla. Stat. §95.11(3)(f) should apply in FCRA cases when the FCHR *fails to take action* on a complaint of discrimination within 180 days of its filing, the Court was not confronted with the precise issue here. In Joshua, the plaintiff had filed suit more than 180 days and one year from the date of filing the complaint of discrimination with the FCHR, *but before* the FCHR had made any determination whatsoever on the complaint, and *before* the expiration of four years from the date of the alleged discriminatory action. Significantly, the Court in Joshua was not required to interpret the direct applicability of the conflict which §760.11(5)'s one-year limitations period presents when the FCRA finds, as it did in this case, that reasonable cause exists after the running of the judicially determined limitations period.

Here, in contrast, even though Plaintiff may have filed suit on her FCRA claim more than four years from the date of the alleged discriminatory action (her termination from employment with Defendant), the suit was filed within one year from the FCHR's issuance of a reasonable cause finding. In accordance with the clear language of §760.11(5), Plaintiff's FCRA claim was thus timely filed.

More importantly, the timeliness of Plaintiff's FCRA claim is supported by a recent Florida First District Court of Appeal decision, which, although it preceded (but is not in conflict with) the Joshua decision, is on-point and which Defendant overlooked in its Memorandum of Law. In McDowell v School Board of Leon County, 765 So 2d 804 (Fla. 1st DCA 2000), *rev. dismissed*, ___ So.2d ___ (Fla. 2000)[3], the court was confronted with the situation where the plaintiff had filed her FCRA suit more than one year plus 180 days after her complaint of discrimination had been filed, but within one year after the FCHR had made a determination of reasonable cause. Id. The trial court dismissed the suit on the grounds that the plaintiff's claim was untimely filed under the then generally accepted limitations period of one year plus 180 days from the filing of the complaint of discrimination with the FCHR. Id. The First District reversed, finding that the judicially crafted "one year plus 180 days" limitations period was inapplicable because, even though the FCHR had not made any determination in the initial 180-

_____

[3]It is significant to note that the Court in McDowell certified the issue presented therein to the Florida Supreme Court as one of great public importance. The Florida Supreme Court dismissed review subsequent to the Joshua decision.

4

day period, it did subsequently make a reasonable cause determination. When this reasonable cause determination was made, *the express statutory language of §760.11(5) controlled*, and the plaintiff had one year from the date of the reasonable cause finding to file suit. As the court concluded:

> In summary, *because a determination of reasonable cause was made here, we apply the clear one-year statute of limitations of section 760.11(5), provided by the legislature*, rather than the judicially-crafted limitations period of Milano and Joshua. This interpretation would give effect to the clear words of the legislature and would not lead to inconsistent results.

McDowell, 765 So.2d at 806, (emphasis added).

A finding that Plaintiff's FCRA claim was timely filed is also consistent with the Florida Supreme Court's decision in Joshua. In reaching its decision in Joshua, the Court recognized that it was clear from reading the FCRA as a whole "that the Legislature wanted persons who believe they have been the object of discrimination to go through the administrative process prior to bringing a circuit court civil action." Joshua, 768 So.2d at 436. Moreover, the Court reasoned that:

> [D]espite the language of section 760.11(8), which allows a complainant to proceed to circuit court without a reasonable cause determination, *the entire statutory scheme seems to favor exhaustion of administrative remedies prior to court action*. It would appear contrary to that scheme to require a person to proceed to court without any indication from the Commission of the progress, or lack thereof, in investigating the complaint filed with that body.

Id. at 437 (emphasis added).

Plaintiff in the instant case has, with regard to her FCRA claim, done nothing less than strictly adhere to the statutory requirements and intent of the FCRA. She timely filed her complaint of discrimination with the appropriate agency, and cooperated with and allowed the agency to process and investigate that complaint. Although a substantial amount of time passed during the agency's processing – through no fault whatsoever by Plaintiff[4] – the FCHR, after gathering and pursuing all available evidence, made a reasonable cause determination on Plaintiff's complaint on February 1, 1999. *See*, Cash Dep., Pl. Ex. 1 and 2. That determination expressly authorized Plaintiff to request an administrative hearing or, as she chose to do, file a

---

[4]*See*, Cash Dep. pp. 54-58.

civil action within one year of the determination – on or before January 31, 2000. Cash Dep., Pl. Ex. 1. Plaintiff filed her suit within the statutory one-year period. Plaintiff's FCRA claim was thus timely filed with this Court, and Defendant's Motion for Summary Judgment must be denied.

**B.    The limitations period was subject to equitable tolling.**

Even if the Joshua four year statute of limitations were applicable to Plaintiff's FCRA claim, Plaintiff's claim should be deemed timely filed because the limitations period is equitably tolled as a result of the FCHR's error, delays and inaction. It is well settled that a statute of limitations is subject to equitable tolling. Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 393, 102. S.Ct. 1127, 1132, 71 L.Ed.2d 234 (1982). Equitable tolling of a statute of limitations for bringing a discrimination lawsuit is appropriate if extraordinary delays in the processing of a plaintiff's charge of discrimination are caused by the processing agency's error or inaction. See, Ray v. Nimmo, 704 F.2d 1480, 1483-84 (11th Cir. 1983); Jones v. Gilman Paper Co., 1984 WL 2571, *3 (S.D. Ga. 1984). In Nimmo, for example, the Eleventh Circuit remanded the case to the trial court to determine if equitable tolling of the applicable statute of limitations was appropriate where, among other things, the EEOC had engaged in "substantial delay" in the administrative processing of the plaintiff's charge of discrimination, including a delay of 10 months in assigning an investigator to the plaintiff's file. Nimmo, 704 F.2d at 1484.

Here, there were *substantial* delays in the FCHR's processing, investigation, and making a determination on Plaintiff's complaint of discrimination that caused Plaintiff to file her lawsuit after the expiration of four years from the date of her termination from employment. In his deposition, Joseph Cash of the FCHR admitted that there were extraordinary delays in the processing of Plaintiff's complaint of discrimination. Although Plaintiff filed her complaint of discrimination with the agency on November 14, 1994, the agency did not notify the employer and did not in any way commence its investigation of the complaint until September 26, 1997, *more than 22 months later.* Cash Dep. pp. 35-37, 47-48, Def. Ex. 1. One of the reasons for this unusually lengthy delay was the fact that the FCHR had *lost* Plaintiff's file. Cash Dep. p. 12, Def. Ex. 2. Indeed, the FCHR, as a result of losing Plaintiff's file, did not notify Plaintiff of the need to complete a new complaint form until July of 1995, some *nine months after Plaintiff had initially filed her complaint.* Id. Plaintiff sent the "amended charge' to the FCHR on or about

6

July 25, 1995, and the FCHR thereafter waited *another eight months* – until March 20, 1996 -- before forwarding the matter to the Miami office of the EEOC for investigation. Cash Dep., Def. Ex. 7. While the EEOC subsequently sent the matter back to the FCHR for investigation, the FCHR did not commence any form of investigation of its own into the complaint until September 26, 1997 – *another eighteen months later.* Cash Dep., Def Ex. 8. In addition, per the FCHR's own Complaint Log, it appears that an investigator was not even assigned to the file until November 18, 1997, *three years after Plaintiff initially filed her complaint with the agency.* Cash Dep. pp. 48-49, Def. Ex. 9. Plaintiff, in fact, did not learn that an FCHR investigator had been assigned to investigate her complaint until the FCHR sent her a notice on November 21, 1997. Cash Dep., pp. 49-50, Def. Ex. 14. Significantly, at the time Plaintiff was so notified, it had already been *over three years* since Plaintiff initially filed her complaint with the agency. Thereafter, the FCHR conducted its investigation, and issued its reasonable cause determination on February 1, 1999 – *over four years and two months from Plaintiff's initial filing.* Cash Dep., Pl. Ex. 1, 2.

