UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FT. LAUDERDALE DIVISION

CASE NO. 00-6227-CIV-MORENO
Magistrate Judge: Dubé

JACQUELINE IAIA,

     Plaintiff,

v.

GALEN HOSPITAL-PEMBROKE PINES,
INC., f/d/b/a PEMBROKE PINES
HOSPITAL,

     Defendant.

_____/



## DEFENDANT'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

The Defendant, GALEN HOSPITAL—PEMBROKE PINES, INC., f/d/b/a PEMBROKE PINES HOSPITAL, hereby submits this Reply Memorandum of Law in Support its Motion for Summary Judgment. Because Plaintiff has failed to establish the existence of a triable issue of material fact on her claims for age discrimination, Defendant is entitled to Summary Judgment.

### 1. PLAINTIFF'S FCRA CLAIM IS TIME BARRED

Defendant relies on the recent Florida Supreme Court decision in *Joshua v. City of Gainesville*, 768 So.2d 432 (Fla. 2000), since it is controlling authority and it changed (in favor of claimant) the limitations period in which to commence suit under the FCRA. Under *Joshua*,

- If the Commission makes a determination of reasonable cause within the 180 day period of Section 760.11(3), then the plaintiff

has one year from the date of that determination to commence her
suit. *Id.* at 436.

- If the Commission fails to make a determination of reasonable
  cause within the 180 days, then the plaintiff has four years under
  Section 95.11(3)(f) from the date of the discriminatory act to
  commence her suit. *Id.* at 439.

Thus, the determination of when a claimant must commence her civil action is made at the end of

the 180-day period. If the Commission has made its determination of reasonable cause, then suit

must be filed within one year; but if no determination has been made, then suit must be filed

within four years from the date of the discriminatory act. In our case, the Commission failed to

make a timely determination, but Ms. Iaia did not file suit until January 31, 2000--74 months

after learning her position was eliminated, and 68 months after her date of separation. Under any

applicable limitations period, her claim is untimely and subject to summary judgment.

Plaintiff attempts to suggest a new limitations period inconsistent with *Joshua* and

contrary to the notion of finality underlying statutes of limitations. Under Plaintiff's theory, if

the Commission fails to make a determination within 180 days, then the four-year limitations

period of Section 95.11(3)(f) will apply. However, if at any time thereafter (be it one, five or ten

years), the Commission ultimately makes an untimely determination of cause, then a claimant

may revert back to the one year limitations period of Section 760.11(5) from the date of the

untimely determination. Clearly, this argument is contrary to the holding in *Joshua*.

> We hold that the general four-year statute of limitations for
> statutory violations, Section 95.11(3)(f), Florida Statutes (1995),
> applies to actions filed pursuant to Chapter 760, Florida Statutes, if
> the Commission on Human Relations does not make a reasonable
> cause determination on a complaint within the 180 days
> contemplated by Section 760.11(a), Florida Statutes (1995).

*Id.* at 433. Nowhere does the *Joshua* court suggest that a plaintiff can resort to the one year

limitations period of 760.11(5) in order to revive a claim that has since been extinguished after

2

the expiration of the four-year limitations period under 95.11(3)(f). Nor does the *Joshua* court suggest that the parties may "flip flop" between the limitations periods of Sections 95.11(3) and 760.11(5). As the *Joshua* plaintiff argued, and as the court agreed, the one-year period of 760.11(5) no longer applied if the Commission failed to make a timely reasonable cause determination.

While Ms. Iaia claims unfair prejudice, she fails to recognize her own duty to ensure the processing of her claim. It bears noting that Ms. Iaia was free to file suit at any time after the expiration of the 180-day period of Section 760.11(5). As between the parties, it was only Ms. Iaia who knew of her pending charge of discrimination. Defendant remained unaware of its very existence for more than three years,[1] during which time Defendant sold Pembroke Pines Hospital and lost control over and access to any employees and hospital documents which might assist in its defense.

Plaintiff attempts to rely on *McDowell v. School Board of Leon County*, 765 So.2d 804 (Fla. 1st DCA 2000), for the assertion that the statute of limitation does not run until one year from the date of the Commission's determination regardless of when it is made. Yet *McDowell* dealt with a lawsuit that was clearly timely under *Joshua*.[2] The *McDowell* court recognized that "before the running of the one and one-half year Milano—Joshua limitations, the Commission issued a determination of reasonable cause . . ." *Id.* at 806. *McDowell* based its decision on "applying the general four-year statute of limitation pertaining to [a]n action founded on a statutory liability, section 95.11(3)(G) . . ." *Id.* Therefore, to the extent the holding in *McDowell*

---

[1] *See* 8/14/00 Deposition of Joseph A. Cash, p. 31-32.

