UNITED STATES DISTRICT COURT FOR
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 00-6227-CIV-MORENO
Magistrate Judge Dube

JACQUELINE IAIA,

  Plaintiff,

vs.

GALEN HOSPITAL-PEMBROKE PINES,
INC., f/d/b/a PEMBROKE PINES
HOSPITAL,

  Defendant.

_____/

## DEFENDANT'S MOTION IN LIMINE AND MEMORANDUM OF LAW IN SUPPORT

  The Defendant, GALEN HOSPITAL-PEMBROKE PINES, INC., f/d/b/a PEMBROKE

PINES HOSPITAL ("Galen Hospital" or "Defendant"), by and through its undersigned attorneys,

and pursuant to this Court's Order dated January 18, 2001, hereby files this Motion in Limine to

exclude certain irrelevant or prejudicial evidence which Defendant expects Plaintiff to offer in this

case. The grounds for this Motion are fully set forth in the accompanying Memorandum of Law.

### Memorandum of Law

  The Plaintiff, JACQUELINE IAIA, has asserted claims for age discrimination under the

Florida Civil Rights Act of 1992, Florida Statutes Section 760.01 *et seq.*, and the Age Discrimination

in Employment Act of 1967, 28 U.S.C. § 621 *et seq.* These claims, and the defenses raised herein,

define the issues in this case. Based upon the deposition testimony of Plaintiff and the testimony

WPB#533608.01



elicited through numerous depositions and written discovery, Galen Hospital requests that this court

rule *in limine* to exclude certain categories of evidence which are clearly inadmissible as irrelevant,

prejudicial or inflammatory. For ease of reference, Galen Hospital sets forth an outline of the issues

raised in this Motion as follows:

**Page**

I.  **Exclude Agency Determinations As Well As Position
    Statement Submitted by Defendant** ...................................................................................2

II. **Exclude Evidence of Alleged Sexually Inappropriate Behavior by Mr. Sutphin** ........8

III. **Testimony by Plaintiff**

    a.  **Exclude Evidence of Plaintiff's Rape Prior to Moving to Florida**...................10

    b.  **Exclude Testimony by Plaintiff regarding her ability or the
        Performance of Others** .........................................................................................10

IV. **Exclude Grievances by Other Employees**.....................................................................11

V.  **Plaintiff's Damage Claim**

    a.  **Exclude Front Pay Evidence from Jury**.............................................................13

    b.  **Exclude Evidence of Failed Relationship with Boyfriend**...............................14

## I.    Exclude Agency Determinations As Well As Position Statement Submitted By Defendant[1]

On November 14, 1994, Ms. Iaia filed her Charge of Discrimination with the Florida

Commission on Human Relations.[2] The Charge was passed between the Commission and the

---

[1]    The 8/14/00 Deposition of Joseph A. Cash of the Florida Commission on Human Relations, which was filed in support of Defendant's Motion for Summary Judgment, is used to support the factual allegations in this section. The deposition shall be referred to as "Cash Deposition p. _____."

[2]    Cash Deposition, p. 10, l. 1.

EEOC, and ultimately the EEOC deferred to the Commission for its handling.[3] Yet the Commission did nothing for three years. It failed to notify Galen Hospital of Ms. Iaia's Charge until its letter of September 27, 1997;[4] it failed to assign an Investigator to the Charge until November 18, 1997.[5]

This delay substantially prejudiced Galen Hospital in its defense, both at the administrative level and before this Court. During the intervening period, the Hospital had entered into a Long Term Lease with Memorial Healthcare Systems, by which Defendant leased the Hospital and all of its assets. As a result, Galen Hospital ceased to manage, operate, or control the Hospital or any of its employees. All hospital employees ceased being employees of the Defendant and had to seek positions with the new operator. Additionally, Memorial retained control of all documents at the hospital, including personnel records, and was solely responsible for their retention and/or destruction. These events all took place before Galen Hospital was notified of Ms. Iaia's Charge alleging age discrimination, and before any steps could be taken to identify witnesses or preserve a record to defend the decisions made in the 1993 reduction-in-force.

During the investigation, Galen Hospital was unable to locate and obtain statements from the decision-makers. Confronted with the Commission's demand for a response and hampered by its lack of witnesses or documents, Defendant submitted its March 6, 1998, Position Statement to the Commission. A copy of this statement is attached to this Motion as Exhibit 1. Even under the threat of an "adverse inference" from the Commission, Defendant was unable to produce Plaintiff's personnel records since it no longer had possession or control of these documents.[6] Although the

---

[3]       Cash Deposition, p. 14.

[4]       Cash Deposition, pp. 31-32.

[5]       Cash Deposition, pp. 48-49.

[6]       Cash Deposition, pp. 52-54.

3

Commission had been advised by the Defendant that it no longer "owned" the Hospital or employed the decision makers, and although the Commission's policy in that instance is to attempt to locate the decision makers, the Commission made no attempt to contact Ms. Sutphin or the others involved in the decision to eliminate Ms. Iaia's position.[7]

At the same time, the Commission received a number of self-serving letters and affidavits from the Plaintiff (representative copies of these are attached as Exhibit 2), as well as Affidavits from two co-workers (copies of which are attached as Exhibit 3). These documents are replete with hearsay ("it is my understanding that Jackie Iaia was never offered the position"), speculation ("I believe Ms. Iaia was terminated due to age"), and otherwise inadmissible testimony (e.g., "Columbia had a reputation for discharging older employees").

On February 1, 1999, the Commission issued its Determination of Cause, finding that there was reasonable cause to believe that Ms. Iaia had been discriminated against due to her age. A copy of this determination is attached as Exhibit 4. Several months later, the EEOC—having done no investigation on its own—issued its parallel Determination of Cause, a copy of which is attached as Exhibit 5.

