UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Miami Division

## Case Number: 00-6227-CIV-MORENO

JACQUELINE IAIA,

     Plaintiff,

vs.

GALEN HOSPITAL-PEMBROKE PINES, INC.
f/d/b/a PEMBROKE PINES HOSPITAL,

     Defendant.

_____/

FILED by ___ D.C.

APR - 2 2001

CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA.

## ORDER GRANTING IN PART AND DENYING IN PART
## MOTION FOR SUMMARY JUDGMENT

Plaintiff brings this action pursuant to The Age Discrimination in Employment Act, 29 U.S.C. § 621 ("ADEA"), and the Florida Civil Rights Act of 1992, Fla. Stat. § 760.01, *et seq.* ("FCRA"). Plaintiff claims she was terminated form her employment with Defendant as a Director of Public Relations and Marketing based on her age, and was replaced by a substantially younger person. Defendnat submitted its motion for summary judgment, **(D.E. No. 49)**, on **November 3, 2000**. As Plaintiff's FCRA claim is barred by the statute of limitations as set forth in Florida law, Defendant's motion for summary judgment is GRANTED for the FCRA claim. Because genuine issues of material fact exist for Plaintiff's ADEA claim, summary judgment is DENIED on this count.

Plaintiff worked for Defendant as a Director of Public Relations and Marketing until November 11, 1993 when she was notified of her termination and placed on unpaid inactive status until May 1994. At the time of her termination, Plaintiff was forty-five (45) years old and had

twenty years of experience in marketing and public relations. Plaintiff came to Galen Hospital (the "Hospital") in October of 1991. Plaintiff had transferred to the Hospital after Humana Hospital - South Broward closed. Ms. Iaia had been employed there since 1987.

Defendant avers that the Hospital was losing money in 1993 and implemented a reduction in work force in order to decrease its costs. Approximately fifty employees throughout the hospital were affected by the reduction in force ("RIF").

Ms. Monteiro, then twenty-seven (27) years old had come to the Hospital in 1990. In November 1993, Ms. Monteiro was the Director of Senior Friends. After Plaintiff was put on unpaid status, Ms. Monteiro assumed Plaintiff's job responsibilities at the request of then Chief Executive Officer of Defendant, Jerry Sutphin. These responsibilities included preparing the hospital's monthly newsletter as evidenced by the December 1993 issue that lists Ms. Monteiro as the "Editor." Mr. Sutphin departed from the hospital days after placing plaintiff on unpaid status. Some time after Mr. Sutphin's departure, Plaintiff's job position was combined with the position of the Director of Senior Friends.

On January 11, 1994, months after Mr. Sutphin had left the Hospital, Ms. Monteiro was asked by the new management if she would officially assume the responsibilities of the new position of Marketing/Public Relations Director. This new position combined the duties of Director of Public Relations and Marketing and Director of Senior Friends. With the acceptance of the offer came a ten percent (10%) salary increase. It is evident that Ms. Monteiro had substantially less experience than Plaintiff in the areas of marketing and public relations, and Ms. Monteiro admitted at her January 1994 evaluation that she needed to develop her marketing skills to properly perform the functions of this new position.

-2-

Prior to Plaintiff's termination there were two comments made by Mr. Sutphin that Plaintiff contends support her charge that age was the factor that led to her termination. Both were made at the Hospital's managers' meeting attended by over forty individuals and not specifically to her. The first comment made by Mr. Sutphin was, "If your attitude is old and complacent, you are not going to make it here." The second was, "If you are not able to cut the mustard, heads will roll."

Plaintiff offers no statistical evidence about the age of people also affected by the Fall of 1993 reduction in force to support her claims.

## Analysis

### A.    The FCRA Claim

Defendant claims that Plaintiff's FCRA claim is time barred because Ms. Iaia failed to comply with the time limitations specified by Florida law. The timing of events relevant to the statute of limitations issue is as follows:

| | |
|---|---|
| November 11, 1993: | Plaintiff is notified of her termination and placed on inactive status for six months. |
| May 11, 1994: | The six month period runs and Plaintiff is terminated. |
| November 14, 1994: | Plaintiff submits her charge of discrimination to the Florida Commission on Human Rights ("FCHR") and with the U.S. Equal Employment Opportunity Commission ("EEOC"). |
| July 25, 1995: | Plaintiff sends an amended charge to the FCHR because it allegedly lost Ms. Iaia's file. |
| January 25, 1996: | FCHR fails to make a determination whether there is reasonable cause. Plaintiff has the right to request an administrative proceeding or file a civil action under Fla. Stat. § 760.11(8). |
| March 20, 1996: | FCHR forwards complaint to Miami EEOC for investigation. |
| September 26, 1997 | FCHR notifies Ms. Iaia's employer of the charges and requests production of certain materials. |
| March 6, 1998: | Defendant submits position statement to FCHR. |
| May 11, 1998: | Four year anniversary of Plaintiff's termination date. |
| February 1, 1999: | Reasonable cause determination made by FCHR. |

December 28, 1999:   EEOC grants right to sue.
January 31, 2000:   Plaintiff commences instant suit.

Defendant claims that *Joshua v. City of Gainesville*, 768 So.2d 432 (Fla. 2000), and Fla. Stat. § 760.11(8), speak directly to the situation where the FCHR does not make a reasonable cause determination on a complaint within the 180 days. Where there is no determination made within the 180 day period, the Florida Supreme Court held, "the general four-year statute of limitations for statutory violations, section 95.11(3)(f), Florida Statutes (1995), applies to actions filed pursuant to chapter 760...." *Id.* at 433.

