UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 00-6227-CIV-MORENO
Magistrate Judge: Dube

JACQUELINE IAIA,

    Plaintiff,

v.

GALEN HOSPITAL-PEMBROKE PINES,
INC.,d/b/a PEMBROKE
PINES HOSPITAL, a foreign
corporation,

    Defendant.
_____/

### PLAINTIFF'S AMENDED MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION FOR REMITTITUR OR FOR NEW TRIAL[1]

Plaintiff, JACQUELINE IAIA, for her amended memorandum of law in opposition to Defendant's Motion for Remittitur or Alternatively for New Trial, states as follows:

### I. RELEVANT FACTS AND EVIDENCE

The relevant facts and evidence for purposes of deciding Defendant's Motion are as follows:

1. The jury returned a verdict in favor of Plaintiff, and awarded Plaintiff $150,000.00 in lost back pay and benefits. Plaintiff had originally sought in excess of $363,000.00 in lost back pay and benefits.

2. Defendant put into evidence the June 8, 1995 Master Agreement ("Agreement") between Galen Hospital and the South Broward Hospital District (Memorial Healthcare), a copy

---

[1] This memorandum is being timely sent as an "Amended" memorandum to supercede the prior Memorandum. The only change from the prior Memorandum if the addition of footnote 2.

of which is attached to Defendant's Motion. Pursuant to the Agreement, Galen transferred all of the operations *and employees* of Pembroke Pines Hospital to Memorial Healthcare. Thus, as Defendant admits in its Motion (page 3), as of July 1, 1995, all of the employees employed at Pembroke Pines Hospital by Galen continued on at the hospital as employees of the successor, Memorial Healthcare.

3. Plaintiff's ADEA case against Defendant was based on the fact that she was replaced in her position by a substantially younger, substantially less qualified, and substantially less senior employee, Monique Monteiro. As Defendant admits in its Motion (page 2), when the operations of the hospital were transferred by Galen to Memorial Healthcare, Ms. Monteiro continued on as an employee at the hospital employed by Memorial Healthcare. Ms. Monteiro, thus, continued in her employment at the hospital after July 1, 1995. Significantly, her position and employment did not cease upon Galen's transfer of the operations of the hospital to Memorial Healthcare. The only change that occurred as a result of the Agreement was a change in the operator of the hospital.

## II. DEFENDANT IS NOT ENTITLED TO ANY REMITTITUR UNDER THE EVIDENCE PRESENTED AT TRIAL

Defendant argues in its Motion that it is entitled to a remittitur of the jury's damage award because Plaintiff's back pay award of $150,000.00 cannot, as a matter of law, be supported by the evidence presented at trial. Defendant's position, however, is legally incorrect, and ignores on-point precedent, both in the Eleventh Circuit and from other jurisdictions.[2]

---

[2] It should further be pointed out that Defendant's position in its Motion is an affirmative defense that was never raised in its Answer or even set forth in the Pre-Trial Stipulation. Moreover, Defendant never argued this point at the charge conference or requested a jury instruction on this issue. Defendant raised the issue for the first time only in its closing argument, and based it on the Master Agreement that Defendant had previously represented would only be introduced for purposes of rebutting the issue of Plaintiff's destroyed personnel records. Accordingly, additional grounds may exist for upholding the jury's verdict on the bais of Defendant's waiver of the defense. *See Federal Rule of Civil Procedure 12(b)*.

2

The precise issue and defense argument presented here arose in the case of *Weaver v. Casa Gallardo, Inc.*, 922 F.2d 1515 (11th Cir. 1991). In that case, the defendant argued that the plaintiff's back pay award should have been cut off on the date when the defendant sold its assets and operations to another corporation. *Weaver*, 922 F.2d at 1526. The Eleventh Circuit, however, rejected the defendant's position, finding that "[t]he sale of corporate assets to a successor corporation does not necessarily limit the predecessor corporation's liability for back pay subsequent to the sale." *Id.* The court concluded that it was proper for the district court not to reduce the back pay award because when the assets and operations of the defendant were sold, the defendant's employees, including the one who replaced the plaintiff, were transferred to, and continued in the employ of, the purchasing entity:

> When General Mills sold the assets of Casa Gallardo to the El Torito chain, those Casa Gallardo employees working in Operations-Manager positions, including Geiger [the plaintiff's replacement], as well as many other employees, transferred to and were employed by El Torito. The record thus supports the district court's conclusion that, had Weaver held the position of Operations Manager at the time of the sale to El Torito, he would have been transferred in that position to El Torito.

*Weaver*, 922 F.2d at 1527.[3]

A similar conclusion was reached by the Seventh Circuit in *Gaddy v. Abex Corp.*, 884 F.2d 312 (7th Cir. 1989). In that case, the defendant argued that the plaintiff's back pay award should have been cut off on the date that the defendant sold the plant at which the plaintiff had been employed to another company. *Gaddy*, 884 F.2d at 319. The Seventh Circuit rejected this argument because after the sale of the plant, the employees who were retained over the plaintiff continued employment in the same positions with the new plant owner:

> Although the sale of a plant often results in the restructuring and the effective elimination of former positions, here the evidence reveals that the remaining two employees in Gaddy's department continued their employment in the same positions with ABC Rail following the sale of the plant. At the time of Gaddy's layoff, her department was reduced from three positions to two. Absent the defendants' discriminatory motive, either Iniguez or Woods would have been laid off while Gaddy would have been retained and able to continue with ABC Rail as did Iniguez and Woods following her termination of employment. The back pay need not be terminated as of the sale of the plant, since Gaddy could have continued her employment with ABC Rail.

*Gaddy*, 884 F.2d at 319.