Without question, all of the unusual and extraordinarily lengthy delays in the administrative processing of Plaintiff's complaint were the result of neglect, inaction and error by the FCHR. It is important to point out, as Mr. Cash of the FCHR admitted in his deposition, that none of the lengthy delays were caused by anything that Plaintiff did. Cash Dep. pp. 54-58.

In Nimmo, the Eleventh Circuit acknowledged that a 10-month delay in the EEOC assigning an investigator to the plaintiff's file could be grounds to equitably toll the applicable statute of limitations. Here, the FCHR lost Plaintiff's file, did not commence any investigation until almost two years after the filing of the charge, and did not even assign an investigator to the file until after two years had passed. Hence, the agency inaction, error and cause of delays in the instant case are much more egregious than those in Nimmo. Indeed, if any case cried out for equitable tolling of the statute of limitations as a result of administrative agency error and inaction in order to promote justice and fairness, this would be the one.

Plaintiff should not now be prejudiced and penalized because she followed the statutory requirements and rules, and because the FCHR inexcusably delayed the processing of her complaint and erred in its obligations. Most importantly, equitable tolling of the limitations period here would be consistent with the Florida Supreme Court's reasoning in Joshua to avoid

prejudice to claimant. *See*, Joshua, 768 So.2d at 439 ("[T]his case involves administrative inaction and error. . . .A claimant should not be penalized for attempting to allow a government agency to do its job."). Accordingly, even if this Court were to find that the four-year statute of limitations discussed in Joshua applied here, that statute should be equitably tolled and Plaintiff's FCRA claim should be deemed timely filed.

## IV.    PLAINTIFF CAN ESTABLISH A *PRIMA FACIE* CASE.

Defendant's argument that Plaintiff cannot establish a *prima facie* case of age discrimination under the ADEA and the FCRA is laced with blatant inconsistencies and repeated misstatements of fact. One of the most glaring inconsistencies and factual misstatement upon which Defendant's argument is based is its contention that the positions of Director of Marketing and Public Relations, in which Plaintiff served, and  Director of Senior Friends, in which Monique Monteiro served, were combined into a single position *after* Plaintiff had been terminated from her employment with Defendant. (*See,* Defendant's Memorandum of Law, pp. 8, 10). This simply is untrue. As Defendant itself, albeit inconsistently, points out[5], Plaintiff *was not terminated* at the time Ms. Monteiro assumed Plaintiff's duties and responsibilities as Director of Marketing and Public Relations. Plaintiff was on a six-month leave of absence subject to recall. She was, therefore, still employed by Defendant at the time the two Director positions and job responsibilities were combined and given to the substantially younger Ms. Monteiro, regardless of whether the combination decision was made contemporaneously with Plaintiff's notice of job elimination or shortly thereafter. Yet Plaintiff was not considered for the combined Directorship[6], indeed not even interviewed or told about the position, despite the fact she was substantially more qualified for the combined position and had greater seniority than Ms. Monteiro.

In addition, Defendant mis-states the second prong for establishing a *prima facie* case of age discrimination under a reduction in force situation where, as here, a job consolidation has occurred. In Williams v. Vitro Services Corp. 144 F.3d 1431 (11th Cir. 1998), the Eleventh Circuit reversed the decision of the district court, which had found that the plaintiff could not

---

[5] *See,* Defendant's Memorandum of Law at p. 9.
[6] Defendant completely fails to disclose that Plaintiff also served in the position of Director of Senior Friends during her tenure with Defendant during 1991-1992 which qualifies her for the combined position. More troubling is the blatant misstatement of fact in Defendant's Position Statement and testimony from its CEO that Plaintiff had no Senior Friends experience.

establish a *prima facie* case of age discrimination because he had failed to show that he was qualified for a position that became available at the time of his termination. <u>Williams</u> 144 F.3d at 1442. The appellate court rejected the district court's reasoning, and held as follows:

> We conclude, at the outset, that the district court erred in dismissing Williams' discriminatory discharge claim on the grounds that he failed to show that he was qualified for a position that became available at the time of his termination. As previously noted, our case law expressly holds that, *where a plaintiff contends that his position has been consolidated or reassigned to other employees, as has been alleged in this case, he may establish a prima facie case by demonstrating that he was qualified for his current position or to assume another position at the time of discharge.* See, Benson, 113 F.3d at 1208; these elements are plainly phrased in the disjunctive, and failure to show qualification for both the current job and a second, vacant position is not fatal to the plaintiff's prima facie case.

<u>Id.</u> (citing <u>Benson v. Tocco</u>, 113 F.3d 1203 (11th Cir. 1997)) (emphasis added).

Here, without question, Plaintiff was fully qualified for her "current" position of Director of Marketing/Public Relations. Moreover, she was still employed by Defendant when her position was combined with that of Director of Senior Friends, and was fully qualified for the combined position. Ms. Monteiro, however, was *not* qualified for the combined position, as more fully shown below.

It is critical for this Court, in analyzing Defendant's substantive arguments in its Motion, to be aware that Defendant's factual arguments are substantially and significantly different – indeed, diametrically opposed -- to Defendant's factual position taken in its dealings with the FCHR, and upon which the FCHR found reasonable cause. In its position statement to the FCHR, Defendant, through its general outside counsel, represented that, in connection with the alleged reduction in force, a decision was made to combine Plaintiff's position with that of the Director of Senior Friends, and that Plaintiff was not selected for the combined position because she did not have any alleged experienced in the area of Senior Friends. *See,* Sutphin Dep. pp. 89-92, Pl. Ex. 2[7] as stated in the position statement.

> **This decision was made because the employee performing the function of the Director of Public Relations and Senior Friends**

_____

[7]Curiously, Defendant argues in its Memorandum that the *only* evidence that the positions were combined in the reduction in force is Plaintiff's own "subjective belief." *See,* Defendant's Memorandum at p. 15. This is false. Defendant fails to mention that its position statement is also evidence of this fact.

> **was capable of performing the duties and responsibilities of both areas. Ms. Iaia was not experienced in the area of Senior Friends and could not perform that function when the positions were combined. Consequently, her position was eliminated.**

*See*, Lomaga Dep. at Pl. Ex. 5.[8]  However, contrary to Defendant's position statement, Plaintiff did, in fact, have Senior Friends experience.  Plaintiff Dep. pp. 72-73; Pierce Dep. p. 46. Defendant's articulated non-discriminatory reason in its position statement to the FCHR was, therefore, totally discredited, and lead to the reasonable cause determination by the FCHR.  *See*, Cash Dep. at Pl. Ex.1 and 2.

Now, in the instant case, Defendant, in the hope of securing summary judgment, has presented a completely new "story" and factual scenario from that in its position statement to the FCHR.  Indeed, had Defendant stuck with its facts as set forth in its position statement, Defendant would not have had a leg to stand on in supporting a summary judgment motion, and would likely have been facing a summary judgment motion on liability by Plaintiff.  Defendant's transparent attempts now to rearrange the truth to convince this Court to grant summary judgment cannot be supported by the facts and should be denied.