[2] Plaintiff had filed his Charge on May 9, 1994, but the Commission did not render its determination of reasonable cause until May 30, 1995 (more than the 180-day period). Plaintiff then commenced his lawsuit on May 20, 1996. Thus, the claim was filed within the four-year limitations period of Section 95.11(3)(f) as recognized by the *Joshua* court.

WPB#533017.01

is based on the general four year limitations period of Section 95.11(3)(f), it is consistent with the controlling authority of *Joshua*. To the extent *McDowell* suggests anything contrary, it is simply not good law. The *Joshua* decision clearly held that the statute of limitations of Section 95.11(3(f) applies to FCRA claims if the Commission does not issue a reasonable cause determination within 180 days. The holding of *Joshua*, and its application to the facts in this case, could not be clearer. Ms. Iaia's FCRA claim is time barred, and Defendant is entitled to summary judgment as to Count I.

### 2. PLAINTIFF CANNOT RELY ON EQUITABLE TOLLING TO SURVIVE JUDGMENT ON HER FCRA CLAIM

Plaintiff suggests that even if the four-year statute of limitations at Section 95.11(3)(f) applies, her FCRA claim can be saved under the doctrine of equitable tolling. *See* Plaintiff's Memorandum of Law, p. 6-7. Plaintiff argues that there were substantial delays in the Commission's handling of the investigation, none of her own doing, and that it would be inequitable for Plaintiff to be prejudiced as a result of these delays. This argument fails, however, since it overlooks the clear language of Fla. Stat. Section 95.051.

Florida Statute Chapter 95 governs statutes of limitations, and the *Joshua* Court applied the four-year limitation period at Section 95.11(3)(f) (actions founded on a statutory liability) to extend the time within which a claimant may commence her civil action. As part of Chapter 95, Section 95.051 governs when the limitations period under Section 95.11 may be tolled.[3] It sets

---

[3] A copy of Florida Statute Section 95.051 is attached to this Reply Memorandum as Exhibit 1.

4

forth eight specific circumstances for tolling the limitations period under Section 95.11, **none** of which have been alleged by Plaintiff or are present in the record before this Court. Section 95.051(2) concludes by stating that "[n]o disability or other reason shall toll the running of any statute of limitations except those specified in this section, S. 95.091, the Florida Probate Code, or the Florida Guardianship Law."

In light of this statutory limitation on equitable tolling, Florida courts have considered and rejected Plaintiff's argument that untimely claims under the FCRA can be revived through equitable tolling absent the circumstances enunciated under Section 95.051. In *Greene v. Seminole Electric Cooperative, Inc.*, 701 So.2d 646 (Fla. 5th DCA 1997), a disability claim, the plaintiff filed his charge on June 16, 1994, but sought to assert claims prior to the one year period of Section 760.11(1). In dismissing these claims, the court rejected any attempts to rely on equitable tolling.

> Greene contends that the limitations period should be equitably tolled, but the only acts or circumstances that will toll a limitations period are those enumerated in section 95.051(2), *see, Fulton County Administrator v. Sullivan*, 22 Fla. L. Weekly S578. . . (Fla. September 25, 1997), and Greene does not allege that any of the acts or circumstances enumerated in the statute which tolled the limitations period apply to him.

*Id.* At 648. Similarly, in *Cunningham v. Pinellas County Sheriff's Department*, 2000 WL 641 601 (M.D. Fla. Feb. 29, 2000), a race claim, the district court rejected any use of equitable tolling unless the circumstances of Section 95.051 apply. *Id.* at 2. Since Ms. Iaia does not allege or prove any of the exceptions under 95.051, the four-year limitations period of Section 95.11(3)(f) cannot be equitably tolled and her claim is subject to summary judgment.

While Plaintiff cites three federal decisions to support her claim for equitable tolling, all are based on federal claims and not the FCRA. *See Zipes* (Title VII); *Nimmo* (ADEA); *Jones*

5

(Title VII). For example, in *Zipes v. Transworld Airlines, Inc.*, 455 U.S. 385 (1982), the Supreme Court held that the filing of the initial charge with the EEOC "is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling." *Id.* at 393. In our case, however, Defendant has not sought summary judgment on Plaintiff's federal ADEA claim based on the statute of limitations; it is the state claim that is time barred. Since summary judgment on statute of limitations grounds is sought only as to Count I, Plaintiff's use of federal case authority is misguided.