Galen Hospital expects, and fully anticipates, that Plaintiff will attempt to offer into evidence Defendant's 1998 Position Statement as well as the agency Determinations. For the reasons stated below, these documents are inadmissible, and Defendant requests that this Court rule *in limine* to exclude them from trial.

With respect to Defendant's Position Statement, it is clear that this document is inadmissible since it was made in the context of the agency's compromise and negotiations. Under the FCRA,

---

[7]    Cash Deposition, pp. 72-74.

4

the Commission is given the responsibility to investigate and seek conciliation of all complaints. Section 760.11(11) provides that: "[n]othing said or done in the course of such informal endeavors shall be made public or used as evidence in a subsequent civil proceeding, trial, or hearing." Similarly, in the context of statements to the EEOC, courts have recognized that an employer's statement is not admissible under Rule 408 since it is made in the context of compromise and conciliation discussions. *See Equal Employment Opportunity Commission v. Gear Petroleum, Inc.,* 948 F.2d 1542 (10th Cir. 1991); *Doss v. Frontenac,* 14 F.3d 1313 (8th Cir. 1994).

While Ms. Iaia may argue (as she does in her summary judgment response) that the statement is admissible to show Defendant has changed its explanation for the elimination of her job, and that this supports an inference of discrimination, such argument has been rejected by other courts. In *Mebane v. Sprint/United Management Co.,* 2000 WL 1472816 (D. Kansas 2000), the district court concluded that an employer's Position Statement could not be admitted on the grounds that it reflects an inconsistent theory by the employer unless there is evidence that the decision maker was consulted or participated in the drafting of the Position Statement. *Id. at 7.* This is not the evidence before this Court. The hospital's former CEO who decided to eliminate Plaintiff's position, Mr. Jerry Sutphin, testified that he was never contacted by the employer in connection with the drafting of this Position Statement.[8]

With respect to the Florida Commission's Determination of Cause, the FCRA provides that:

> The Commission's determination of reasonable cause is not admissible into evidence in any civil proceeding, including any hearing or trial, except to establish for the court the right to maintain the private right of action.

---

[8] *See* 7/24/00 Deposition of Jerry Sutphin, p. 115, l. 7.

5

Fla. Stat. § 760.11(5)  Thus, the admission of the Commission's Determination of Cause is proscribed by statute, and Defendant requests that this Court rule in limine to exclude it at trial.

With respect to the EEOC's Determination of Cause, the Eleventh Circuit has recognized a strong presumption against admission based on the considerations in Rule 403.  In *Walker v. NationsBank of Florida, N.A.*, 53 F.3d 1548 (11th Cir. 1995), the court noted that while EEOC determinations are generally admissible in bench trials, "the same liberal admissibility rule [does not apply] to determination letters in jury trials."  *Id.* at 1554.

> [T]he distinction between a bench and a jury trial may affect the district court' analysis of a determination letter's admissibility under Federal Rules of Evidence 403.
>
> > The admission of an EEOC report, in certain circumstances, may be much more likely to present the danger of creating unfair prejudice in the minds of the jury than in the mind of the trial judge, who is well aware of the limits and vagaries of administrative determinations and better able to assign the report appropriate way and no more.

*Id.* at 1554, *quoting Barfield v. Orange County*, 911 F.2d 644, 651 (11th Cir. 1990).  The court upheld the trial court's ruling *in limine* to exclude the EEOC determination because the risk of confusing the jury substantially outweighed any probative value.

In *Lee v. Executive Airlines, Inc.*, 31 F. Supp.2d 1355 (S.D. Fla. 1998), a Title VII claim, the district court granted defendant's motion in limine to exclude an EEOC determination of cause under Rule 403.  The court began by concluding that the determination had little probative value since, as with the EEOC determination in our case, it was "highly conclusory" and "did not outline . . . the evidence upon which it relied. . ."  Thus, the court concluded that the determination possessed

minimal probative value. *Id.* at 1357. Additionally, whatever limited probative value it possessed

was outweighed by the danger of unfair prejudice and confusion to the jury.

> Because the letter makes legal conclusions that do not reference any specific evidentiary basis, it will be difficult for the jury to exercise their responsibilities as the finders of fact in evaluating the evidence before them. Further, . . . it is distinctly possible that the jury will attach undue weight to the authoritative and personalized conclusions of the EEOC inspector, thus creating unfair prejudice. *See, e.g., Barfield, supra.* We find that this also constitutes a proper basis for exclusion of the Letter of Determination pursuant to Rule 403 . . .

*Id.* at 1358.

Most recently, in *Lathem v. Department of Children and Youth Services*, 172 F.3d 786 (11th

Cir. 1999), a Title VII claim, the Eleventh Circuit affirmed the court's refusal to admit an EEOC No-

Cause determination into evidence. As in our case, the *Lathem* Plaintiff argued against its admission

because the agencies had failed to interview certain witnesses or review certain documents during

the investigation. *Id.* at 791-792. Of course, that is an objection Galen Hospital has with respect to

the EEOC determination. The Hospital's decision-maker, Mr. Jerry Sutphin, was never contacted

regarding Plaintiff's claim of age discrimination until the scheduling of his deposition in July of

2000.[9] Instead, the Commission relied upon the accuracy of the Plaintiff's complaint and the

affidavits she filed.[10] Although Defendant advised the Commission that it no longer owned the

Hospital, and although the Commission's practice in that event was to try to locate the decision-

makers, it made no attempt to do so prior to making its determination.

---

[9]     7/24/00 Deposition of Jerry Sutphin, p. 75; Cash Deposition, pp. 71-73.

[10]     Cash Deposition, pp. 71-73.

The existence of age discrimination still depends on the facts of our case, not on the EEOC's conclusions regarding those facts. Given the preference against admission of EEOC determinations, and given that critical witnesses were not contacted prior to reaching this determination, and given the limited probative value and the likely risk of creating unfair prejudice to the jury, Galen Hospital requests that this Court exclude the EEOC Determination.