Plaintiff argues that *Joshua* does not speak directly to the situation where the FCHR issues a right to sue triggering a one year period under § 760.11(5) within which the aggrieved party can file suit, after the point when the four year statute of limitations period had run. Plaintiff contends that in this circumstance there is a conflict between § 760.11(5) and § 95.11(3)(f).

Plaintiff, in the instant suit, relies on the FCHR determination of February 1, 1999 in its argument that Plaintiff has a right to bring suit. Essentially Plaintiff argues that the statute of limitations period set forth in § 95.11(3)(f) is superceded where the FCHR makes a determination favorable to the aggrieved party. Under Plaintiff's scheme, the agency would be vested with the power to reset the limitations clock overriding a statute drafted by the Florida legislature and interpreted by Florida's highest court. There is no indication in Florida law that the legislature intended to vest such power in the administrative agency.

Assuming *arguendo* that the date of the amended complaint, July 25, 1995, is the date when the 180 day period of chapter 760 began to run, Plaintiff could have brought a civil action any time after January 25, 1996 until May 12, 1998 pursuant to § 760.11(8). Plaintiff did not exercise its

-4-

rights to bring its FCRA claim during that period.

Plaintiff alternatively argues that equitable tolling should save its FCRA claim. As Florida law controls this claim, only acts or circumstances enumerated in Fla. Stat. § 95.051 provide grounds for the equitable tolling of Plaintiff's claim. *Greene v. Seminole Electric Cooperative, Inc.*, 701 So.2d 646, 648 (Fla. 5th DCA 1997), *see also Cunnigham v. Pinellas County Sheriff's Department*, No.8-99-CV-550-T-25C, 2000 WL 641601, at *2 (M.D. Fla. Feb. 29, 2000) ("the only acts or circumstances that will toll the statute of limitations period are those enumerated in Fla. Stat. §95.051."). As in *Greene* no circumstance enumerated in § 95.051 has been alleged by Plaintiff. Equitable tolling is, therefore, not available to Plaintiff.

Plaintiff had an opportunity to file a civil action under the scheme set up by the legislature and Florida's highest court but allowed the limitations period to run. Plaintiff has alleged no circumstance that would cause this Court to equitably toll Plaintiff's FCRA claim. Accordingly, summary judgment is GRANTED as to Plaintiff's FCRA claim.

### B.    The ADEA Claim

The Eleventh Circuit has held that a reduction in force plaintiff who has been terminated from employment may establish a prima facie case of age discrimination by showing."(1) that he was in a protected age group and was adversely affected by an employment decision, (2) that he was qualified for his current position or to assume another position at the time of discharge, and (3) evidence by which a fact finder reasonably could conclude that the employer intended to discriminate on the basis of age in reaching that decision." *Williams v. Vitro Services Corp.*, 144 F.3d 1438, 1441 (11th Cir.1998). Plaintiff has established a *prima facie* case based on the fact that

Ms. Iaia was significantly more senior and more qualified than Ms. Monteiro who immediately began taking over Ms. Iaia's responsibilities at the request of Mr. Sutphin. Eventually Ms. Monteiro assumed a position that was a combination of the positions held by Ms. Iaia and herself. *See Tidwell v. Carter Products*, 135 F.3d 1422 (11th Cir. 1998).

In considering whether a plaintiff has presented a jury question on pretext, the Eleventh Circuit has required that the plaintiff point to facts which, if true, would present a basis for the disbelief of defendant's overall justification. *Id.* at 1426. Plaintiff points not only to her more extensive experience, but also to the issue of seniority and certain statements made by Mr. Sutphin.

In the Galen Health Center Manager's Manual, five factors are listed regarding the sequence of who is laid off in a RIF situation. Of these, seniority is the one relevant to the instant suit. In section 7.1.3 seniority is defined as, "The length of time an employee has worked for Galen (since March 1, 1993) and all Humana service prior to March 1, 1993." While Ms. Monteiro came to the Hospital at least a year before Plaintiff, Ms. Iaia had worked in Humana Hospital - South Broward since 1987. Under the rules set forth in the manager's manual, Ms. Iaia appears to have had seniority by three years. This seriously undercuts the legitimacy of the Hospital's RIF argument.

Additionally, the statement about being old and complacent presents an issue of fact when combined with the rest of the evidence even though it was made to a group of managers and not just the Plaintiff. Accordingly, summary judgment on Plaintiff's ADEA claim is DENIED.

## Conclusion

For the reasons set forth, Defendants motion for summary judgment is GRANTED as to

Plaintiff's FCRA claim, and DENIED on Plaintiff's ADEA claim.

DONE AND ORDERED in Chambers at Miami, Florida, this 2nd day of April, 2001.

_____
FEDERICO A. MORENO
UNITED STATES DISTRICT JUDGE

Copies provided to:

Roderick V. Hannah, Esq.
**BECKER & POLIAKOFF, P.A.**
P.O. Box 9057
Fort Lauderdale, FL 33310-9057

John F. Jankowski, Jr., Esq.
2 South University Drive
Plantation, FL 33324

Alexander D. del Russo, Esq.
**CARLTON FIELDS**
Esperante Building - Suite 1400
222 Lakeview Avenue
West Palm Beach, FL 33402