In a more recent on-point decision, the district court in *Dybala v. Landau and Heyman, Inc.*, 1998 WL 67608 (N.D. Ill. 1998), relied on the Seventh Circuit's decision in *Gaddy* to deny a defendant's request to limit a plaintiff's back pay award to the date the defendant ceased doing business and sold its assets and operations to a successor corporation. As Defendant here, the defendant in *Dybala* argued that because the defendant ceased doing business and terminated all its employees on December 31, 1993, the plaintiff was not entitled to claim back pay damages beyond that date. *Dybala*, 1998 WL 67608 at *2. The court rejected this argument because the evidence revealed that the business did not cease as of December 31, 1993, but merely "changed hands. *Id.*, at *3. The evidence also revealed that the defendant's employees were not actually "terminated" upon the sale of the business, but that they continued in the employ of the purchasing corporation in the exact same business and at the exact same location as the defendant. *Id.* Based on these facts, the court concluded that the defendant should be liable for the full amount of the back pay judgment:

> Here, too there is no evidence in the record that the sale of Oldco resulted in Landau, Ltd. imposing layoffs or a reorganization of the company. On the contrary, the

---

[3] *See also Nord v. U.S. Steel Corp.*, 758 F.2d 1462, 1473 n. 11: "Although plaintiff should not be placed in a better position than she would have been absent the discrimination, she is entitled to whatever employment opportunities the other inside sales representatives were given when the Atlanta sales office closed."

record reveals that most of the employees continued their employment. The fact that the new company engaged in the very same business as Oldco also suggests that the employees continued in their prior capacities. We hold that backpay need not be limited to the date of Oldco's closing and sale because absent discrimination, plaintiff could have continued her employment with Landau, Ltd. Oldco is liable for the full amount of the judgment.

Here, as in *Weaver, Gaddy,* and *Dybala,* Defendant simply did not close down its business and "terminate" all of its employees. Under the specific terms of the Agreement, as Defendant acknowledges in its Motion, all of the employees employed at Pembroke Pines Hospital by Galen would automatically become employees of the successor entity, Memorial Healthcare. Moreover, as Defendant admits in its motion (page 2) and as the evidence presented at trial supports, Monique Monteiro, the very person who replaced Plaintiff and was the focal point of her age discrimination claim, **continued to be employed at the hospital** after Galen transferred operation of the hospital to Memorial Healthcare. Indeed, Defendant even acknowledges in its Motion that, under the Agreement, Plaintiff's employment at the hospital could have continued with the successor entity (see Defendant's Motion at page 4). Because Ms. Monteiro's employment continued at the hospital unabated well after July 1, 1995, and because Plaintiff as the victim of discrimination is "entitled to whatever opportunities the other [employees] were given ...," *Nord v. U.S. Steel Corp.,* 758 F.2d at 1473 n. 11, the jury's verdict awarding Plaintiff $150,000.00 in back pay is fully supported by the evidence and should not be disturbed by a remittitur or otherwise.

The cases cited by Defendant in support of their position are fully distinguishable. *Goldstein v. Manhattan Industries, Inc.,* 758 F.2d 1435 (11th Cir. 1985), and *Moses v. K-Mart Corp.,* 905 F.Supp. 1054 (S.D. Fla. 1995), while dealing with the standards for ordering a remittitur, were factually different than the instant case, and did not deal with

5

the precise issue at hand: the closing of a defendant's business and its effect on back pay. Both *Munoz v. Oceanside Resorts, Inc.*, 223 F.3d 1340 (11th Cir. 2000), and *Sandlin v. Corporate Interiors, Inc.*, 972 F.2d 1212 (10th Cir. 1992), involved awards of front pay, unlike the back pay award here. In addition, in both *Munoz* and *Sandlin*, and the final case cited by Defendant – *Heibling v. Unclaimed Salvage and Freight Co.*, 489 F.Supp. 956 (E.D. Pa. 1980)[4] -- the evidence revealed a complete cessation of employment in the subject positions; neither case involved, like here, the unbroken continuation of employment of the replacement employee by a successor entity after the position was eliminated or the company ceased doing business.

Because the evidence reveals that the hospital continued to do business after July 1, 1995, that all of Galen's employees, including Monique Monteiro, continued to be employed at the hospital after July 1, 1995 with the successor operator of the hospital per the Agreement with Galen, and that, absent discrimination, Plaintiff would have continued to be employed at the hospital with the successor entity, as was Ms. Monteiro, the jury's verdict of $150,000.00 in back pay damages is not excessive, is fully supported by the trial evidence, and should not be reduced.

### III. CONCLUSION

For the foregoing reasons, and based on the on-point authority of *Weaver*, *Gaddy*, and *Dybala*, this Court must deny Defendant's Motion for Remittitur or Alternatively for new Trial.

Respectfully submitted,

BECKER & POLIAKOFF, P.A

---

[4] Indeed, the *Heibling* decision was one of the decisions relied upon by the defendant in support of its rejected position in *Dybala v. Landau and Heyman, Inc.*, 1998 WL 67608, *2 (N.D. Ill. 1998), one of the on-point cases discussed by Plaintiff above..

3111 Stirling Road, P.O. Box 9057<br>
Fort Lauderdale, FL 33310-9057<br>
954/985-4145 (BR); 954/985-4176 (fax)

By: _____
Roderick V. Hannah
Florida Bar No. 435384

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was furnished by mail and facsimile to: Alexander D. del Russo, Esq., Counsel for Defendant, Carlton Fields, Esperante Building – Suite 1400, 222 Lakeview Avenue, West Palm Beach, FL 33402-0150; and John F. Jankowski, Jr., Esq., Co-Counsel for Plaintiff, 2 South University Drive, Plantation, FL 33324, this 27th day of April, 2001.

By: _____
Roderick V. Hannah, Esq.

640475_1.DOC