Regardless of what version of Defendant's statement of facts one chooses to believe, Defendant cannot avoid the fact that Plaintiff was employed by Defendant at the time the Director of Marketing/Public Relations and the Director of Senior Friends positions were combined[9] and was also fully qualified for her position of Director of Marketing/Public Relations.  It is also undisputed that, at the time the two positions were combined, Plaintiff was fully qualified for the combined position, having extensive hospital marketing and public relations experience, as well as experience running the  hospital's Senior Friends program. Plaintiff Dep. pp. 72-73; Pierce Dep. p. 46, Def. Ex. 1.  Notwithstanding the fact that Plaintiff was the most qualified candidate for the combined position, and notwithstanding the fact that Plaintiff had seniority over Ms. Monteiro[10], the combined position was given to the substantially younger Ms. Monteiro.  This was done without even notifying Plaintiff of the combined position

---

[8] An employer's position statement to the EEOC or state administrative agency can and should be considered probative evidence for purposes of an age discrimination claim.  *See*, Mashka v. Genuine Parts Co., 122 F.3d 566, 570 (8th Cir. 1997), and arguments under section V, *supra*.

[9] The facts clearly show that Ms. Monteiro immediately assumed the duties and responsibilities for the Director of Marketing and Public Relations. Monteiro Dep. pp. 83-84, 111-112, 123.

[10] Defendant failed to follow its own procedures under its Manager's Manual.  *See*, Scialdone., Pl. Ex. 1.

10

nor allowing her to interview for it. Monteiro Dep. p. 83. Such evidence and facts, and the reasonable inferences to be drawn therefrom, are sufficient to establish Plaintiff's *prima facie* case. Williams, 144 F.3d at 1442; Jameson v. Arrow Co., 75 F.3d 1528, 1533 (11th Cir. 1996).

Also sufficient to establish Plaintiff's *prima facie* case is the evidence that Defendant's decision makers, in particular, Jerry Sutphin, Defendant's CEO at the time of the job elimination decision, had a discriminatory motive in getting rid of Plaintiff. Plaintiff testified in her deposition to various age-related, discriminatory remarks made by Mr. Sutphin in manager's meetings, including statements that "if your attitude is old and complacent, you're not going to make it around here." Plaintiff's Dep. pp. 65-66, 132. Plaintiff and Patricia Pierce, Defendant's Director for Risk Management at the time of the alleged reduction in force, testified that Mr. Sutphin showed favoritism toward young, attractive female employees, including Ms. Monteiro. Plaintiff Dep. pp. 56-57, 121; Pierce Dep. pp. 55-56. This testimonial evidence, together with the decision to give the combined directorship position to the substantially younger and far less qualified Ms. Monteiro without even considering Plaintiff and her qualifications and experience, is alone sufficient to satisfy the discriminatory motive requirement of Plaintiff's *prima facie* case. Williams, 144 F.3d at 1441-42; Jameson, 75 F.3d at 1532-33.

Defendant, however, in an attempt to further its "new" factual position, argues that Plaintiff cannot show any evidence of discriminatory motive in connection with her termination because the decision to combine the two director positions was made after Mr. Sutphin left the hospital. First, as discussed above, this factual position is totally opposite and contradictory to that set forth in Defendant's position statements submitted to the FCHR in which Defendant took the position that the directorships were combined in connection with the reduction in force. Such a contradiction alone raises a sufficient factual issue as to whether Mr. Sutphin was involved in selecting Ms. Monteiro to replace Plaintiff.

Moreover, Ms. Monteiro testified that she began assuming Plaintiff's job duties and responsibilities, *at Mr. Sutphin's request*, immediately upon Plaintiff being notified that she would no longer be the Director of Marketing/Public Relations. Monteiro Dep. pp. 82-84, 111-112, 123. These duties included preparing the hospital's newsletter, the first issue of which Ms. Monteiro was designated the "Editor" being the December 1993 issue, compiled just weeks after Plaintiff was notified of the job elimination. Id. at p. 111, Pl. Ex. 21. Indeed, Ms. Monteiro

11

received a 10 percent salary adjustment for assuming the newly combined position of Director of Marketing/Public Relations and Director of Senior Friends effective *in December 1993*, contrary to Ms. Monteiro's claim – and Defendant's factual representations in its Motion – that Ms. Monteiro did not learn of her official assignment to the combined position until she received her performance evaluation in mid-January 1994. Monteiro Dep. pp. 74-75, 80-83, 112, Pl. Ex. 17.[11]

Defendant would have this Court believe that Mr. Sutphin had nothing to do with the decision to consolidate the Director positions, and that the decision was in actuality made by a different CEO, Rick O'Connell. However, such an assertion is contradicted by the position statement to the FCHR, by Ms. Monteiro, and even by certain testimony of Mr. Sutphin.

Defendant's FCHR position statement asserts that the combination of the Director positions was done at the time of, and in connection with, the elimination of Plaintiff. *See*, Lomaga Dep. at Pl. Ex. 5 (Defendant's Position Statement). In addition, Mr. Sutphin in his deposition, when confronted by Defendant's position statement to the FCHR, and despite his parroted claim throughout his deposition that he could not recall any specifics regarding Ms. Monteiro assuming Plaintiff's duties[12], seemed to indicate that Ms. Monteiro was chosen for the combined position of Director of Marketing/Public Relations and Director of Senior Friends because he understood Plaintiff to have no Senior Friends experience:

> Q. All right. And you can't remember why Ms. Iaia was not considered for the combined position of director of public relations and Senior Friends?
>
> . . . THE WITNESS: I don't know that that was ever a consideration in that the Seniors Program was a very intense, very well run program, and, to the best of my knowledge, Ms. Iaia had no experience in that.
>
> Q. To your knowledge, Ms. Iaia had no experience in Senior Friends?
>
> A. Yes.
>
> Q. In running the Senior Friends Program?

---

[11] In fact Ms. Monteiro acknowledged a January 2, 1994 Miami Herald newspaper article referencing a hospital public relations function that took place in December 1993, and in which Ms. Monteiro was quoted as the hospital's Public Relations Director. Monteiro Dep. p. 86. When asked in her deposition where the Miami Herald would have gotten the information that she was the Public Relations Director, Ms. Monteiro replied: "I don't know. It could've been from me." Monteiro Dep. pp. 86-87, Pl. Ex. 22.

[12] Defendant disingenuously quotes from Mr. Sutphin's deposition as if Mr. Sutphin confirmed Defendant's new version of the facts that he had nothing to do with combining the two positions. In fact, throughout his deposition, Mr. Sutphin claimed he could not recall any specifics as to the combining of the positions or to how, why, or when Ms. Monteiro assumed Plaintiff's job position. *See* Sutphin Dep., pp. 88-89, 90-91, 93-94, 97-98, 101.

A. That's right.

Q. Were you actually aware she did actually have that responsibility?

A. No.

Sutphin Dep. p. 91.

Furthermore, Ms. Monteiro testified that she immediately began assuming Plaintiff's job duties and responsibilities. Monteiro Dep. pp. 82-84. *This was done at the request of Mr. Sutphin* who left the hospital within a matter of days after Plaintiff was told her job was eliminated. Id.

Furthermore, an adverse inference of discriminatory animus must be drawn from the fact that Defendant lost or destroyed all of the documents pertaining to the alleged reduction in force, and destroyed *all* of Plaintiff's personnel records after it first learned of Plaintiff's discrimination claims. *See*, Lomaga Dep. pp. 51-52; Plaintiff's Statement of Facts, p. 23. The latter destruction was in direct violation of 29 C.F.R. §1602.14, the federal regulation requiring retention of personnel records. Under the regulation, where a charge of discrimination had been filed against the employer, "the respondent employer shall preserve all personnel records relevant to the charge or action until final disposition of the charge or action." 29 C.F.R. §1602.14. Such final disposition includes the time for filing a U.S. District Court action and the date upon which that action is terminated. Id. Here, Defendant learned of Plaintiff's claims of discrimination in September 1997, when the FCHR and EEOC sent their notifications. Cash Dep. pp. 35-37, Def. Ex. 1. However, as Defendant's corporate representative, Maria Lomaga, testified, Plaintiff's complete personnel files were destroyed at the "end of 1997." Lomaga Dep. pp. 51-52.