### 3. PLAINTIFF CANNOT STATE A *PRIMA FACIE* CASE OR REBUT DEFENDANT'S EXPLANATION FOR ITS ACTIONS

According to Plaintiff, Defendant has misstated that the two positions of Director of Marketing/Public Relations and Director of Senior Friends where not combined until after Plaintiff's elimination. *See* Memorandum in Opposition, p. 8-9. Plaintiff was laid off and placed on a six month unpaid leave of absence at the time her position was eliminated in November, 1993, with the understanding that if not recalled then she would be terminated. Thereafter, in May 1994, Plaintiff was advised that her employment was terminated. Although these two positions were combined after Miss Iaia's layoff, their consolidation took place within her six month leave of absence period. Thus, Plaintiff argues that our failure to consider her prior to termination is sufficient to establish a *prima facie* case.

This argument, however, continues to miss the critical issue in our chronology of events: the subsequent decision to combine these two positions was made by a **different decision-maker**. Miss Iaia claims that the decision to eliminate her position in November 1993, was a result of age discrimination, and that decision was undisputedly made by the former CEO, Mr. Jerry Sutphin. Yet the subsequent decision to combine the duties of these two positions was

6

made by the new CEO, Mr. Rick O'Connell. This decision cannot constitute evidence of an intent to discriminate by the prior decision-maker. In addition to the authority cited in Defendant's initial Memorandum of Law, see *Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 618 (7th Cir. 2000) (different decisions made by different supervisors "are seldom sufficiently comparable to establish a prima facie case of discrimination for the simple reason that different supervisors may exercise their discretion differently").

Next, Plaintiff argues that the Defendant cannot deny the consolidation of these two positions as part of the reduction in force, since the Defendant conceded this in its EEOC Positions Statement. Now, according to Plaintiff, we have presented a completely new "attempt to rearrange the truth." *See* Memorandum In Opposition p. 10. Indeed, the March 6, 1998 EEOC Positions Statement does contain language that the two jobs were consolidated as part of the reduction in force. While Plaintiff quoted this language in her Memorandum In Opposition, she neglected to mention that the author specifically noted that the "statements and representations herein are not based upon first-hand knowledge."[4] In drafting this Position Statement, the author was hampered by the same lack of information confronting Defendant in its initial defense of this law suit - - a lack of employees or hospital documents to assemble a defense. The contention that these two positions were combined at the time of the reduction in force is simply incorrect. This was not known until the July 24, 2000 deposition of Mr. Jerry Sutphin, which thereafter formed the basis for Defendant's Motion For Leave To Amend Its Answer to deny the consolidation of these positions (D.E. No. 28). Subsequent to that, all witnesses with first-hand knowledge have confirmed that the two positions were not combined at the time of the reduction, but only afterwards through the decision of the new CEO.

---

[4] A copy of this letter is attached as Exhibit 2 to this Reply Memorandum.

Finally, Plaintiff suggests that certain age-related remarks attributed to Mr. Sutphin can be used to establish a prima facie case and pretext. This argument fails, however, since these alleged remarks were not directed to Miss Iaia specifically and are too ambiguous in their suggested meaning or context. Miss Iaia testified to two specific age-related comments to Mr. Sutphin;

- "If your attitude is old and complacent, you are not going to make it here".

- "If you are not able to cut the mustard, heads will roll."

6/28/00 deposition of Jacquelyn Iaia, pp. 65-66. Miss Iaia does not claim that these comments were made to her specifically but rather that they were made at the hospital's Managers' meeting attended by over forty individuals.

In order to avoid Summary Judgment based on alleged age-related remarks, the Plaintiff must show that these comments were 1) age-related, 2) close in time to the employment decision at issue, 3) made by the individual with authority over the employment decision at time, and 4) *related to the employment decision at issue. See Brown v. CFC Logic, Inc.,* 82 F.3d 651, 655 (5th Cir. 1996)(emphasis added). In *Brown,* for instance, the decision-maker's statement that the staff was "getting long in the tooth" was held not to reflect age discrimination since the statement was not directed to the Plaintiff specifically.

Courts have recognized that comments which are vague or susceptible to different interpretations cannot be relied upon to show pretext. *See, e.g., Thies v. Denver Board of Water Commissioners,* 149 F. 3d 1191 (10th Cir. 1998); *Guthrie v. Tifco Industries,* 941 F.2d 374 (5th Cir. 1991). While Miss Iaia might subjectively feel that Mr. Sutphin wanted to remove older employees, she is unable to point to any facts supporting her belief that these comments or perceptions were age-based. Her conclusory allegations of age discrimination are not sufficient

8

to overcome her burden of rebutting Defendant's non-discriminatory reasons for the elimination of her position.