## II.    Exclude Evidence of Alleged Sexually Inappropriate Behavior by Mr. Sutphin

The Plaintiff's claim of age discrimination is based upon the decision by the Hospital's former CEO, Mr. Jerry Sutphin, to eliminate her position during the reduction-in-force. Yet throughout discovery, Ms. Iaia and her witnesses have detailed a variety of incidents in which Mr. Sutphin is alleged to have engaged in sexually inappropriate behavior. These include:

- That Mr. Sutphin flirted with women. Once "I took my jacket off and . . . he was looking at my breasts."[11]

- That Mr. Sutphin liked young pretty girls. When the Miami Dolphins cheerleaders once visited the Hospital, "he was ogling at them."[12]

- That on several occasions during Department Head meetings, Mr. Sutphin would "adjust himself" by touching his crotch.[13]

Under Rule 401, evidence is deemed relevant if it makes more or less probable any fact that is of consequence to the determination of the case. Yet even assuming that Mr. Sutphin engaged in these types of behavior, a fact he disputes in his deposition testimony, this has no relevance to any issue in the case. Ms. Iaia's claim is for **age** discrimination, not for **sex** discrimination or sexual harassment. There is no correlation between the alleged sexually inappropriate conduct and the

---

[11]    6/28/00 Deposition of Jacqueline Iaia, pp. 59-60.

[12]    6/28/00 Deposition o Jacqueline Iaia, pp. 121-122; 7/26/00 Deposition of Patricia A. Pierce, p. 55.

[13]    7/26/00 Deposition of Patricia A. Pierce, pp. 27-28.

alleged age discrimination other than to suggest that one reflects a "bad person" who is more likely than others to engage in other types of misconduct. This evidence should therefore be excluded under Rule 401.

While Plaintiff might claim that Mr. Sutphin's interest was in young women, the applicable criteria in our case is age, not sex. Unless Mr. Sutphin presented a similar interest to all younger employees, the proposed evidence is likely to confuse and mislead the jury as to the issues it will decide.

Additionally, the proposed evidence is likely to confuse the jury by suggesting that sexually inappropriate conduct can show a propensity to engage in other types of misconduct, such as age discrimination. Although not relevant, it might easily be perceived as being so by the jury and, thus, should be excluded under Rule 403. In *Rauh v. Coine*, 744 F. Supp. 1181 (D.D.C. 1990), a claim for sex discrimination, the court addressed this issue and granted the employer's motion in limine to exclude evidence of alleged race discrimination by the employer. The district court noted that the evidence was not relevant under Rule 401, and even assuming some marginal relevance, should be excluded under Rule 403 because its probative value was greatly outweighed by the risk of unfair prejudice.

> There is little reason in common experience to infer that an employer who discriminates against blacks in his employment decisions is also likely to discriminate against women . . .

*Id.* at 1183. Similarly, in *Kelly v. Boeing Petroleum Services, Inc.*, 621 F.2d 350 (5th Cir. 1995), a handicap discrimination case, the Fifth Circuit affirmed the trial court's ruling *in limine* to exclude evidence of alleged discrimination by the employer on matters other than handicap or disability. *Id.*

9

at 356-57.

The alleged sexually inappropriate behavior of Mr. Sutphin has no relevance and further risks undue confusion of the issues and misleading of the jury. Defendant requests that this court rule *in limine* to exclude this evidence at trial.

### III.    Testimony by Plaintiff

#### a.    Exclude Evidence of Plaintiff's Rape Prior to Moving to Florida

Prior to moving to Florida, Ms. Iaia resided in New York City. Her decision to relocate was the result of a tragic incident in which she was raped while living in New York. Defendant is concerned that this may arise during the course of Ms. Iaia's s testimony, and the very mention of this tragic event would serve to create an overwhelming sympathy for the Plaintiff. The evidence is excludable under Rules 401 and 403, and Defendant requests that this Court rule *in limine* to prevent any mention of this event during trial.

#### b. Exclude Evidence by Plaintiff of Her Abilities or the Performance of Others

In her deposition testimony, Ms. Iaia makes frequent reference to her own abilities and her perception of the abilities of others. For instance, she has described her job skills as "excellent" and herself as qualified for the new consolidated position.[14] She characterizes Ms. Monteiro as "immature" and later as competent but "harsh,"[15] and she describes Ms. Sutphin as incompetent and as having made bad decisions which adversely affected the Hospital.[16]

---

[14]    Deposition of Jacqueline Iaia, pp. 33 and 101.

[15]    *Id.* at pp. 78 and 82.

[16]    Deposition of Jacqueline Iaia, p. 57.

This evidence is clearly irrelevant and inadmissible. At the outset, the perception by Ms. Iaia (or by her co-workers) of her own ability is irrelevant. It is the perception of the employer (the decision-maker) that is the relevant inquiry. *Billet v. CIGNA Corp.*, 940 F.2d 812, 823 (3d Cir. 1990); *Smith v. Flax*, 618 F.2d 1062, 1067 (4th Cir. 1980). Unless a witness was involved in the specific decision making process, then their perception of the Plaintiff and others is inadmissible and should be excluded. In *Holifield v. Reno* 115 F.3d 1555 (11th Cir. 1997), a Title VII claim for race discrimination, the Eleventh Circuit noted that the ultimate decision for the jury is whether the employer intentionally discriminated against the plaintiff. Thus, the issue for determination focuses "upon the employer's belief, not the employee's own perception of his performance." Citing *Smith v. Flax* with approval, the Eleventh Circuit noted that the relevant inquiry is in the perception of the decision-maker and not that of the employees or their co-workers. *Id.* at 1565.