Defendant thus had in its possession Plaintiff's personnel files when it was notified of Plaintiff's claims, and it had a legal duty to preserve those records. Defendant, however, allowed or caused the records to be subsequently destroyed in violation of 29 C.F.R. §1602.14. Because of such document destruction, and the loss or destruction of all of Defendant's RIF documents, Plaintiff should be entitled to an adverse inference establishing her *prima facie* case. U.S. District Judge Dimitrouleas, in fact, made just such a finding in the recent case of Morgan v. Houston's Restaurants, Inc., No. 99-6970-CIV-DIMITROULEAS (S.D.Fla., October 23, 2000).[13] In that case, Judge Dimitrouleas, in denying the defendant's motion for summary

---

[13] A copy of the opinion is attached as Exhibit "A".

judgment, gave the plaintiff an adverse inference that the destroyed personnel records would be beneficial to the plaintiff, and could support both her *prima facie* case and a claim of pretext. Morgan, at pp. 13-15. Under the facts of this case, a similar finding of adverse inference based on the destroyed/lost documents should be made.

Accordingly, there is ample evidence from which a reasonable trier of fact could conclude that Plaintiff has sufficient evidence to support a *prima facie* case of age discrimination in connection with Defendant's alleged reduction in force. The evidence shows that defendant failed to consider Plaintiff for the combined directorship based on her seniority and superior qualifications. Rather, Defendant gave the combined position to the substantially younger and far less experienced Ms. Monteiro without posting the position or conducting any interviews. Defendant's Motion for Summary Judgment attacking Plaintiff's *prima facie* case should, therefore, be denied.

## V.    PLAINTIFF CAN SHOW PRETEXT.

Contrary to Defendant's arguments in its Motion, Plaintiff can show pretext with substantial, competent evidence. This evidence includes the Defendant's own position statement submitted to the FCHR and upon which the FCHR found reasonable cause, as well as the substantial difference in qualifications, experience and seniority between Plaintiff and Ms. Monteiro with regard to receiving and performing the combined job of Director of Marketing/Public Relations and Director of Senior Friends.

### A.    Defendant's contradictory position statement supports a finding of pretext.

A defendant's position statement is relevant and admissible evidence in an age discrimination case to establish pretext. Mashka v. Genuine Parts Co., 122 F.3d 566, 570 (8th Cir. 1997). In Mashka, the Eighth Circuit upheld the district court's admission into evidence of the position statement authored by the defendant employer's counsel. Id. The court concluded that the position statement was properly admitted to show pretext because the "non-discriminatory" explanation offered by the employer in the statement was inconsistent with that offered by the employer's witnesses at trial. Id. [14]

---

[14]The court in Mashka discussed the Tenth Circuit's decision in Equal Employment Opportunity Commission v. Gear Petroleum, Inc., 948 F.2d 1542 (10th Cir. 1991), in which an employer's position statement was excluded from evidence under Federal Rule of Evidence 408. Mashka, 122 F.3d at 570 That Rule, however, only excludes from evidence documents used in agency conciliation proceedings. Here, Defendant's position statement was not used in any conciliation proceedings because no conciliation efforts were made by Defendant.

The Eighth Circuit's decision in Mashka is on all fours with the case at hand.  As discussed above, Defendant's factual position and arguments advanced in support of its Motion for Summary Judgment are diametrically opposed to the position and arguments Defendant presented in its position statement to the FCHR.  In that position statement, Defendant represented that the directorship positions were combined and given to Ms. Monteiro in connection with the reduction in force. *See*, Lomaga Dep. at Pl. Ex. 5.  Moreover, and most significantly, Defendant represented to the FCHR in its position statement that the reason Plaintiff was not chosen for the combined position was that Plaintiff did not have Senior Friends experience.  Id.  Since this reason was factually false – hence, pretextual – the FCHR made a determination of reasonable cause in Plaintiff's favor. *See*, Cash Dep. at Pl. Ex. 1 and 2.

Apparently aware that it would have no chance at a summary judgment in this case had it stuck to its original factual arguments, Defendant has presented to this Court an entirely new and different "factual" basis for its "legitimate, non-discriminatory" reason for its actions against Plaintiff.  Defendant's totally different positions, and totally different articulated legitimate, non-discriminatory explanations for its actions, are, in and of themselves, sufficient to present a triable issue of fact as to pretext.

**B.    Plaintiff was substantially more qualified for the combined position than Ms. Monteiro.**

In a reduction in force case, pretext can be shown where the person who is not selected for a particular position is substantially more qualified for the position than the younger person who receives it. Lee v. GTE Florida, Inc. 226 F.3d 1249,1253-54 (11th Cir. 2000); Alexander v. Fulton County, 20 F.3d 1303, 1340 (11th Cir. 2000).  Pretext can be shown where the dissimilarities in the employees' qualifications are such that "no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question." Deines v. Texas Dept. of Protective and Regulatory Servs., 164 F.3d 277, 280 (5th Cir. 1999).

Here, without question, Plaintiff was substantially more experienced and qualified than Ms. Monteiro to assume the combined position of Director of Marketing/Public Relations and Director of Senior Friends.  First, Pat Pierce, Defendant's Director of Risk Management at the time, testified in deposition and in an affidavit submitted to the FCHR, that, when the positions

were combined, Ms. Monteiro had *no* marketing and public relations experience. Pierce Dep. p. 53, Def. Ex. 1. She made those statements based on personal knowledge. Id. Secondly, Ms. Monteiro herself admitted in deposition that there was a "substantial difference" between her and Plaintiff as to the amount of public relations/marketing experience each had. Monteiro Dep. pp. 113-114. Specifically, Ms. Monteiro admitted that, as of November 1993, when Plaintiff was informed that she was being removed from her position, Plaintiff had more experience in the position of Director of Marketing/Public Relations than Ms. Monteiro. Monteiro Dep. p. 108. Indeed, Ms. Monteiro acknowledged that when she assumed the new Director of Marketing and Public Relations duties, she was deficient in her marketing and public relations skills:

> Q. Isn't it true, ma'am, that you recognized that you needed further development in that area of marketing in order to do the job of being head of the director of – excuse me – being Director of Marketing and Public Relations for the hospital? . . . .
>
> A.    I think that I always was looking to develop my skills.
>
> Q. Isn't it true that as of that date when you signed this performance evaluation, that you recognized that you needed further training and development in the area of marketing and the marketing skills that you had in order to properly perform as Director of Marketing and Public Relations? . . . .
>
> . . . .THE WITNESS: I would guess so, yes.

Monteiro Dep. pp. 110-111. Significantly, in making these statements, Ms. Monteiro was shown her 1993 evaluation prepared by Pam Corliss, in which Ms. Corliss stated that Ms. Monteiro needed further development of her marketing skills. *See*, Monteiro Dep. at Pl. Ex. 19.

Ms. Monteiro also acknowledged in her deposition that Plaintiff had Senior Friends experience, a fact supported by both Plaintiff's testimony and that of the former Risk Management Director, Patricia Pierce. Monteiro Dep. p. 113; Plaintiff's Dep. pp. 72-73,122; Pierce Dep. p 46. Plaintiff, Ms. Pierce and Ms. Monteiro all testified that Plaintiff had substantially more marketing and public relations experience than Ms. Monteiro in November of 1993. Plaintiff Dep. p. 101; Pierce Dep. pp. 48-49; Monteiro Dep. pp. 113-114. Moreover, Plaintiff clearly had greater seniority – 17 years more – than Ms. Monteiro. Plaintiff Dep. p. 74; Monteiro Dep. p. 108. These facts are significant because, pursuant to Defendant's Manager's Manual in effect at the time, an employee's seniority had to be considered in connection with

16

selecting employees for retention in any reduction in force. *See*, Pierce Dep. p. 52; Scialdone Dep. pp. 19-21, Pl. Ex. 1 at §4.2.2[15]. Indeed, the Manager's Manual expressly provided that, even where the employees were equally qualified, the more senior employee *would* get the position: "If two or more employees are equally qualified, seniority would be the deciding factor." Scialdone Dep., Pl. Ex. 1 at §2.2.7.