### 4.  PLAINTIFF IS NOT ENTITLED TO AN INFERENCE OF PRETEXT

Plaintiff has misrepresented a number of the cases cited in her Memorandum in Opposition concerning the consequence of lost or destroyed documents during the reduction in force. These individual misrepresentations are, apparently, intended to support Plaintiff's more comprehensive misrepresentation that she is entitled to an inference of pretext because certain documents can no longer be located.

Plaintiff cites to *Anderson v. Twitchell-A Tyco International, Ltd.*, 76 F.Supp.2d 1279 (M.D. Ala. 1999*); Everett v. Lake Martin Area United Way*, 46 F.Supp.2d 1233 (M.D. Ala. 1999); and *Lloyd v. Georgia Gulf Corp.*, 961 F.2d 1190 (5th Cir. 1992), for the blunt statement that "plaintiff is entitled to an inference of pretext based on the lost and destroyed documents." *See* Memorandum in Opposition, p. 18. A quick glance at these decisions reveals that they are concerned when an employer's stated reason for termination involved the employee's performance, but there were no supporting documents, then an inference may arise that the reasons were pretextual. *See Anderson* at 1291, *Everett* at 1237, and *Lloyd* at 1195. Of course, no such issue was present in our case. There was no suggestion that Ms. Iaia's termination was based on her performance. Her termination was part of a reduction in force and the elimination of the position which she held.

Plaintiff's reliance on 29 C.F.R. § 1602.14 and on *Pacaci v. Katz & Besthoff, Inc.*, 711 F.2d 647 (5th Cir. 1983), is equally misplaced. *Pacaci* was a Title VII claim for sex discrimination. In it, the EEOC argued that it was entitled to a presumption of pretext based upon 29 C.F.R. § 1602.14. This regulation applies **only to Title VII and ADA claims**, and

9

places certain record keeping responsibilities on employers once charges of discrimination have been filed. The regulation does **not** apply to ADEA claims such as that of Ms. Iaia.

It is significant to note that the disappearance of files pertaining to Ms. Iaia's employment were apparently the result of actions taken by third parties before anyone (excluding of course Ms. Iaia) knew of the existence of her charge of discrimination. It is undisputed that the Hospital did not receive notice of Ms. Iaia's claim until the September 26, 1997 Notice of Charge was sent by the Florida Commission on Human Relations. Prior to that time, in June of 1995, the Defendant entered into a long term lease for the Hospital facility with the South Broward Hospital District. At that time, there was no destruction of documents. Instead, all documents were either stored or taken over by the new operator of the Hospital facility.[5] Under the terms of that agreement, the South Broward Hospital District became responsible for preserving all records of the Hospital in existence at the time of the agreement. This obligation is reflected in the June 8, 1995 Master Agreement between Defendant and the South Broward Hospital District, at Paragraph 5.10(b).[6] Clearly, the Defendant did not have control over hospital files after June of 1995; the retention and/or destruction of those documents was handled by the South Broward Hospital District. Accordingly, if certain documents were lost or destroyed in the ensuing seven years, this does not create a right on Plaintiff's part to seek an adverse inference against the Defendant by virtue of their disappearance.

For the foregoing reasons, Defendant is entitled to summary judgment on Ms. Iaia's claims of age discrimination.

---

[5] See 10/17/00 Deposition of Maria DiLomaga, pp. 44-46. An excerpt of this deposition is attached to this Reply Memorandum as Exhibit 3.

[6] The relevant excerpt of this Agreement is attached to this Reply Memorandum as Exhibit 4.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was furnished via facsimile and U.S. Mail this 3rd day of January, 2001, to Roderick V. Hannah, Esq., Becker & Poliakoff, P.A., P.O. Box 9057, Ft. Lauderdale, Florida 33310-9057; and to John F. Jankowski, Jr., Esq, John F. Jankowski, Jr., P.A., 2 South University Drive, Suite 265, Plantation, Florida 33324.

CARLTON, FIELDS, WARD, EMMANUEL,
 SMITH & CUTLER, P.A.
P.O. Box 150
West Palm Beach, FL 33402-0150
Telephone:(561) 659-7070
Facsimile: (561) 659-7368

By: _____
   Alexander D. del Russo
   Florida Bar Number 350273

11

FL ST S 95.051                                                                              Page 1
West's F.S.A. § 95.051

## WEST'S FLORIDA STATUTES ANNOTATED
### TITLE VIII. LIMITATIONS
### CHAPTER 95. LIMITATIONS OF ACTIONS; ADVERSE POSSESSION

Copr. © West Group 2000. All rights reserved.