The ability or job performance of Ms. Iaia is simply not relevant to any issue in this case. Nor is there any relevance to Ms. Iaia's perception of Ms. Monteiro or of the Hospital's CEO, Mr. Sutphin. Thus, it is equally clear that this testimony is irrelevant and inadmissible under Rule 401, and Galen Hospital would ask that this Court exclude this category of evidence in limine.

## IV.        Exclude Grievances by Other Employees Against Defendant

In her discovery responses, Ms. Iaia identified Constance Lundstrom as a fact witness. Ms. Lundstrom is a former employee of the Hospital who was laid off when her job was eliminated. She has no personal knowledge regarding the elimination of Ms. Iaia's job but believes it must have been because of her age.[17] Ms. Lundstrom further testified that although she does not know who made the decision to eliminate her job, or the reason for the decision, she believes it was also because of

---

[17]        7/26/00 Deposition of Constance Lundstrom, pp. 20-22, 30-31.

her age and higher level of pay.[18] This type of "me too" evidence is excludable under Rules 401 and 403 due to its lack of probative value and the potential for confusion to the jury.

At the outset, this testimony is not relevant to any issue in the case brought by Ms. Iaia. The testimony has no probative value as to whether Ms. Iaia was discriminated against because of her age, since this witness has no knowledge as to the particular employment decision at issue. *See Haskell v. Kaman Corp.*, 743 F.2d 113 (2d Cir. 1984) (testimony by six former employees as to their and other terminations should have been excluded since not probative of employment decision); *Goff v. Continental Oil Co.*, 678 F.2d 593, 596-7 (5th Cir. 1992) (exclusion affirmed where "all the witnesses could have testified to were their own individualized dealings"). This type of evidence of "other employee grievances" creates the risk of unfair prejudice and confusion to the jury, since the jury might assume some connection between Ms. Lundstrom's grievance and the claim by Ms. Iaia herein. If this evidence is allowed, then Galen Hospital faces the "Hobson's Choice" to either put on evidence defending against the grievance by Ms. Lundstrom or leaving the testimony unrebutted, either of which is prejudicial.

Additionally, if Ms. Iaia seeks to offer this evidence to show a "pattern and practice" of age discrimination, then her argument clearly fails. Courts have consistently recognized that testimony regarding other employees is virtually meaningless without a statistical analysis of the work force. *Brown v. America Honda Motor Company, Inc.*, 939 F.2d 946, 952 (11th Cir. 1991); *Langston v. Carroway Methodist Hospital of Alabama, Inc.*, 840 F. Supp. 854, 863 (N.D. Ala. 1993). For instance, the proffered testimony by Ms. Lundstrom does not address how many over-40 employees were in the work force at the Hospital before and after the reduction-in-force. To say that the

---

[18]     *Id.* at 20-21.

positions of older employees may have been eliminated does not say a great deal about Defendant's practices without knowing the composition of the work force before and after the reduction. Accordingly, Galen Hospital requests that this Court exclude this evidence concerning grievances by other employees.

## V.    Plaintiff's Damage Claim

### a. Exclude Front Pay Evidence from Jury

Ms. Iaia has sought the recovery of front pay as part of her economic damages. She has identified her expert witness, Mr. Ronald Patella, C.P.A., to testify in this area. Mr. Patella's analysis of damages includes his conclusions regarding both back pay and front pay damages until the year 2009. This front pay evidence should be excluded from presentation to the jury.[19]

Front pay may be awarded as an element of damages in lieu of reinstatement where reinstatement is impractical or impossible. Typically, it is only awarded where the plaintiff has no reasonable prospect of obtaining comparable employment. *See Whittlesey v. Union Carbide Corp.*,742 F.2d 724, 729 (2d Cir. 1994). However, both the determination of whether front pay is appropriate **and** the determination of how much front pay to award are equitable matters to be determined by the court, and not by a jury. *See United States Equal Employment Opportunity Commission v. W & O, Inc.*, 213 F.3d 600, 618-19 (11th Cir. 2000) (front pay is issue for trial judge and not the jury to decide); *Ramsey v. Chrysler First, Inc.*, 861 F.2d 1541, 1545 (11th Cir. 1988) (same).

---

[19]    6/28/00 Deposition of Jacqueline Iaia, p. 174, l. 1.

If the jury were allowed to hear the exponentially larger numbers of "front pay" damages, it would only serve to confuse them as to matters which they will not decide. Accordingly, Galen Hospital requests that this court exclude from the jury any evidence concerning front pay evidence by either the plaintiff or her expert.

### b. Exclude Evidence of Failed Relationship with Boyfriend

In her deposition testimony, Plaintiff claims that her damages include a failed relationship with her live-in boyfriend after the elimination of her position. As she described, "I lost the relationship with Jim Strait."[20] In an effort to avoid unnecessary personal questions, defense counsel specifically asked if this testimony would be presented at trial before inquiring further. The deposition colloquy went as follows:

> Q.   I am sorry if you feel I am prying unnecessarily into your life, that's not my intention. But you mentioned, when I asked you about your damages, you mention that you lost your relationship with Jim Strait.
>
> If this is something that isn't going to come up again if this case is tried, I am not going to ask about it, . . .otherwise I am going to have to ask you about what you're referring to, how the loss of the job had any impact on your relationship with Mr. Strait.[21]

After a short recess, Plaintiff's counsel advised that this matter would otherwise be presented at trial. Ms. Iaia then testified as follows:

> A.   We were living together. We had just bought a home and we were fixing it up and I had my job at the hospital and he

---

[20]    6/28/00 Deposition of Jacqueline Iaia, p. 175, l. 113.

[21]    Deposition of Jacqueline Iaia, p. 177.

worked for BellSouth and he was, he was very proud of what I did and very proud of me.