The substantial, competent evidence, thus, establishes the fact that as of November 1993, when Plaintiff was unceremoniously removed from her Director of Marketing/Public Relations position, Plaintiff had over 20 years of hospital experience with six years as Director of Marketing and Public Relations, while Ms. Monteiro only had approximately three years of Senior Friends experience. While Ms. Monteiro was experienced in running a Senior Friends program, Plaintiff also had such experience. Thus, Plaintiff had substantially more experience and seniority than Ms. Monteiro. Given these startling contrasts in qualifications, sufficient evidence exists such that a reasonable person, when comparing the qualifications of Ms. Monteiro and Plaintiff, would clearly select Plaintiff for the combined position. The substantial difference in favor of Plaintiff's experience and qualifications over Ms. Monteiro's qualifications are sufficient enough to establish that Defendant's articulated non-discriminatory reasons for its actions are a pretext for discrimination.

C.    **The lost and destroyed documents.**

As discussed above, Defendant destroyed all of Plaintiff's personnel records, even after learning of her discrimination claims, and also apparently lost or destroyed all of the documents pertaining to the alleged reduction in force of which Plaintiff was a victim. These documents, if they had existed and had been produced, may have been favorable to Plaintiff, and may have given Plaintiff additional evidence to attack and contradict Defendant's "newly" articulated non-discriminatory reasons for its actions and thereby show pretext. Because the documents may have been favorable and were wrongfully destroyed or lost, Plaintiff is entitled, for purposes of Defendant's summary judgment arguments, to an adverse inference of pretext.

---

[15]Defendant may try to argue in its reply that Ms. Monteiro satisfied the "seniority" requirement because she was employed longer than Plaintiff at Pembroke Pines Hospital. Such an argument would be without merit because the Manager's Manual, at §7.1.3 defines "seniority" as time spent with Galen *and* its predecessor Humana. Scialdone Dep., Pl. Ex. 1 (at §7.1.3). Plaintiff clearly had far greater seniority than Ms. Monteiro under Defendant's own policies.

This was precisely the finding of Judge Dimitrouleas in Morgan v. Houston's Restaurants, Inc., No. 99-6970-CIV-DIMITROULEAS, pp. 13-15 (S.D. Fla., October 23, 2000). In reaching his decision, Judge Dimitrouleas relied on the cases of Anderson v. Twitchell-A Tyco International, Ltd. Co., 76 F.Supp.2d 1279, 1291 (M.D.Ala. 1999); Everett v. Lake Martin Area United Way, 46 F.Supp.2d 1233, 1237 (M.D.Ala. 1999); Lloyd v. Georgia Gulf Corporation, 961 F.2d 1190, 1195 (5th Cir. 1992); Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 687-88, 66 S.Ct. 1187, 1192 (1946); Hicks v. Gates Rubber Co., 833 F.2d 1406, 1419 (10th Cir. 1987); and Capaci v. Katz & Besthoff, Inc., 711 F.2d 647, 661 n. 7 (5th Cir. 1983), cert. denied, 466 U.S. 927, 104 S.Ct. 1709 (1984). Each of these cases stands for the proposition that a plaintiff is entitled to an inference that the documents would have been in his or her favor had they not been lost or destroyed. Moreover, such an inference is proper even if the loss or destruction of documents was not established as being in bad faith. See, e.g., Everett, 46 F.Supp.2d at 1237 (inference of pretext given to deny summary judgment even where loss of documents unexplained).

Accordingly, Plaintiff is entitled to an inference of pretext based on the lost and destroyed documents. This inference, along with the other evidence of pretext, is sufficient to deny Defendant's Motion for Summary Judgement and to have Plaintiff's case sent to a jury.

## VI.   CONCLUSION.

For the foregoing reasons, this Court should deny Defendant's Motion for Summary Judgment in its entirety.

|  | Respectfully submitted, |
|---|---|
| JOHN F. JANKOWSKI, JR., ESQ., P.A.<br>Counsel for Plaintiff<br>2 South University Dr.<br>Suite 265<br>Plantation, FL 33324<br>Tel. (954) 370-1026<br>Fax. (954) 382-4322 | BECKER & POLIAKOFF, P.A.<br>Co-Counsel for Plaintiff<br>3111 Stirling Road<br>Ft. Lauderdale, FL 33312<br>Tel. (954) 985-4145<br>Fax (954) 985-4176 |
| By: _____<br>John F. Jankowski, Jr., Esq.<br>Fla. Bar No.: 833533 | By _____<br>Roderick V. Hannah, Esq.<br>Fla. Bar No. 435384 |

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was furnished by mail to: Alexander D. del Russo, Esq., Levy, Kneen, Mariani, Curtin, Kornfeld & Del Russo, P.A., Counsel for Defendant, 1400 Centrepark Boulevard, West Palm Beach, FL 33401, this 8th day of December, 2000.

BECKER & POLIAKOFF, P.A.
Attorneys for Plaintiff
3111 Stirling Road
Ft. Lauderdale, FL 33312
Tel. (954) 985-4145

By: _____
        Roderick V. Hannah, Esq.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 99-6970-CIV-DIMITROULEAS

JEANNE M. MORGAN,

      Plaintiff,

vs.

HOUSTON'S RESTAURANTS, INC.,

      Defendant.

_____/

Magistrate Judge Johnson



FILED by _____ D.C.

OCT 2 5 2000

CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA. FT. LAUD.

## ORDER DENYING MOTION FOR SUMMARY JUDGMENT AS TO COUNTS I AND II

THIS CAUSE is before the Court upon Defendant's Motion for Summary

Judgment [DE 35] and Plaintiff's Motion in Limine and for Sanctions [DE 61]. The Court has

carefully considered the motions and is otherwise fully advised in the premises.

### I. BACKGROUND

Plaintiff filed a five-count First Amended Complaint in this case asserting the following

claims: 1) Sexual harassment and disparate treatment under Title VII and the Florida Civil Rights

Act ("FCRA") (Counts I and III); 2) Retaliation under Title VII and the FCRA (Counts II and

IV); and 3) Negligent training, supervision and retention under Florida law (Count V). However,

in her opposition to Defendant's Motion for Summary Judgment, Plaintiff states that she is not

pursuing her claims for retaliation or negligent training, supervision or retention, and therefore

summary judgment is appropriate as to Counts III, IV and V.

Plaintiff worked as a waitress at Defendant's restaurant from September 1996 through

August, 1997. Upon becoming pregnant, Plaintiff notified Defendant's managers of this fact in

March 1997. Plaintiff alleges that she was harassed from that point on account of her sex and

pregnant condition, particularly after she refused an easier but less lucrative working assignment,



PLAINTIFF'S
EXHIBIT

A

such as hostess. Plaintiff further alleges comments evidencing a bias against pregnant persons were directed at her, and she was repeatedly assigned to a work station requiring heavier lifting than other stations. Finally, Plaintiff alleges at least two humiliating incidents relating to her appearance, which she believed evidenced pregnancy discrimination, in addition to the aforementioned working conditions led Plaintiff to quit in a constructive discharge on August 31, 1997.

Defendant contends that Plaintiff's work assignments were treated the same as every other wait person at Houston's, in that a system of seniority and merit determined work stations. Defendant argues that Plaintiff was treated no better or worse than non-pregnant persons. Finally, Defendant argues that Plaintiff's income did not decrease after she became pregnant, and therefore no issues of material fact exist to show pregnancy discrimination.