Current through End of 2000 2nd Reg. Sess.

95.051. When limitations tolled

(1) The running of the time under any statute of limitations except ss. 95.281, 95.35, and 95.36 is tolled by:

(a) Absence from the state of the person to be sued.

(b) Use by the person to be sued of a false name that is unknown to the person entitled to sue so that process cannot be served on the person to be sued.

(c) Concealment in the state of the person to be sued so that process cannot be served on him or her.

(d) The adjudicated incapacity, before the cause of action accrued, of the person entitled to sue. In any event, the action must be begun within 7 years after the act, event, or occurrence giving rise to the cause of action.

(e) Voluntary payments by the alleged father of the child in paternity actions during the time of the payments.

(f) The payment of any part of the principal or interest of any obligation or liability founded on a written instrument.

(g) The pendency of any arbitral proceeding pertaining to a dispute that is the subject of the action.

(h) The minority or previously adjudicated incapacity of the person entitled to sue during any period of time in which a parent, guardian, or guardian ad litem does not exist, has an interest adverse to the minor or incapacitated person, or is adjudicated to be incapacitated to sue; except with respect to the statute of limitations for a claim for medical malpractice as provided in s. 95.11. In any event, the action must be begun within 7 years after the act, event, or occurrence giving rise to the cause of action.

Paragraphs (a)-(c) shall not apply if service of process or service by publication can be made in a manner sufficient to confer jurisdiction to grant the relief sought. This section shall not be construed to limit the ability of any person to initiate an action within 30 days of the lifting of an automatic stay issued in a bankruptcy action as is provided in 11 U.S.C. s. 108(c).

(2) No disability or other reason shall toll the running of any statute of limitations except those specified in this section, s. 95.091, the Florida Probate Code, or the Florida Guardianship Law.

### CREDIT(S)

2000 Electronic Pocket Part Update

Amended by Laws 1986, c. 86-266, § 3, eff. Oct. 1, 1986;  Laws 1989, c. 89- 26, § 1, eff. May 29, 1989;  Laws 1990, c. 90-105, § 1, eff. June 17, 1990; Laws 1995, c. 95-147, § 519, eff. July 10, 1995.

### HISTORICAL AND STATUTORY NOTES

Copr. © West 2000 No Claim to Orig. U.S. Govt. Works

EXHIBIT

1

# MARK E. EDWARDS
ATTORNEY AT LAW

MARK E. EDWARDS
JEANNE CASSTEVENS THOMAS
SARAH R. GALVARRO
KIP P. ROTH
SUE WILLIS-GREEN
ROBERT W. HORTON

WRITER'S DIRECT DIAL
(615) 344-2970

2501 PARK PLAZA
NASHVILLE, TENNESSEE 37203

(615) 344-2591
(615) 344-2200 FAX

March 6, 1998

Via Facsimile 850/488-5291

Ms. Linda Mathis, Investigator
Employment Investigation Unit
Florida Commission on Human Relations
325 John Knox Road, Suite 240, Building F
Tallahassee, Florida 32303-4149

Re:   *Iaia v. Galen Hospital - Pembroke Pines, Inc.*
      *f/d/b/a Pembroke Pines Hospital*
      **EEOC 15D971107 and FCHR No. 95-0414**

<div style="border:1px solid black">

**EXHIBIT**

2

</div>

Dear Ms. Mathis:

This letter constitutes the Corporation's statement of position and response to the Commission's request for information. Ms. Iaia alleged that she was discriminated against because of her age (49). As discussed more fully below, this charge is without merit and should be dismissed.

Counsel has prepared this letter solely for your use in your investigation and evaluation of the above-captioned case. Because counsel prepared this letter based on limited information, this statement and the representations herein are not based upon first-hand knowledge. Accordingly, counsel does not authorize or intend this letter to be used for any purpose other than that described above. The Corporation will cooperate in the investigation of this matter through counsel, and the undersigned will respond to any relevant questions or requests for information you may have now or later in your investigation.

The Corporation divested the assets relating to the Hospital in 1995. Therefore, this Corporation does not have much information relating to this matter.

The Corporation understands that Ms. Iaia was a long standing employee of the Hospital and worked for the Hospital as the Director of the Marketing Department. In that capacity, she was primarily responsible for planning, organizing and directing the marketing function of the Hospital.