And when the hospital was going through a name change from Humana to Galen he had come to that reception he was just, you know, glowing with pride and when I was let go he, he couldn't take the emotional up and down. He couldn't handle my, the disruption that this had created and that how I was just emotionally unstable.

He couldn't handle the Mary Kay business being in the house. He couldn't handle that I was always out Friday nights, and I was out on Saturday nights and Saturday days.[22]

Under any theory damages, Plaintiff's failed personal relationship is not a compensable item of damages. Accordingly, Galen Hospital requests that this Court rule *in limine* to exclude any mention of this at trial.

---

[22]    Deposition of Jacqueline Iaia, p. 178.

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing was mailed this 29 day of January, 2001, to Roderick

V. Hannah, Esq., Becker & Poliakoff, P.A., P.O. Box 9057, Ft. Lauderdale, Florida 33310-9057; and

to John F. Jankowski, Jr., Esq., John F. Jankowski, Jr., P.A., 2 South University Drive, Suite 265,

Plantation, Florida 33324.

<div style="margin-left: 40%;">

CARLTON, FIELDS, WARD, EMMANUEL,
  SMITH & CUTLER, P.A.
P.O. Box 150
West Palm Beach, FL  33402-0150
Telephone:  (561) 659-7070
Facsimile:  (561) 659-7368
Attorneys for Defendant

By: _____
    Alexander D. del Russo
    Florida Bar Number 350273

</div>

::ODMA\PCDOCS\WPB\533608\1

# MARK E. EDWARDS
## ATTORNEY AT LAW

MARK E. EDWARDS
JEANNE CASSTEVENS THOMAS
SARAH R. GALVARRO
KIP P. ROTH
SUE WILLIS-GREEN
ROBERT W. HORTON

WRITER'S DIRECT DIAL
(615) 344-2970

2501 PARK PLAZA
NASHVILLE, TENNESSEE 37203

(615) 344-2591
(615) 344-2200 FAX

March 6, 1998
Via Facsimile 850/488-5291

Ms. Linda Mathis, Investigator
Employment Investigation Unit
Florida Commission on Human Relations
325 John Knox Road, Suite 240, Building F
Tallahassee, Florida 32303-4149

Re:   *Iaia v. Galen Hospital - Pembroke Pines, Inc.*
      *f/d/b/a Pembroke Pines Hospital*
      *EEOC 15D971107 and FCHR No. 95-0414*

> **EXHIBIT**
> 1

Dear Ms. Mathis:

This letter constitutes the Corporation's statement of position and response to the Commission's request for information. Ms. Iaia alleged that she was discriminated against because of her age (49). As discussed more fully below, this charge is without merit and should be dismissed.

Counsel has prepared this letter solely for your use in your investigation and evaluation of the above-captioned case. Because counsel prepared this letter based on limited information, this statement and the representations herein are not based upon first-hand knowledge. Accordingly, counsel does not authorize or intend this letter to be used for any purpose other than that described above. The Corporation will cooperate in the investigation of this matter through counsel, and the undersigned will respond to any relevant questions or requests for information you may have now or later in your investigation.

The Corporation divested the assets relating to the Hospital in 1995. Therefore, this Corporation does not have much information relating to this matter.

The Corporation understands that Ms. Iaia was a long standing employee of the Hospital and worked for the Hospital as the Director of the Marketing Department. In that capacity, she was primarily responsible for planning, organizing and directing the marketing function of the Hospital.

000387



Iaia v. Pembroke Pines Hospital
Charge No. 15D971107 and FCHR No. 95-0414
March 3, 1998
Page 2


From late 1993 through 1994, the Hospital initiated a necessary reduction in operating costs. As part of this reduction, Ms. Iaia's position was eliminated. During this period of time, the Hospital reviewed Ms. Iaia's position in the Marketing Department along with various other management level positions and determined that the function of the Marketing Department Director could be combined with the position of the Director of Public Relations and Senior Friends.

This decision was made because the employee performing the function of the Director of Public Relations and Senior Friends was capable of performing the duties and responsibilities of both areas. Ms. Iaia was not experienced in the area of Senior Friends and could not perform that function when the positions were combined. Consequently, her position was eliminated

In order to function in the changing healthcare environment, the Hospital had to reduce its expenses, including employment expenses. The Hospital selected positions for elimination to allow for the continued provision of quality patient care when staff was reduced. These positions were eliminated based on the Hospital's goal of reducing expense through the efficient and effective restructuring of job responsibilities that also ensured quality healthcare.

Clearly Ms. Iaia was not discriminated against based on her age (46). Following the elimination of her position, her job responsibilities were absorbed by another employee. Ms. Iaia was simply terminated because the Hospital determined that it was necessary to reduce expenses.

The Hospital denies that it discriminated against Ms. Iaia and respectfully requests that this charge be dismissed.

Sincerely,

Mark E. Edwards

MEE/JWT/gek

000388

**A F F I D A V I T**

RECEIVED
FLORIDA COMMISSION ON
HUMAN RELATIONS

1997 SEP 12 PM 3:52

I, _____ Jacqueline Iaia _____ hereby say:

I have been given assurances by a representative of the Florida Commission on Human Relations that this Affidavit will be considered confidential by the Agency and the U.S. Equal Employment Opportunity Commission, if applicable, and will not be disclosed as long as the case remains open unless it becomes necessary for them to produce the Affidavit in a formal proceeding. Upon the closing of this case, the Affidavit may be subject to disclosure in accordance with Agency policies.

I am __46__ years of age; my gender is __female__; my racial identity is __White__; my social security number is __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__; and my date of birth is __6-28-48__.