## II. DISCUSSION

Plaintiff brings claims for both disparate treatment under Title VII and sex harassment under Title VII.[1] In this particular case, the two claims share a common factual predicate that merge the two claims, i.e. the alleged actions of Defendant's management towards Plaintiff. In particular, Plaintiff argues that the hostile environment caused a constructive discharge, which in turn is argued by Plaintiff as one of the adverse employment action for her disparate treatment prima facie case. Thus, although having common elements, the Court will address each claim in

---

[1] The Court notes that it *sua sponte* dismissed Plaintiff's initial complaint for a "shotgun" approach to theories of liability that merged theories within counts of the Complaint. The Amended Complaint, though initially read by the Court to contain only claims of hostile environment, apparently is read by both parties to include disparate treatment claims in Counts I and II. Therefore, since Defendant does not raise as an argument a wholesale failure to plead disparate treatment violations of Title VII, the Court will proceed to address both disparate treatment and hostile environment claims.

2

turn.

## A. Disparate Treatment Claim

Title VII of the Civil Rights Act of 1964 makes it unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. S 2000e-2(a)(1). A plaintiff may establish a prima facie case of discrimination either by "statistical proof of a pattern of discrimination," or "direct evidence of discrimination, which consists of 'evidence which, if believed, would prove the existence of discrimination without inference or presumption,'" or by "circumstantial evidence to prove discriminatory intent, using the framework established in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 802-804, 93 S.Ct. 1817, 1824-25, 36 L.Ed.2d 668 (1973)." <u>Holifield v. Reno</u>, 115 F.3d 1555, 1561-62 (11th Cir.1997) (citations omitted). In the usual case, direct evidence is not present and the plaintiff must rely on circumstantial evidence. <u>Id.</u> at 1562.

Applying the <u>McDonnell Douglas</u> framework to the pregnancy discrimination context, in order to show a prima facie case of discrimination under Title VII due to pregnancy discrimination, Plaintiff must show: "(1) she is a member of a group protected by Title VII; (2) she was qualified for the position or benefit sought; (3) she suffered an adverse effect on her employment; and (4) she suffered from a differential application of work or disciplinary rules." <u>Spivey v. Beverly Enterprises, Inc.</u>, 196 F.3d 1309, 1312 (11th Cir. 1999). "Demonstrating a prima facie case is not onerous; it requires only that the plaintiff establish facts adequate to permit an inference of discrimination." <u>Holifield</u>, 115 F.3d at 1562 (citations omitted).

If a prima facie case is shown, the defendant must "articulate some legitimate, nondiscriminatory reason for the [adverse employment action]." <u>Jones</u>, 137 F.3d at 1311. If this

3

is done, then the plaintiff may attempt to show that the proffered reason was merely a pretext for the defendant's acts. Id. at 1311; see also Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 253 (1981). The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff. Id.

### 1. Prima Facie Case – Adverse Action

Defendant argues that Plaintiff has failed to show that she suffered an adverse employment action and has failed to show that she was treated differently than non-pregnant wait persons. Defendant argues that the Pregnancy Discrimination Act does not require preferential treatment, and that all wait staff were required to do "side work," including moving of dishes from the kitchen to tables, to clean the restaurant, and to tuck their shirt in to present a uniform and neat appearance. Thus, Defendant argues that requiring Plaintiff to do these things cannot be an adverse action. In addition, Defendant argues that Plaintiff's income, according to Plaintiff's evidence, actually rose after she was pregnant, and thus Plaintiff was not paid less due to her pregnancy. Finally, Defendant argues that a suggestion by management that Plaintiff might prefer a non-lifting but less paid hostess position, cannot be discrimination since Plaintiff was not required to take the hostess position and no transfer occurred.

Plaintiff responds by arguing that the conduct of Defendant's management that forms the basis of Plaintiff's hostile environment claim (see below) also constitutes adverse employment actions sufficient to support Plaintiff's claim of disparate treatment. However, Plaintiff cites no case law in support of this proposition. Moreover, if legally correct, such an argument would turn most hostile environment claims into disparate treatment claims.

The law regarding adverse actions stems from Title VII retaliation cases, but there is no reason not to import that analysis into this pregnancy discrimination case. In Wideman v. Wal-

4

Mart Stores, 141 F.3d 1453 (11th Cir. 1998), the Eleventh Circuit held for the first time that Title VII's protection extends to adverse actions which fall short of ultimate employment decisions. Id. at 1456.  "Whether an action is sufficient to constitute an adverse employment action for purposes of a retaliation claim must be determined on a case-by-case basis, using both a subjective and an objective standard." Gupta v. Florida Bd. of Regents, 212 F.3d 571, 587 (11th Cir. 2000) (citations omitted).[2]  The Gupta decision used the standard that an adverse action "alters the employee's compensation, terms, conditions, or privileges of employment, deprives him or her of employment opportunities, or adversely affects his or her status as an employee." Gupta, 212 F.3d at 587 (quoting Robinson v. City of Pittsburgh, 120 F.3d 1286, 1300 (3rd Cir.1997)).

Analyzing Plaintiff's allegations in the Amended Complaint involving possible adverse actions, the Court concludes that an attempted transfer to the hostess position, ¶ 10.a of the Amended Complaint, does not constitute an adverse action for purposes of Plaintiff's prima facie case because the transfer was not done.  As for the alleged assignment to less lucrative waitress stations, ¶ 10.b., Plaintiff has not rebutted Defendant's evidence that Plaintiff's income did not decrease during the relevant time period.  Thus, while such assignments could be an adverse action, akin to a transfer with a reduction in pay, in this case such a transfer did not occur.  The next alleged adverse action, assignment to undesirable working conditions, including greater heavy lifting and side work, ¶ 10.c., could also be an adverse action.  In this case, upon a review of the record, particularly Plaintiff's deposition (See Plaintiff's deposition, Exhibit 1 to Appendix

---

[2] For some recent decisions from this Circuit concluding that no adverse action occurred, see e.g. Graham, supra; Blalock v. Dale County Bd. of Educ., 84 F.Supp.2d 1291, 1310-11 (M.D.Ala. 1999); Pennington v. City of Huntsville, Ala., 93 F.Supp.2d 1201, 1220 (N.D.Ala. 2000).

5

to Defendant's Statement of Undisputed Facts, at pages 80-84, 112) [DE 37], and the deposition of Mark Visocky (Exhibit B to Plaintiff's Statement of Facts) [DE 70], Plaintiff was repeatedly assigned to a station requiring heavy lifting, an objectively adverse assignment, even though Plaintiff also testified that the managers in the restaurant believed that station the easiest since it was closest to the kitchen. Plaintiff's deposition at pp. 88, 103-106, 108, 113. Thus, Plaintiff may use the repeated assignments to a station with heavy side work as an alleged adverse action to support her prima facie case.

Plaintiff also argues that she was constructively discharged, which constitutes an adverse employment action. Plaintiff's deposition at pp. 114, 120, 144. The Eleventh Circuit has held in dicta that a constructive discharge can be an adverse action. Griffin v. GTE Florida, Inc., 182 F.3d 1279, 1283-84 (11th Cir. 1999). To prove a constructive discharge, a plaintiff "must demonstrate that working conditions were 'so intolerable that a reasonable person in her position would have been compelled to resign.'" Id. at 1283; Poole v. Country Club of Columbus, Inc., 129 F.3d 551, 553 (11th Cir. 1997) (quoting Thomas v. Dillard Dep't Stores, Inc., 116 F.3d 1432, 1433-34 (11th Cir. 1997)).[3]

In support of her argument that her work conditions were intolerable, Plaintiff testified that there were repeated comments by several managers about her being fat while she was pregnant, that although she had approval from one manager to wear her shirt out, she was publicly humiliated before 19 fellow employees for wearing her shirt out by a different manager, she was repeatedly assigned a station with heavy side work, another manager refused to allow

---

[3] Since the Gupta decision includes within an adverse action an alteration of working conditions, and the test for showing a constructive discharge includes that working conditions were intolerable, this Court concludes that the Eleventh Circuit would find a constructive discharge to be an adverse action. Defendant has cited no authority to the contrary.