000387

Iaia v. Pembroke Pines Hospital
Charge No. 15D971107 and FCHR No. 95-0414
March 3, 1998
Page 2


From late 1993 through 1994, the Hospital initiated a necessary reduction in operating costs. As part of this reduction, Ms. Iaia's position was eliminated. During this period of time, the Hospital reviewed Ms. Iaia's position in the Marketing Department along with various other management level positions and determined that the function of the Marketing Department Director could be combined with the position of the Director of Public Relations and Senior Friends.

This decision was made because the employee performing the function of the Director of Public Relations and Senior Friends was capable of performing the duties and responsibilities of both areas. Ms. Iaia was not experienced in the area of Senior Friends and could not perform that function when the positions were combined. Consequently, her position was eliminated

In order to function in the changing healthcare environment, the Hospital had to reduce its expenses, including employment expenses. The Hospital selected positions for elimination to allow for the continued provision of quality patient care when staff was reduced. These positions were eliminated based on the Hospital's goal of reducing expense through the efficient and effective restructuring of job responsibilities that also ensured quality healthcare.

Clearly Ms. Iaia was not discriminated against based on her age (46). Following the elimination of her position, her job responsibilities were absorbed by another employee. Ms. Iaia was simply terminated because the Hospital determined that it was necessary to reduce expenses.

The Hospital denies that it discriminated against Ms. Iaia and respectfully requests that this charge be dismissed.

Sincerely,

Mark E. Edwards

MEE/JWT/gek

000386

1
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
2
FORT LAUDERDALE DIVISION

3
CASE NO. 00-6227-CIV-MORENO
Magistrate Judge Dube
4

5
JACQUELINE IAIA,                        )        COPY
                                        )
6                    Plaintiff,         )
                                        )
7        vs.                            )
                                        )
8    COLUMBIA HEALTHCARE                 )
     CORPORATION d/b/a PEMBROKE          )
9    PINES HOSPITAL, a foreign           )
     corporation,                        )
10                                       )
                     Defendant.          )
11  _____X

12                              Becker & Poliakoff, P.A.
                                500 Australian Avenue South
13                              Ninth Floor
                                West Palm Beach, Florida
14                              Tuesday, October 17, 2000
                                10:00 o'clock A.M.
15

16  APPEARANCES:

17        BECKER & POLIAKOFF, P.A.,
          BY: RODERICK V. HANNAH, ESQ.,
18        appearing on behalf of the Plaintiff.

19        LEVY, KNEEN, MARIANI, CURTIN,
          KORNFELD & DEL RUSSO, P.A.,
20        BY: ALEXANDER D. DEL RUSSO, ESQ.,
          appearing on behalf of the Defendant.
21

22                    ------------

23                      DEPOSITION

24                          OF

25              MARIA D. LOMAGA

EXHIBIT
3

CAPITAL REPORTING SERVICE, INC.
Fort Lauderdale, FL (954) 522-6401

1    responsibilities she assumed when she became

2    director of public relations or when this job

3    title was added to her job?

4         A.   No, I don't.

5         Q.   The third category that you've been

6    requested to be here today on that you supposedly

7    have the most knowledge for the corporation, the

8    Defendant, is the location, maintenance,

9    destruction, and/or loss of any and all personnel

10   policies, handbooks and manuals for Pembroke

11   Pines Hospital that were in effect during the

12   years 1993 and 1994.  Do you have any knowledge

13   whatsoever on any of that issue?

14        A.   No.

15        Q.   Do you know of anyone else at the

16   hospital who would know anything about that?

17        A.   I don't know because it would have

18   happened when Memorial took over.  Whatever

19   happened to those records, I have no idea.

20        Q.   Was there a destruction of documents

21   that occurred when the hospital was taken over?

22        A.   There was no destruction.  I think

23   that everything was stored or shipped out by

24   Memorial.

25        Q.   Do you know where they stored the

1    records?

2         A.    Document Bank.

3         Q.    Where is that?

4         A.    That's in North Miami.

5         Q.    All personnel records for Pembroke

6    Pines Hospital were stored at this Document Bank?

7         A.    I assume.  I don't know.

8         Q.    Do you know the exact address in North

9    Miami?

10        A.    Not offhand.

11        Q.    That's what it's called, Document

12   Bank?

13        A.    Document Bank, yeah.

14        Q.    That's the name of the storage

15   facility?

16        A.    Correct.

17        Q.    Is that the normal storage facility

18   that was used by Pembroke Pines Hospital to store

19   their records off site?

20        A.    And Memorial.

21        Q.    And did that include all the financial

22   records for the hospital as well that was run by

23   your department?