I reside at: __8321 SW 44th Place__
                          (Number/Street)

| __Davie__ | __FL__ | __Broward__ | __33024__ |
|---|---|---|---|
| (City) | (State) | (County) | (Zip) |

My telephone number is (including area code): __305-962-9650__  475-8496

My complaint is against: __Pembroke Pines Hospital/Columbia Health Care Corp.__

which is located at __2301 University Dr__
                                (Number/Street)

| __Pembroke Pines__ | __FL__ | __Broward__ | __33024__ |
|---|---|---|---|
| (City) | (State) | (County) | (Zip) |

Telephone number (including area code): __305-962-9650__

Personnel Director is __Paula Adamson__. The Corporate office is located at: _____
                                (Number/Street)

| __Louisville__ | __Kentucky__ | | |
|---|---|---|---|
| (City) | (State) | (County) | (Zip) |

Telephone number (including area code): _____

My job classification is/was/applying for: __Director of Marketing/Public Relatons__
                                                          (Job Title)

My immediate supervisor is/was: __Executive Director/Jerry Sutphin__
                                              (Name/Job Title)

**EXHIBIT
2**

Page __1__ of ____

**AFFIDAVIT** continued

Please provide the following information:

a.   An exact diary of the events leading to the problem.  Be very specific as
     to dates, times and persons involved.

b.   Make a list of all persons having direct knowledge of the problems
     leading to or involved in your complaint.  Include their names, addresses,
     telephone numbers, and the nature of the information they can provide.

c.   If you are filing based on a disability/handicap, please state your
     disability/handicap, and provide a statement from your doctor.

       DO NOT WRITE ON BOTH SIDES OF PAGES WHEN RESPONDING BUT ADD MORE
       SHEETS IF NECESSARY.  IF MORE SHEETS ARE ADDED, PLEASE BE SURE
       THE PAGE WHERE THE NOTARY SIGNS IS THE LAST PAGE INDICATED;
                 THEREFORE, THE ENTIRE PACKAGE WILL BE SWORN TO

The Company came in Sept. 11, 1993. Executive Dir Jerry Sutphin was going
back to Humana with David Jones in the insurance division. In the meantime
there was a lot of rumors about lay offs. Rumors were that they wanted their
people, Columbia had a reputation for discharging older employees. Everyone
was aware of that habit. Many other hospitals had seen the same sequence of
discharge of older people. There were meetings between the administrators
and their department managers to provide lists of who were to be discharged.
They discharged key executives first, on November 11, 1993 I was laid off
but I was terminated on May 11, 1994.  On November 11th I was called in by
my boss and informed that they were closing my department. They did not
offer me a different position. I was willing to come back on a recall for
six months. I was never asked if I could work for less money or offered a
position. They gave my job to the girl who was 24 years old and making less
money. They wanted a "younger image".

**AFFIDAVIT** continued

I had developed long term benefits and was more expensive to maintain. I was told that they were closing down my department yet gave my work to someone else. She now has a business card titled director of public relations. I had good evaluations, good performance ratings and never a complaint in 20 years service about my work. If they has to cut costs they put millions in renovating cosmetic changes. They achieved a younger image by their replacements. They hired another marketing director ~~going marketing director~~ going against the necessity to downsize. The hospital is spending money courting doctors and specialists. The hospital was not losing money. They wanted to change the image of the hospital.

*(SIGNATURE)*

Sworn to and subscribed before me this

4th day of November, 1994

Notary Public
State of Florida at Large

My Commission Expires_____

000268

Page 3 of ___

A

Mrs. *[illegible]* To:
(113 8097754
Boca Raton, F. 33486

September 10, 1997

RECEIVED
FLORIDA COMMISSION ON
HUMAN RELATIONS

1997 SEP 12 PM 3: 51

FCHR No. 95-0414

Dear Mr. Cash,

As we discussed, Enclosed are the papers you Requested.

I Spoke to Ralph Ezzo's (attorney's) office, Marlene Poirier, Esq. had remembered filing this case. She stated that on the original affidavit it was marked mailed 11/7/94. It did not go out Registered mail + therefore have no receipt or any other documentation.

Sincerely,
Jackie Loia

P.S. If you have any questions you may call me at 561-750 0099

000277

13

File # FCHR NO: 95-0414

RECEIVED
FLORIDA COMMISSION ON
HUMAN RELATIONS

1998 MAR 23 AM 9: 07

Dear Mrs. Mathis,

Enclosed are papers supporting my employment status over the past 4 years with Columbia, prior to my termination. I demonstrated job duties & functions I held as the Marketing & PR Director, and one week after my termination Monique's name was on these projects. She was announced as the new Marketing & PR Director just 2 days after I was informed that my department was being closed down. All current projects were assigned to her. It's fairly obvious clear my department had not been closed down. I've also indicated in 1989-90 when from the Seniors Department. Since I had previously handled those responsibilities, held higher priority, and satisfactory plus-Excellent job performances I should have been given her job. Monique Monterion did not have any marketing or Public Relations experience. Please check each paper as some contain written notations.

Sincerely,

Jackie Faia

000319

RECEIVED
FLORIDA COMMISSION ON
HUMAN RELATIONS

98 SEP -1 PM 4: 35

FCHR NO. 95-0414

STATE OF FLORIDA

COMMISSION ON HUMAN RELATIONS

WARNING: The making or giving of false statements in this
proceeding is punishable under Section 837.12, 837.021 or
837.06, Florida Statutes.

AFFIDAVIT

State of Florida        )
County of _____)
Connie Vierra After being duly sworn, deposes and says:

1.  Please state your full legal name, address and any
    positions you held with Pembroke Pines Hospital.  If you
    are no longer employed there, please state why you are no
    longer employed.                    *Dir of Physicians Referal Service*
    *Constance Lundstrom*               *Eliminated Job position*
    *3333 NE 34 ST*
    *Apt 1219*
    *Ft. Lauderdale, FL 33308*

2.  Did you know or work with Ms. Jackie Iaia at Pembroke
    Pines?  If so, why do you believe Ms. Iaia was terminated
    from her position as Marketing Director?