6

someone to switch stations with her, she was denied a prize for best uniform because she was pregnant. This testimony is supported by the testimony of Mark Visocky, one of the managers who made "fat" comments, who testified that the scheduling manager did not like Plaintiff and was trying to get rid of her through scheduling. Visocky deposition at pp. 23-24, 45. Plaintiff argues that all these negative actions resulted in intolerable conditions that led her to quit her job. On the record as a whole, this Court cannot conclude as a matter of law that Plaintiff was not constructively discharged.

### 2. Prima Facie Case -- Differential Application of Station Assignments

Defendant argues that under Spivey, Plaintiff must also show that the alleged adverse action was based upon her pregnancy. Defendant argues that Plaintiff has failed to produce any evidence on the differential application of work assignments. Defendant points to the testimony of Mark Visocky regarding manager Mark Price, in that Price assigned less desirable stations to those he did not like due to their subpar performance, but not on any protected basis. Defendant's Reply, page 2, note 2 (citing Visocky deposition at p. 18-19). In other words, all employees were treated the same.[4] However, Plaintiff did experience negative comments based upon her appearance, which in turn was caused by her known pregnancy. Upon the record as a whole, it becomes a disputed issue of fact whether Plaintiff was singled out for appearance related discipline or assignment to a heavy lifting station due to her pregnancy. Therefore, for

---

[4] Although possibly not admissible, there were two other pregnant servers at the same location as Plaintiff around the same time. One accepted the transfer to the hostess position and one left employment earlier in her pregnancy than Plaintiff without experiencing adverse actions or intolerable conditions.

purposes of summary judgment, Plaintiff has met the prima facie case required by Spivey.[5]

### 3. Defendant's Legitimate Business Reasons and Pretext

Defendant argues that it maintained a ranking system of servers that dictated to which stations servers were assigned.  Through the testimony of Defendant's managers, Defendant argues that Plaintiff had lower rankings which meant that she received less desirable stations. Defendants, therefore, have presented evidence of a legitimate business reason for the alleged adverse action of undesirable station assignments.[6]

Plaintiff argues, however, that the ranking system, even if used, was a mere pretext to mask the discriminatory assignments made by manager Mark Price.  First, Plaintiffs present a factual issue regarding the use of the ranking system, in that former manager Mark Visocky testified that the ranking system was not used to chart serves.  Visocky deposition at p. 46. Second, Plaintiff argues that since Defendants have not, and cannot, produce the documentation to support the existence of the ranking system, the absence of documents to support the alleged legitimate business reason mandates an inference of pretext.  See Anderson v. Twitchell -A Tyco International, Ltd. Co., 76 F.Supp.2d 1279, 1291 (M.D. Ala. 1999) (quoting Everett v. Lake Martin Area United Way, 46 F.Supp. 2d 1233, 1237 (M.D. Ala 1999) (in turn citing Lloyd v. Georgia Gulf Corporation, 961 F.2d 1190, 1195 (5th Cir. 1992)).

---

[5] Plaintiff will still be required to prove at trial that the alleged adverse actions were based upon her pregnancy in that she was treated worse than similarly situated non-pregnant workers were treated.  To the extent Plaintiff is arguing that she should have received reasonable accommodation for being pregnant, that claim is not part of this lawsuit as it is absent from her Amended Complaint.

[6] Plaintiff moved in limine to prevent Defendants from using the ranking system since documents relating to the ranking system have been destroyed.  The Court discusses this issue below.

8

This Court concludes that Plaintiff has shown sufficient pretext for this Court to deny summary judgment, or at least a sufficient inference of pretext due to the absence of documentation of the ranking system, based upon the case law cited.

### B. Hostile Environment Claim

Sexual harassment occurs, whether or not it is directly linked to the grant or denial of an economic *quid pro quo*, where "such conduct has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive working environment." Meritor Savings Bank, FSB v. Vinson, 477 U.S. 57, 65 (1986). "For sexual harassment to be actionable, it must be sufficiently severe or pervasive 'to alter the conditions of [the victim's] employment and create an abusive working environment.'" Id. at 65; Henson v. Dundee, 682 F.2d 897, 904 (11th Cir. 1982).

A Plaintiff establishes a prima facie case of hostile work environment by showing: (1) the Plaintiff belongs to a protected group; (2) she was subjected to unwelcome gender harassment; (3) the harassment complained of was based on sex; (4) the harassment complained of was sufficiently severe or pervasive to alter the conditions of her employment and create an abusive working environment; and (5) the employer is liable. Meritor v. Vinson, 477 U.S. 57. Sparks v. Pilot Freight Carriers, Inc., 830 F.2d 1554 (11th Cir. 1987); Mendoza v. Borden, Inc., 195 F.3d 1238 (11th Cir. 1999) (en banc).

Plaintiff belongs to a protected group, namely female and pregnant. Plaintiff also contends that the harassment was based on the fact that she is a pregnant female. However, Defendant disputes the fact that the harassment complained of was sufficiently severe or pervasive to alter the conditions of Plaintiff's employment, or that as an employer, Defendant is liable.

9

### 1. Prima Facie Case

"The EEOC Guidelines emphasize that the trier of fact must determine the existence of sexual harassment in light of 'the record as a whole' and 'the totality of circumstances, such as the nature of the sexual advances and the context in which the alleged incidents occurred.'" Meritor v. Vinson, 477 U.S. 57, 69; citing 29 C.F.R. § 1604.11(b) (1985). "Establishing that harassing conduct was sufficiently severe or pervasive to alter an employee's terms or conditions of employment includes a subjective and an objective component." Mendoza, 195 F.3d at 1256; Harris, 510 U.S. at 21-22. "[T]he objective severity of harassment should be judged from the perspective of a reasonable person in the plaintiff's position, considering 'all the circumstances.'" Oncale v. Sundowner Offshore Services, Inc., et al., 523 U.S. 75, 80 (1998). All of the circumstances may include; the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance. Harris v. Forklift Systems, Inc., 510 U.S. 17 (1993). "No single factor is required." Id. at 23.

As the Supreme Court stated in Meritor, "'mere utterance of an...epithet which engenders offensive feelings in an employee,' does not sufficiently affect the conditions of employment to implicate Title VII. Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment - an environment that a reasonable person would find hostile or abusive - is beyond Title VII's purview." Harris, 510 U.S. at 21. "Title VII is not a federal 'civility code.'" Mendoza, 195 F.3d at 1245; Oncale, 523 U.S. at 118.

As discussed above in the discussion of Plaintiff's claim of constructive discharge, Plaintiff testified that there were repeated comments by several managers about her being fat while she was pregnant, that although she had approval from one manager to wear her shirt out,

10

she was publicly humiliated before 19 fellow employees for wearing her shirt out by a different manager, she was repeatedly assigned a station with heavy side work, another manager refused to allow someone to switch stations with her, she was denied a prize for best uniform because she was pregnant. This testimony is supported by the testimony of Mark Visocky, one of the managers who made "fat" comments, who testified that the scheduling manager did not like Plaintiff and was trying to get rid of her through scheduling. Visocky deposition at pp. 23-24, 45. Plaintiff argues that all these negative actions resulted in an objectively hostile environment based upon her gender and pregnant condition.