24        A.    Possibly, yes.

25        Q.    You say possibly.  Do you know?

1          A.    I don't know.  I mean whatever

2     happened to the records when Memorial took over I

3     understand that they stored them or whatever

4     happened, I don't know.

5          Q.    Let's talk about the financial records

6     that was the responsibility of your department.

7     What happened to them when Memorial took over?

8          A.    I brought with me -- When I came here

9     I brought some of the records with me, what I

10    felt I needed to have, like any Medicare cost

11    reports.  I brought basically Medicare cost

12    reports and plant asset listings and summaries,

13    W-2's from the year-end so I could identify any

14    employee of the hospital.  That's my only

15    documentation that I have.

16         Q.    At the present time?

17         A.    At the present time.

18         Q.    That wasn't my question.  My question

19    is, what happened to all the financial records,

20    the documents of Pembroke Pines Hospital at the

21    time it was taken over by Memorial?

22         A.    I really don't know.

23         Q.    You have no idea what happened even

24    though you were in charge of maintaining those

25    records?

# MASTER AGREEMENT

## BETWEEN

## BROWARD HEALTHCARE SYSTEM, INC.,

## GALEN HOSPITAL - PEMBROKE PINES, INC.

## AND

## SOUTH BROWARD HOSPITAL DISTRICT

## DATED AS OF JUNE 8, 1995

**EXHIBIT**

4

TABLE OF CONTENTS

**Page**

**ARTICLE I**
**DEFINITIONS**

1.1    Definitions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

**ARTICLE II**
**LEASE; PURCHASE AND SALE; AND**
**OTHER FINANCIAL ARRANGEMENTS**

2.1    Leased Assets . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
2.2    Purchased Assets . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
2.3    Excluded Assets . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
2.4    Assumed Liabilities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
2.5    Excluded Liabilities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
2.6    Purchase Price . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
2.7    Inventory and Supplies. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
2.8    No Warranties. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
2.9    Medicare, Medicaid and Third Party Payor Liability. . . . . . . . . . . . . . . 9

**ARTICLE III**
**REPRESENTATIONS AND WARRANTIES OF LANDLORD**

3.1    Organization and Good Standing of Landlord . . . . . . . . . . . . . . . . . . . 9
3.2    Consents, Authorizations and Binding Effect  . . . . . . . . . . . . . . . . . . . 9
3.3    Governmental Notices . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
3.4    Recitals. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

**ARTICLE IV**
**REPRESENTATIONS AND WARRANTIES OF TENANT**

4.1    Organization and Good Standing of Tenant  . . . . . . . . . . . . . . . . . . . . 10
4.2    Consents, Authorizations, and Binding Effect . . . . . . . . . . . . . . . . . . . 10
4.3    Recitals. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

**ARTICLE V**
**COVENANTS**

5.1    Actions by Tenant  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
5.2    Certain Employee Matters . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
5.3    Taxes and Expenses . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

-i-

| | | |
|---|---|---|
| 5.4 | Access to Leased Assets. | 13 |
| 5.5 | Access to Corporate Services | 13 |
| 5.6 | Management Information Services | 14 |
| 5.7 | National Purchasing Agreements | 14 |
| 5.8 | Certificate of Need | 14 |
| 5.9 | Medical Staffs Matters | 15 |
| 5.10 | Preservation and Access to Records after the Closing | 15 |
| 5.11 | Cooperation by Tenant | 16 |
| 5.12 | Abstract and Survey | 16 |
| 5.13 | Covenant Not to Compete | 16 |
| 5.14 | The MOB Lease. | 18 |

## ARTICLE VI
## CONDITIONS

| | | |
|---|---|---|
| 6.1 | Conditions Precedent to Landlord's Obligations | 18 |
| 6.2 | Conditions Precedent to Tenant's Obligations | 19 |

## ARTICLE VII
## CLOSING

| | | |
|---|---|---|
| 7.1 | The Closing | 20 |
| 7.2 | Documents to be Delivered to Tenant | 20 |
| 7.3 | Documents to be Delivered to Landlord | 21 |
| 7.4 | Prorations | 21 |
| 7.5 | Existing Hospital Patients | 21 |

## ARTICLE VIII
## COVENANTS AND AGREEMENTS REGARDING LIABILITIES

| | | |
|---|---|---|
| 8.1 | Covenants and Obligation of Landlord | 22 |
| 8.2 | Covenants and Obligations of Tenant | 22 |
| 8.3 | Enforcement of Covenants. | 23 |
| 8.4 | Survival of Obligations. | 23 |
| 8.5 | Brokers' and Finders' Commission | 23 |