    *Yes I was associated with Jackie*
    *And her position was Eliminated also.*

**EXHIBIT**

**3**

000400

*Constance Lundstrom*

3. Ms. Iaia believes that her discharge was based on her
   age, and that Ms. Monique Montero her replacement, had no
   experience in Marketing but was under forty years of age,
   and was retained instead of Ms. Iaia.  Please state what
   you know about Ms. Iaia's lay off, and whether I have the
   hospital terminated older employees over younger ones.

   The majority of people terminated were older than 40.

   I do believe Ms Iaia was terminated due to age

4. What was your experience concerning your employment?
   Were you treated fairly by the company?

   I, Also Believe I was Terminated Under False Reasons.

000401

*Constance Lundstrom*

I have read the above affidavit consisting of _5_ page(s) and swear that it is true to the best of my knowledge.

_Constance Lundstone_
Signature of Affiant

Sworn to and subscribed before me
this _28_ day of _Aug_ , 19 _98_

_Sybil Ann Ciacuelle_
Notary Public
State of Florida

**SYBIL ANN DiGIACOMO**

Sybil Ann DiGiacomo
Notary Public, State of Florida
Commission No. CC 628375
My Commission Exp. 5/30/2001
Bonded Through Fla. Notary Service & Bonding Co.

AFFIANT: SIGN AT THE BOTTOM OF EACH ADDITIONAL

PAGE, IF

ANY.

000402

3

RECEIVED
FLORIDA COMMISSION ON
HUMAN RELATIONS

**AFFIDAVIT**

1997 DEC 17 PM 12: 35

STATE OF FLORIDA
COUNTY OF BROWARD

Before me this day personally appeared Patricia Pierce who, being duly sworn, deposes and says the following:

I, Patricia Pierce, was employed at the hospital currently known as Memorial Hospital Pembroke and formerly known as Pembroke Pines Hospital, Humana Hospital Pembroke and Pembroke Pines General Hospital from August 1979 to November 1995.

In 1990, Humana acquired the hospital. Valerie Lockwood, the Director of Marketing/Public Relations at Pembroke, transferred to Humana's local corporate office in Miramar shortly after the change to Humana. Jackie Iaia, the Marketing/Public Relations Director at Humana Hospital South Broward assumed responsibility for both Humana Hospital South Broward and Humana Hospital Pembroke. In 1991, Humana elected to close down Humana Hospital South Broward and Jackie Iaia transferred permanently to Humana Hospital Pembroke.

In 1993, Humana decided to split up the HMO insurance part of the business from the hospital segment and created a new corporation, Galen Healthcare as the umbrella organization for the hospitals. The hospital was renamed Pembroke Pines Hospital at that time. Shortly thereafter, Columbia and Galen merged and Columbia took over operations at Pembroke Pines Hospital. All employees retained their seniority.

A management decision was made to consolidate the positions of the Marketing/Public Relations Director and the Director of the Seniors Program. Monique Monteiro was the Seniors Program Director at the time, a position that had reported to the Marketing/Public Relations Director in the past. Monique had been employed by the hospital for approximately three years at this point in time. Monique Monteiro was given the consolidated position and Jackie Iaia's employment after 20 years of service between South Broward and Pembroke was terminated. It is my understanding that Jackie Iaia was never offered the position prior to it being offered to Monique Monteiro.

Both women are college graduates. Monique Monteiro had a degree in leisure services from Florida State and Jackie Iaia had a degree in Social Services from the University of Charleston. Jackie Iaia had experience in both marketing/public relations and in running the seniors program. Jackie ran the seniors program at Humana South Broward for a period of time. Monique had no experience in marketing/public relations when the positions were consolidated. Jackie Iaia was in her mid-forties. Monique Monteiro was in her mid-twenties.

*Patricia Pierce*
Patricia Pierce

Sworn to and subscribed before me this ___1 9___ day of November, 1997.

_____
Signature of Notary Public

DORIS LEVINE
Printed Name

DORIS LEVINE
MY COMMISSION # CC 56993
EXPIRES: November 8, 200
Bonded Thru Notary Public Underwri

000409

Personally Known ___✓___ or produced identification _____.
Type of identification produced_____.



STATE OF FLORIDA
# Florida Commission on Human Relations

*Jeb Bush, Governor*
*Ronald M. McElrath, Executive Director*

FCHR No.: 95-0414
EEOC No.: 15D971107

MS. JACQUELINE IAIA                    Complainant
1113 S.W. 17th Street
Boca Raton, Florida 33486

COLUMBIA HEALTH CARE CORPORATION,      Respondent
d/b/a PEMBROKE PINES HOSPITAL
c/o Mark E. Edwards, Esquire
2501 Park Plaza
Nashville, Tennessee 37203

## DETERMINATION: CAUSE

On November 14, 1994, MS. JACQUELINE IAIA, Complainant, filed a Complaint of
Discrimination with the Florida Commission on Human Relations (hereafter Commission) alleging
that COLUMBIA HEALTH CARE CORPORATION, d/b/a PEMBROKE PINES HOSPITAL,
Respondent, discriminated against her on the basis of age in violation of the Florida Civil Rights
Act of 1992, sections 760.01-760.11, 509.092, Florida Statutes (1997 & Supp. 1998). An
investigation of this matter has been concluded by the Commission's Office of Employment
Investigations and Enforcement. The Commission's Office of General Counsel has read the
Investigator's Memorandum (IM) and completed its review of the content of the case file.

### FINDINGS

1.    Complainant claims in her sworn Complaint of Discrimination that she was employed
by Respondent as its Director of Marketing/Public Relations. Respondent asserts in its position
statement that Complainant was its Director of Marketing.