Based upon the record as a whole, this Court cannot conclude as a matter of law that a hostile environment toward Plaintiff did not exist. Therefore, for purposes of defeating a motion for summary judgment, Plaintiff has met her prima facie case.

## 2. Employer Defenses

If a Plaintiff can show a prima facie case of sexual harassment, an employer has certain defenses to liability. The Supreme Court has held that:

> An employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee. When no tangible employment action is taken, a defending employer may raise an affirmative defense to liability or damages, subject to proof by a preponderance of the evidence, see Fed. Rule. Civ. Proc. 8(c). The defense comprises two necessary elements: (a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise. While proof that an employer had promulgated an antiharassment policy with complaint procedure is not necessary in every instance as a matter of law, the need for a stated policy suitable to the employment circumstances may appropriately be addressed in any case when litigating the first element of the defense. And while proof that an employee failed to fulfill the corresponding obligation of reasonable care to avoid harm is not limited to showing an unreasonable failure to use any complaint procedure provided by the employer, a demonstration of such failure will normally suffice to satisfy the

11

employer's burden under the second element of the defense. No affirmative defense is available, however, when the supervisor's harassment culminates in a tangible employment action, such as discharge, demotion, or undesirable reassignment.

Faragher v. City of Boca Raton, 118 S.Ct. 2275, 2292-93 (1998); Burlington Industries v. Ellerth, 118 S.Ct. 2257, 2270 (1998).

However, the first question to answer in this analysis in whether Plaintiff suffered a tangible employment action. Plaintiff's allegations include that she received repeated and undesirable assignments involving heavy side work, as discussed above. In addition, Plaintiff argues that she was constructively discharged. The evidence presented by Plaintiff in her deposition and the deposition of Mark Visocky at a minimum create a genuine issue of material fact as to whether a tangible employment action occurred. Therefore, the Court need not reach the issues of whether Defendant exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and whether Plaintiff unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise.[7]

### C. Plaintiff's Motion in Limine

Plaintiff seeks to preclude Defendant from introducing any oral testimony regarding Plaintiff's ranking in Defendant's server ranking system because the documentary evidence to support such testimony was destroyed by Defendant's employees. In the alternative, Plaintiff seeks an adverse inference of pretext regarding the destroyed documents for purposes of defending the summary judgment motion, and an instruction to the jury regarding an inference of

---

[7] These two issues, therefore, remain to be litigated at trial. The Court notes, however, that upon a review of the factual record on summary judgment, issues of material fact exist as to whether Plaintiff followed at least the first level of the harassment reporting procedure in Defendant's employee handbook.

pretext. Plaintiff presents the deposition testimony of Defendant's restaurant managers to show some inconsistencies regarding each manager's testimony regarding the use, storage and retention of the server ranking documents. Plaintiff also presents the case law discussed above at page eight (8).[8]

Defendant argues that the deposition testimony of the managers was consistent in that the records were kept at the restaurant and routinely destroyed as confidential documents. As to the charge of intentional destruction of documents, Defendant argues that such destruction in the normal course of business prior to any charge of discrimination being filed.

Although neither party analyzed in detail the relevant federal record-keeping regulations, 29 C.F.R. § 1602.14, Plaintiff does imply a violation of this regulation. The regulation requires that personnel records be kept for one year "from the date of the making of the record or the personnel action involved, whichever occurs later." 29 C.F.R. § 1602.14. However, where a charge of discrimination has been filed against the employer, "the respondent employer shall preserve all personnel records relevant to the charge or action until final disposition of the charge or the action." Id. Such final disposition includes the time for filing of a U.S. District Court suit and the date on which the litigation is terminated. Id. In this case the alleged time of the personnel records in this case is May to August, 1997. The charge of discrimination in this case was filed on April 3, 1998. Therefore, it would appear that records generated after April 3, 1997 should have been preserved.

Defendant argues that the quarterly ranking documents are not covered by 29 C.F.R.

---

[8] In addition to Anderson, Everett, and Lloyd, Plaintiff relies on a recent unpublished decision from the Southern District of Indiana, Smith v. Borg-Warner Automotive, 2000 WL 1006619 (July 19, 2000 S.D.Ind.). This Court typically does not rely on such unpublished opinions, particularly when there are published decisions within the Eleventh Circuit.

§1602.14. The regulation does not completely define "personnel record," though it states that such documents "includ[e] but not necessarily limited to requests for reasonable accommodation, application forms submitted by applicants and other records having to do with hiring, promotion, demotion, transfer, lay-off or termination, rates of pay or other terms of compensation, and selection for training or apprenticeship." Defendant obviously argues that the rankings in question do not determine any of the listed types of records, but the Court notes that the regulation states "including but not necessarily limited to." Neither side presents case law on this issue, and the Court could find no case interpreting this part of the regulation.

Plaintiff does cite to Seventh Circuit case law for the proposition that violations of record retention regulations create a presumption that the missing record contained evidence adverse to the violation. Mathis v. John Morden Buick, Inc., 136 F.3d 1153, 1155 (7th Cir. 1998); Latimore v. Citibank Federal Sav. Bank, 151 F.3d 712, 716 (7th Cir. 1998) ("The violation of a record retention regulation creates a presumption that the missing record contained evidence adverse to the violator"). However, Defendant argues that the Seventh Circuit requires a showing of bad faith (Latimore at 716; Mathis at 1155), and on the record in this case, Defendant argues that bad faith cannot be shown, since the records were routinely destroyed within a year of their creation, and are not covered by the regulation.

Upon independent research in other circuits, this Court concludes that the instant situation is akin to the Fair Labor Standards Act situations where an employer does not keep time records. See Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 687-88, 66 S.Ct. 1187, 1192 (1946); Hicks v. Gates Rubber Co., 833 F.2d 1406, 1419 (10th Cir. 1987) ("Hicks is entitled to the benefit of a presumption that the destroyed documents would have bolstered her case"); Capaci v. Katz & Besthoff, Inc., 711 F.2d 647, 661 n. 7 (5th Cir.1983), cert. denied, 466 U.S. 927, 104 S.Ct.

14

1709 (1984). Therefore, Plaintiff's motion is denied as to Defendant's ability to present oral

testimony from managers with first hand knowledge of legitimate business reasons for the

actions taken with regard to Plaintiff,[9] but Plaintiff is entitled, at least for purposes of summary

judgment, to an inference of pretext that the documents destroyed do not support the reasons

proffered by Defendant. This presumption will exist through Plaintiff's presentation of its prima

facie case at trial, but Defendants, in accordance with all the cases cited above, may overcome

this inference and presumption through presentation of evidence to support its legitimate

business reasons for its actions. The Court reserves ruling on whether the jury instructions will

contain an instruction regarding this inference.

## III. CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1.  Defendant's Motion for Summary Judgment [DE 35] is hereby **DENIED** as to Counts I
    and II, and **GRANTED** as to Counts III, IV and V, for the reasons discussed above.

2.  Plaintiff's Motion in Limine and for Sanctions for Intentional Destruction of Documents
    [DE 61] is hereby **DENIED** as to the exclusion of testimony regarding server rankings,
    but **GRANTED** to the extent that an inference that the destroyed documents support
    Plaintiff is being used by the Court for this summary judgment ruling and for Plaintiff's

---

[9] Plaintiff may cross examine Defendant's witnesses regarding the destruction of these
documents.

15

prima facie case at trial.

    **DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida,
this ____ day of October, 2000.

                                         WILLIAM P. DIMITROULEAS
                                         United States District Judge

Copies furnished to:

Roderick Hannah, Esq.
Edwin Jonas, III, Esq.
Kristen Kay, Esq./G. Joseph Curley, Esq.

16