## ARTICLE IX
## TERMINATION

| | | |
|---|---|---|
| 9.1 | Termination | 24 |
| 9.2 | Effect of Termination | 24 |

# ARTICLE X
## MISCELLANEOUS

| | | |
|---|---|---|
| 10.1 | Waivers and Amendments | 24 |
| 10.2 | Notices | 24 |
| 10.3 | Headings; Terminology | 26 |
| 10.4 | Parties in Interest | 26 |
| 10.5 | Entire Agreement | 26 |
| 10.6 | Severability | 27 |
| 10.7 | Governing Law | 27 |
| 10.8 | Successors and Assigns | 27 |
| 10.9 | Counterparts | 27 |
| 10.10 | Risk of Loss | 27 |
| 10.11 | Survival | 27 |
| 10.12 | Confidentiality | 28 |
| 10.13 | Public Announcements | 28 |
| 10.14 | Covenant of Good Faith | 28 |
| 10.15 | Legal Fees and Costs | 28 |
| 10.16 | Interpretation | 29 |
| 10.17 | Relationship of the Parties | 29 |

| | | |
|---|---|---|
| Exhibit A | - | Form of Assignment and Assumption Agreement |
| Exhibit B | - | List of Assumed Contracts |
| Exhibit C | - | Excluded Assets |
| Exhibit D | - | Lease Agreement |
| Exhibit E | - | Legal Description of Pembroke Pines Hospital |
| Exhibit F | - | [Reserved] |
| Exhibit G | - | Geographic Scope of Covenant Not to Compete |
| Exhibit H | - | [Reserved] |
| Exhibit I | - | Opinion of Counsel to Tenant |
| Exhibit J | - | Opinion of Counsel to Landlord |
| Exhibit K | - | December Balance Sheet |
| Exhibit L | - | MIS Agreement |
| Exhibit M | - | Medical Office Building Sublease |

-iii-

to medical staff privileges. Tenant shall use its best efforts to cause Memorial Physician Hospital Organization, Inc. ("Memorial PHO") to permit members of the Hospital's medical staff to become members of Memorial PHO and to become participating providers in the Memorial PHO network if they satisfy the criteria for membership therein applied on a consistent basis.

### 5.10    Preservation and Access to Records after the Closing.

(a)    After the Closing, Tenant shall keep and preserve all medical records and medical charts of patients admitted to the Hospital existing as of the Closing. Tenant acknowledges that as a result of entering into the Lease Agreement and operating the Hospital, it will gain access to patient and other information which is subject to rules and regulations concerning confidentiality. Tenant agrees to abide by any such rules and regulations relating to the confidential information it acquires. Tenant agrees after Closing to maintain the patient records at the Hospital in accordance with applicable law (including, if applicable, Section 1861(v)(i)(I) of the Social Security Act (42 U.S.C. § 1395x(v)(1)(I)) and requirements of relevant insurance carriers. Tenant will afford to the representatives of Landlord, including its counsel and accountants, full and complete access to, and copies of, any records of the Hospital at the Closing (including, without limitation, access to patient records in respect of patients treated by Landlord at the Hospital) during normal business hours after the Closing Date. In addition, Tenant shall cause its custodian of records to produce the original of any such patient records for purposes of pending litigation involving a patient to whom such records refer, as certified in writing by counsel retained by Landlord in connection with such litigation. Tenant shall cooperate with Landlord in such litigation. All confidential records of Tenant created after the Closing Date, including, without limitation, patient records will be made available pursuant to a lawful subpoena.

(b)    After the Closing, Tenant shall keep and preserve all other records of the Hospital existing as of the Closing which are delivered to Tenant by Landlord and which are required to be kept and preserved by any federal or state law or regulation. After the Closing, upon reasonable written notice by Landlord to Tenant, Landlord or its agents shall be entitled, during regular business hours, to have access to and make copies of all records pertaining to the operation of the Hospital (other than medical records which shall be governed by the provisions of Section 5.10(a)) prior to the Closing for any lawful corporate purpose.

(c)    Tenant shall not, without ninety (90) days prior written notification (the "Destruction Notice") to Landlord, destroy any records of the Hospital. Within ten (10) days of the receipt of the Destruction Notice, Landlord shall have the right, to request Tenant to deliver any such records to Landlord at the sole cost and expense of Landlord.

### 5.11    Cooperation by Tenant. In the event Landlord is required to defend against any
action, suit or proceeding arising out of a claim pertaining to the business or operations of the