2.    On November 11, 1993, Respondent placed Complainant on a reduction in workforce
leave of absence for a period of six months. Exactly six months later on May 11, 1994,
Complainant was terminated. Respondent claims it was unable to find Complainant another
position.

3.    Complainant was in her mid-forties at the time of her termination.

4.    Complainant asserts she was terminated because Respondent wanted a "younger
image." Respondent states Complainant's charge is without merit. Respondent claims that
Complainant's position was eliminated because of a necessary reduction in operating costs.
According to counsel for Respondent, the position of Marketing Department Director was
combined with the position of Director of Public Relations and Senior Friends. Ms. Monique
Monteiro had been Respondent's Seniors Program Director. Ms. Monteiro, who was in her mid-
twenties, was given the new position involving the combination of positions.





FCHR No.: 95-0414
Page Two

5.    According to Respondent, Complainant was not given the new position because she did not have experience in the area of Senior Friends. Respondent felt Complainant would not be able to execute the job's duties and responsibilities.

6.    Ms. Pat Pierce, a former employee of Respondent contends in a sworn affidavit that Complainant had experience in managing a seniors program. In addition, according to the Commission's Investigation Specialist, evidence failed to indicate that Ms. Monteiro was qualified to perform Complainant's job duties. Ms. Pierce informed the Commission that Ms. Monteiro had no experience in marketing/public relations. Complainant had approximately twenty years of experience.

ANALYSIS

7.    Section 760.10(1)(a), Florida Statutes (1997 & Supp. 1998) provides:

It is an unlawful employment practice for an employer:

To discharge or to fail or refuse to hire any individual, or otherwise to discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, national origin, age, handicap, or marital status.

8.    As the findings indicate, Complainant established a prima facie case of discrimination.

9.    In its position statement, Respondent states the following:

The Corporation understands that Ms. Iaia was a long standing employee of the Hospital and worked for the Hospital as the Director of the Marketing Department. In that capacity, she was primarily responsible for planning, organizing and directing the marketing function of the Hospital.

From late 1993 through 1994, the Hospital initiated a necessary reduction in operating costs. As part of this reduction, Ms. Iaia's position was eliminated. During this period of time, the Hospital reviewed Ms. Iaia's position in the Marketing Department along with various other management level positions and determined that the function of the Marketing Department Director could be combined with the position of the Director of Public Relations and Senior Friends.

This decision was made because the employee performing the function of the Director of Public Relations and Senior Friends was capable of performing the duties and responsibilities of both areas. Ms. Iaia was not experienced in the area of Senior Friends and could not perform that function when the positions were combined. Consequently, her position was eliminated.

10.    The reason offered by Respondent for choosing Ms. Monteiro over Complainant appears to be a pretext for discrimination. The evidence indicates that Complainant had experience in managing a seniors program. In addition, evidence suggests that Ms. Monteiro lacked experience in marketing/public relations. Complainant, on the other hand, had twenty years of experience.

FCHR No.: 95-0414
Page Three

## CONCLUSION

11.  Complainant, an individual, is a "Person" within the meaning of FLA. STAT. §760.02(6) (1997 & Supp. 1998).

12.  Complainant is an "Aggrieved person" within the meaning of FLA. STAT. §760.02(10) (1997 & Supp. 1998).

13.  Complainant is an "individual" within the meaning of FLA. STAT. §760.10(1)(a) (1997 & Supp. 1998).

14.  Respondent is a "Person" within the meaning of FLA. STAT. §760.02(6) (1997 & Supp. 1998).

15.  Respondent is an "Employer" within the meaning of FLA. STAT. §760.02(7) (1997 & Supp. 1998).

16.  The Complaint of Discrimination was filed in a timely manner pursuant to FLA. STAT. §760.11(1) (1997 & Supp. 1998).

17.  The Investigator's Memorandum has been submitted by the Office of Employment Investigations and Enforcement. The Office of General Counsel has reviewed the memorandum and agrees with the recommendation of Cause made therein.

Pursuant to the authority delegated to me by Rules 60Y-2.004(2)(e) and 60Y-5.004, Florida Administrative Code, it is my determination that there is reasonable cause to believe that an unlawful employment practice has occurred.

DATED: _February 01_____, 1999        _Ronald McElrath_
                                         EXECUTIVE DIRECTOR
                                         Florida Commission on Human Relations

FILED: _February 01_____, 1999

BY: _Sharon Moultry_____
    Clerk of the Commission



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Miami District Office**

One Biscayne Tower
2 South Biscayne Blvd., Suite 2700
Miami, FL 33131
PH: (305) 536-4491
TDD: (305) 536-5721
FAX: (305) 536-4011

EEOC Charge No:15D971107
FEPA Charge No:95-0414

Jacqueline Iaia                                    Charging Party
1113 S.W. 17th Street
Boca Raton, FL 33486

Columbia Health Care Corporation                   Respondent
d/b/a Pembroke Pines Hospital
c/o Mark E. Edwards, Esq.
2501 Park Plaza
Nashville, Tennessee 37203

### DETERMINATION

Under the authority vested in me by the Commission's Procedural Regulations, I issue on behalf of the Commission, the following determination as to the merits of the subject charge.

Respondent is an employer within the meaning of the ADEA and the timeliness, deferral and all other jurisdictional requirements have been met.

Having examined the Agency's findings and the record presented, I conclude that the evidence obtained does establish a violation of the statute(s).

A review of the record presented indicated that the agency was unsuccessful in its attempt to settle the matter. The Commission now invites the parties to join with it in a collective effort toward a just resolution of the matter. Within ten (10) days of receipt of this letter the parties may indicate their willingness to enter into conciliation discussions by contacting this office.

On behalf of the Commission:

SEP 28 1999
_____                    _____
Date                                        Federico Costales
                                            District Director

```
EXHIBIT

   5
```