UNITED STATES DISTRICT COURT FOR
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 00-6227-CIV-MORENO/ DUBÉ

JACQUELINE IAIA,

    Plaintiff,

vs.

GALEN HOSPITAL-PEMBROKE PINES,
INC., f/d/b/a PEMBROKE PINES
HOSPITAL,

    Defendant.
_____/



### DEFENDANT'S MEMORANDUM IN RESPONSE TO PLAINTIFF'S
### MOTION TO AWARD ATTORNEY'S FEES

The Defendant, GALEN HOSPITAL-PEMBROKE PINES, INC., f/d/b/a PEMBROKE PINES HOSPITAL, through undersigned counsel, files this response in opposition to Plaintiff's Motion for Award of Attorneys' Fees.

#### Introduction

Defendant does not dispute that Plaintiff is entitled to recover an award of reasonable attorneys' fees. What Defendant does dispute, and challenges herein, is the sufficiency of Plaintiff's Motion to establish her burden of proof. A review of the Motion reflects that both the suggested hourly rate and the proffered number of hours are unreasonable, excessive, and largely duplicative, and Defendant supports this conclusion with the Affidavit of Susan N. Eisenberg, Esq., an experienced labor and employment trial lawyer. Defendant would suggest that under the lodestar approach, a reasonable hourly fee would be $96,965.00. Thereafter, taking into

account the level of success obtained, this Court should reduce this fee by an additional ten percent to $87,268.50.

## Memorandum of Law

"A prevailing plaintiff in an ADEA action is entitled to an award of reasonable attorney's fees . . ." *Verbraeken v. Westinghouse Electric Corp.*, 881 F.2d 1041, 1051 (11th Cir. 1989). "The starting point in fashioning an award of attorney's fees is to multiply the number of hours reasonably expended by a reasonable hourly rate." *Loranger v. Stierheim*, 10 F.3d 776, 781 (11th Cir. 1981). Thereafter, this lodestar calculation may be adjusted by considering a number of factors, "the most important being the relation of the results obtained to the work done." *Dillard v. City of Greensboro*, 213 F.3d 1347, 1353 (11th Cir. 2000).

### 1. Reasonable Hourly Rate.

In a lodestar calculation, the starting point is a determination of a reasonable hourly rate to be charged for the work performed by Plaintiff's counsel. "A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience and reputation." *Norman v. Housing Authority of the City of Montgomery*, 836 F.2d 1282, 1299 (11th Cir. 1988). It is the Plaintiff's burden of producing evidence that her requested rate is in line with prevailing market rates. *Id.* This has been held to include, without limitation, the need for affidavits from other attorneys experienced in the area of practice, information on the education and experience of applicant's counsel, and copies of orders from other local courts reflecting hourly rate awards. *See Id.* at 1300 ("Satisfactory evidence at a minimum is more than the affidavit of the attorney performing the work"); *Manning v. School Board of Hillsborough County*, 135 F. Supp. 2d 1292 (M.D. Fla. 2001) (great weight given to affidavits provided from outside counsel).

In this case, Plaintiff has utterly failed to meet her burden of establishing a reasonable hourly rate. The Motion simply states that Plaintiff was represented by two firms: (1) Roderick Hannah of Becker & Poliakoff, P.A., and (2) Mr. John Jankowski of Law Offices of John F. Jankowski, Jr., P.A. The Motion then states that the Plaintiff agreed to compensate counsel at a rate of $225 per hour if the Court awarded attorneys' fees. Nowhere does the Motion provide any information on

- Either attorney's background and experience in labor and employment litigation
- The rates counsel charge for labor and employment litigation in other cases
- The number of employment cases each counsel has tried to verdict
- Court Orders or case law from other local courts reflecting hourly rate awards to either counsel
- Affidavits from outside counsel experienced in the labor and employment litigation, which identifies a reasonable hourly rate in this type of case

Plaintiff's Motion, and its attached Affidavits, do not even suggest that the agreed-upon fee of $225 per hour is reasonable. Yet, even had it done so, the suggestion is insufficient to meet Plaintiff's burden of justifying the rate requested. "Merely representing that a fee is reasonable is insufficient to meet [plaintiff's] burden, because satisfactory evidence requires objective evidence of rates actually billed and received in similar lawsuits. *Spradley v. Notami Hospitals of Florida, Inc.*, 892 F. Supp. 1459, 1461 (M.D. Fla. 1995). Although Plaintiff's Motion contains no information on the background or experience of either of Plaintiff's counsel, Defendant would suggest the following:

### Roderick V. Hannah, Esq.

A review of Martindale-Hubbell indicates that Mr. Hannah has been practicing law for 17 years and lists "employment law" as one of his four practice hours. Mr. Hannah was lead trial

counsel in this case. He handled all arguments and witnesses during the course of the trial and presented himself as experienced and capable. Although no other information is available, Defendant suggests a $200 hourly rate as applied to Mr. Hannah is reasonable based upon the attached Affidavit of Ms. Eisenberg.

### John F. Jankowski, Jr., Esq.

Mr. Jankowski is not listed within the Martindale-Hubbell Law Directory. An on-line search with The Florida Bar reveals that Mr. Jankowski has been admitted to practice since December 1989, and lists his practice areas as "Business Law, Family Law, Labor and Employment Law, Real Property, Probate and Trust Law." Mr. Jankowski did not handle any witnesses, present any arguments, or conduct any *voir dire* during the course of the trial (although he did attend trial in its entirety). Once again, there is a dearth of information on Mr. Jankowski's prior experience in labor and employment litigation.

Defendant would suggest that a reasonably hourly rate for Mr. Jankowski as a second-seat attorney should be $190 per hour, again based upon the Affidavit of Ms. Eisenberg. In *Manning v. School Board of Hillsborough County*, 135 F. Supp. 2d 1192 (M.D. Fla. 2001), the court awarded different hourly rates to an applicant's lead attorney ($225 per hour) and the applicant's less-experienced second counsel ($175 per hour).[1] Similarly, in *George v. GTE Directories Corp.*, 114 F. Supp.2d 1291 (M.D. Fla. 2000), the court awarded a lower hourly rate to counsel since not all of his experience was in the area of labor and employment litigation.

### 2. Reasonable Hours Expended

In computing the lodestar, the next step is to determine a reasonable number of hours

---

[1] The *Manning* court, however, was at least provided with sufficient information in each counsel's experience and education, along with supporting affidavits from outside counsel. As addressed above, Plaintiff's motion is deficient in all such respects.

expended in representing the Plaintiff. It is the Plaintiff's burden, in submitting her application, to exercise what the Supreme Court calls "billing judgment" by excluding from her fee application "excessive, redundant, or otherwise unnecessary [hours]." *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983). This process requires excluding any hours which would be unreasonable to bill to a fee-paying client and, therefore, to one's adversary. *Id.* The Eleventh Circuit has addressed the consequences of an application which fails to meet this burden:

> If fee applicants do not exercise billing judgment, courts are obligated to do it for them, to cut the amount of hours for which payment is sought, pruning out those that are "excessive, redundant or otherwise unnecessary." Courts are not authorized to be generous with the money of others, and it is as much the duty of courts to see that excessive fees and expenses are not awarded as it is to see that an adequate amount is awarded.

*American Civil Liberties Union of Georgia v. Barnes*, 168 F.3d 423, 428 (11th Cir. 1999).

As set forth below, and as addressed in the Eisenberg Affidavit, a substantial number of hours billed by Plaintiff's counsel are either excessive, duplicative, or otherwise unnecessary. Plaintiff engaged two lawyers from separate law firms to represent her. This is not necessarily improper, provided that the work done by each attorney/law firm is not redundant or duplicative. Because Messrs. Hannah and Jankowski duplicated litigation efforts in a substantial amount of their time, these duplicative entries must be pruned from any fee recovered. Additionally, excessive entries must be excluded, along with work that should not have been performed at the attorney level.

*1. Duplication of Billing*

While Plaintiff is entitled to have her attorney initiate and defend all pretrial and trial matters, she is not entitled to be compensated for a second attorney duplicating these efforts. In her Affidavit, Ms. Eisenberg has identified **133.5 hours** of time representing duplication between

Mr. Hannah and Mr. Jankowski. Her Affidavit highlights entries representing this duplication. Indeed, the billing records of both attorneys are replete with examples of duplicative work and overlapping efforts. Examples include (but are certainly not limited to) the following:

| Date | Entry | Hours |
|---|---|---|
| 1/24/00 | **Jankowski:** Meeting with client and Rod Hannah; outline allegations for the complaint; research damages under state and federal law | 4.3 |
| | **Hannah:** Prepare complaint; meet with client and co-counsel re same | 4.0 |
| 3/15/00 | **Jankowski:** office conference with client and attorney Hannah regarding deadlines; discovery issues and depositions of potential witnesses, and evidence needed for trial; attempts to contact attorney del Russo | 3.8 |
| | **Hannah**: meet with co-counsel and plan discovery strategy; review trial order and instructions | 3.8 |
| 5/1/00 | **Jankowski**: receipt and review new trial order and docket date; advise client | .3 |
| | **Hannah**: review new trial order and pre-trial deadlines | .3 |
| 6/22/00 | **Jankowski**: meet with client in preparation of her deposition; finalize answers to interrogatories; discuss additional witnesses | 4.0 |
| | **Hannah**: meet with co-counsel and client to prepare client for deposition | 4.0 |
| 7/25/00 | **Jankowski**: meet with co-counsel regarding Pierce and Lundstrom depositions; telephone conference with Pat Pierce regarding deposition | 1.5 |
| | **Hannah**: meet with co-counsel to prepare for Pat Pierce and Connie Lundstrom depositions; telephone call with co-counsel and Pat Pierce | 1.4 |
| 11/7/00 | **Jankowski**: office conference with | 3.3 |

| | |
|---|---|
| client and Rod Hannah regarding response to Motion for Summary Judgment together with Affidavit of Pam Corliss and open discovery issues | |
| **Hannah**: meet with co-counsel to discuss response to motion for summary judgment and continuing discovery; telephone conference with expert re issues | 4.0 |

These examples are offered for illustration purposes only, and the more thorough review done in the Eisenberg Affidavit identifies a whopping 133.5 hours of duplicative or redundant work.

In *Duckworth v. Whisenant*, 97 F.3d 1393 (11th Cir. 1996), a section 1983 claim where plaintiff sought a fee award, defendant objected to items which reflected redundant billing by plaintiff's two attorneys. Since, as in our case, the billing records attested to this duplication, the Court "subtracted half of each attorney's hours" spent on the duplicative billing. *Id.* at 1398. Similarly, in *George v. GTE Directories Corp.*, 114 F. Supp.2d 1281 (M.D. Fla. 2000), a Title VII claim, defendant objected to "redundant and duplicative services" by the plaintiff's two attorneys. While the court noted nothing "inherently unreasonable" about a party having multiple attorneys, "courts should exclude hours performed by two attorneys that are unnecessary and redundant." *Id.* at 1291. To recover for tasks of more than one attorney, the burden is on the fee applicant to show a distinct contribution of each. *Id.* Since the *George* plaintiff failed to meet his burden, the court excluded all duplicative billing by the second attorney.

The rationale in *Duckworth* and *George* applies in our case. The 133.5 duplicative/redundant hours should be stricken from the fee application.

### 2. *Work Not to be Performed by Attorneys*

As reflected in the Eisenberg Affidavit, the billing records include time by Mr. Jankowski which is clerical in nature. Specifically, Mr. Jankowski's time records for April 7, 2000, states the following:

> Revise plaintiff's response to defendant's First Request to Produce; categorize and bate-stamp documents and exhibits     $3.20^2$

This item is clearly not recoverable, since the bate-stamping of documents is a clerical task that should not be performed by attorneys and cannot be recovered in an attorney's fee petition. *Rodriguez-Hernandez v. Miranda Velez*, 132 F.3d 848, 860 (1st Cir. 1998) ("clerical tasks ought not to be billed at attorney's rates, even if a lawyer performs them").

### 3. *Excessive Time Entries*

Finally, the Eisenberg Affidavit identifies a number of instances of excessive time entries. Defendant will address these instances in the order in which they appear in the Eisenberg Affidavit. In the context of these objections, it is appropriate for this court to draw on its own expertise concerning the reasonableness of time spent in providing legal services.

> "For decades the law in this circuit has been that 'the court . . . is itself an expert on the question and may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or without the aid of witnesses as to value.'"

*Norman v. Housing Authority of the City of Montgomery*, 836 F.2d 1292, 1303 (11th Cir. 1988).

---

[2] It bears noting that the Eleventh Circuit has specifically disapproved of the "block building" format used in the billing records of both attorneys--when all activities of a given day are blocked together under one time entry. "The imprecision of the 'block' billing records submitted by the plaintiffs makes it difficult, if not impossible, to calculate with any precision the number of hours an attorney devoted to a particular task in this litigation. The records often lump together all the tasks performed by an attorney on a given day without breaking out the time spent on each task." *ACLU of Georgia v. Barnes*, 168 F.3d at 429.

At the outset, Ms. Eisenberg notes that Mr. Jankowski spent 6.6 hours preparing Plaintiff's initial Request for Production and Interrogatories. Ultimately, the Interrogatories substantially followed the approved Form appearing in Appendix B of the Local Rules, and the Request for Production sought documents typically requested in age discrimination claims (personnel files, agency submissions, and so forth.) It is hard to imagine how this initial discovery could not be completed in one hour or less.

Ms. Eisenberg next remarks that both attorneys spent 87 hours researching their response to Defendant's Motion for Summary Judgment. That represents a commitment of more than two full weeks of work to respond to a motion that was simply not complex. This issue is compounded by the fact that the research was done by attorneys seeking compensation at $225 per hour. While it might be more reasonable to expect this time commitment from a younger attorney billing at a lower rate (although Defendant submits the time would still be excessive), it is clearly excessive when done at the requested billable rate. It is reasonable to expect this research could have been done in one-third of the time, or at 28 hours.

Next, Ms. Eisenberg observes excessive time entries during the trial. During this four-day jury trial, Mr. Hannah billed 19.6, 20.5, 20.0 and 13 hours respectively. Similarly, Mr. Jankowski billed 18.0, 18.0, 18.0 and 13.0 hours respectively. Defendant would respectfully suggest that barring exceptional circumstances, no attorney bills more than 13 hours a day during trial unless that attorney is inexperienced or unprepared. In our case, Mr. Hannah, who handled all aspects of trial, presented himself as an experienced trial attorney. Trial time should be limited to 13 hour days.

With respect to Mr. Jankowski's trial time, Ms. Eisenberg has also objected to his hourly rate. Mr. Hannah handled all aspects of the trial. He presented and cross-examined all

witnesses, and made all arguments to the court and the jury. Although Mr. Jankowski was present, he did not otherwise participate in this trial. And while Mr. Jankowski's efforts at trial were certainly helpful, Ms. Eisenberg observes that they can and should be billed at an associate or paralegal rate. In *Barvick v. Cisneros*, 1997 WL 417994 (D.C. Kan., July 18, 1997), a successful plaintiff sought an award of attorney's fees for his two counsel through trial. Defendant objected on a number of grounds, including the fact that the second attorney, one Mr. Bishop, attended trial but did otherwise not participate. The district court noted as follows:

> Plaintiff asserts that the efforts at trial were essential for presentation of his case and cross-examination of witnesses. The court agrees that the services performed by Mr. Bishop, such as locating deposition testimony for purposes of impeachment and handling of demonstrative exhibits, are necessary services for most trials. Such services, however, need not be performed by an attorney. A trained paralegal could perform them at a lower cost. No reason exists to assess such increased costs to Defendant. Mr. Bishop examined no witnesses, presented no evidence, conducted no *voir dire*, and made no argument. His time at trial should be billed at a reasonable rate for paralegals. *Id.* at 8.

As with the *Bishop* plaintiff, Mr. Jankowski's time at trial should not be assessed against Defendant at his rate but rather at the rate of a paralegal or junior associate. In her Affidavit, Ms. Eisenberg suggests an appropriate rate for this service would be $125 per hour.

### 3. Adjustments to Lodestar

After calculating a reasonable fee by multiplying the number of hours reasonably expended by a reasonable hourly rate, the "lodestar" calculation may be adjusted based upon the results obtained by Plaintiff. *See Loranger v. Stierheim*, 10 F.3d 776, 781 (11th Cir. 1994). If the result obtained is excellent, then Plaintiff's attorneys should recover for hours reasonably expended, *Hensley v. Eckerhart*, 461 U.S. at 435, but if the results provide only a partial or limited success, then the lodestar should be reduced by an amount deemed appropriate by this

court. *Norman v. Housing Authority of the City of Montgomery*, 836 F.2d at 1302. In *Hensley*, the Supreme Court recognized no precise formula for making this adjustment. "The district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success. The court necessarily has discretion in making this equitable judgment." *Hensley v. Eckerhart*, 461 U.S. at 436-37.

In our case, the result ultimately obtained through trial represents a fraction of the amount Plaintiff sought in this lawsuit. In her answers to Interrogatories dated June 27, 2000, Plaintiff testified that the damages she sought to recover were in excess of $900,000 in back wages and benefits, along with in excess of $500,000 as both compensatory and liquidated damages. A copy of Plaintiff's Notice of Service Answers to Interrogatories dated June 27, 2000 is attached for this Court's reference as Exhibit "1." Yet Plaintiff was not successful on her claim under the Florida Civil Rights Act, and the jury awarded Plaintiff $150,000, or approximately one-tenth of the amount she initially sought. Clearly, this limited success warrants a reduction in the lodestar amount when awarding attorney's fees to Plaintiff's counsel.

In *George v. GTE Directories Corp.*, 114 F. Supp.2d, 1281 (M.D. Fla. 2000), the district court approved a five per cent downward adjustment of the lodestar to reflect plaintiff's limited success on his Title VII claims. Similarly, in *Drez v. Squibb and Sons, Inc.*, 674 F. Supp. 1432 (D.C. Kan. 1987), an ADEA plaintiff was unsuccessful in his discrimination claim but prevailed on his retaliation claim. In awarding attorney's fees, the court approved a ten per cent reduction in the lodestar due to the limited success obtained.

Given the partial or limited success obtained by the Plaintiff at trial, the rationale of these decisions clearly applies to the application for fees before this Court. Although Plaintiff

ultimately obtained only one-tenth of the amount she originally sought, Defendant would suggest that a reasonable reduction of the lodestar amount is ten per cent.

## Conclusion

This was not a complicated case. Plaintiff presented a claim for age discrimination under both the federal ADEA statute and the Florida statute. Trial was held on the ADEA claim alone and lasted only four days. Based upon the record before this Court, and based upon the Eisenberg Affidavit, Defendant would respectfully suggest a reasonable fee calculation as follows:

| Hourly Rate | Reasonable Hours Expended | |
|---|---|---|
| **Hannah** ($200/per hour) | 396.90 | |
| Deductions: | | |
| Excessive summary judgment research | -44.4 | |
| Excessive trial time (recovery limited to 13 hours per day) | - 21.1 | |
| One-half of 133.5 duplicative hours | - 66.7 | |
| | 264.7 | |
| x $200 = | | $52,940.00 |
| | | |
| **Jankowski** $190/per hour for pretrial; $125 per for trial | 351.60 | |
| Deductions: | | |
| Excessive summary judgment research | -13.6 | |
| Clerical tasks | -3.2 | |
| Excessive time initial discovery | -5.6 | |
| Excessive trial time (recovery limited to 13 hours per day) | -13.0 | |
| One-half of 133.5 duplicative hours | -66.7 | |
| | 249.50 | |
| 197.5³ x $190= | | $37,525.00 |
| 52⁴ x 125= | | $ 6,500.00 |
| | | $44,025.00 |
| | | |
| | LODESTAR TOTAL | $96,965.00 |
| | | |
| | -10% adjustment | -$ 9,696.50 |
| | **TOTAL** | **$87,268.50** |

---

[3] Pre-trial time.

[4] Trial time. Although Mr. Jankowski billed 67.0 hours to trial time, for the reasons stated in the Eisenberg Affidavit, this number is reduced to 13.0 hours per day, or 52 hours total.

Unlike the Plaintiff's bare motion, this calculation presents an objective analysis on determining the value of legal services rendered. As the Eleventh Circuit has stated, "it is as much the duty of courts to see that excessive fees and expenses are not awarded as it is to see that an adequate amount is awarded." *American Civil Liberties Union of Georgia v. Barnes*, 168 F.3d 423, 428 (11th Cir. 1999).

### CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a copy of the foregoing was mailed this 19th day of July, 2001, to Roderick V. Hannah, Esq., Becker & Poliakoff, P.A., P.O. Box 9057, Ft. Lauderdale, Florida 33310-9057; and to John F. Jankowski, Jr., Esq., John F. Jankowski, Jr., P.A., 2 South University Drive, Suite 265, Plantation, Florida 33324; and to Magistrate Judge Robert L. Dubé, 300 N.E. First Avenue, Room 236, Miami, Florida 33132.

CARLTON FIELDS, P.A.
P.O. Box 150
West Palm Beach, FL 33402-0150
Telephone:(561) 659-7070
Facsimile: (561) 659-7368
Email: adelrusso@carltonfields.com
Attorneys for Defendant

By: _____
Alexander D. del Russo
Florida Bar Number 350273



EXHIBIT 1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO: 99-1789-CIV-MORENO
Magistrate Judge Dube

JACQUELINE IAIA,

    Plaintiff,

vs.

COLUMBIA HEALTHCARE
CORPORATION d/b/a PEMBROKE
PINES HOSPITAL, a foreign corporation,

    Defendant.
_____/

## PLAINTIFF'S NOTICE OF SERVING ANSWERS TO DEFENDANT'S INTERROGATORIES

Plaintiff, JACQUELINE IAIA, by and through her undersigned counsel, hereby gives notice of the filing of the answers to the Interrogatories propounded by the Defendant, COLUMBIA HEALTHCARE CORPORATION d/b/a PEMBROKE PINES HOSPITAL.

## CERTIFICATE OF SERVICE

I HEREBY certify that a true copy of the foregoing was mailed this 27th day of June, 2000, to: Alexander David Del Russo, Esquire, LEVY, KNEEN, MARIANI, CURTIN, KORNFIELD & DEL RUSSO, P.A., 1400 Centrepark Boulevard, Suite 1000, West Palm Beach, Florida 33401.

Roderick V. Hannah, Esquire
BECKER & POLIAKOFF, P.A.
Co-counsel for Plaintiff
P.O. Box 9057
Fort Lauderdale, Florida 33310-9057

John F. Jankowski, Jr., Esq., P.A.
Attorneys for Plaintiff
Cornerstone One, Suite 220
1200 South Pine Island Road
Plantation, Florida 33324-4402
Tel: (954) 370-1026

By: _____
JOHN F. JANKOWSKI, JR.
FLA. BAR NO. 833533

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 99-1789 CIV MORENO
Magistrate Judge Dube

JACQUELINE IAIA,

    Plaintiff,

v.

COLUMBIA HEALTHCARE
CORPORATION d/b/a PEMBROKE
PINES HOSPITAL, a foreign corporation,

    Defendant.
_____/

## ANSWER TO INTERROGATORIES

1. Pat Pierce
   1526 White Hall Drive
   Fort Lauderdale, Florida 33324
   (954) 472-0210

   Connie Vicra
   Self Employed

   Ron Hoffman
   (954) 437-2057
   disabled

   James Strait
   8321 S.W. 44th Place
   Davie, Florida 33328
   (954) 475-8496
   BellSouth

   Jerry Sutphin
   Humana Corporation

2. Pat Pierce  -  See copy of affidavit that was filed with FCHR.

   Connie Vicra  -  Laid off by Columbia, age discrimination.

   Ron Hoffman  -  Laid off, discrimination claim against Columbia.

   James Strait  -  Roommate from April, 1993 through March, 1994. Effect upon work career and personal relationship after the lay off.

   Jerry Sutphin  -  Immediate supervisor at Defendant employment.

3. To be determined.

4. To be determined.

5. See attached matrix prepared in settlement at the request of the EEOC of and as part of the EEOC Conciliation Process which does not include compensatory and punitive in excess of $500,000.00..

6. Tax returns, fringe benefits, and social security documents which have already been produced.

7. Living Water Counseling at 1st Church West
   12700 West Broward Boulevard
   Plantation, Florida 33325
   (954) 452-4407

8. $10.30 per hour; varies from 36 - 40 hours per week; health and dental insurance as of December 1, 1999; paid vacation 36 - 40 hours per 6 months; 7 paid holidays; Varies 5 - 8 hours per day

_____
Jacqueline Iaia


STATE OF FLORIDA     )
                     ) ss:
COUNTY OF [_____]   )

    SWORN to and SUBSCRIBED before me this ___ day of _____, 2000, by Jacqueline Iaia, who is personally known to me or who has produced _____ as identification.

_____
Notary Public, State of Florida
Commission No.: _____
My Commission Expires: _____
(Notarial Seal)



Patricia Deutsch
My Commission CC865660
Expires August 23, 2003

10

DEC 22 '99 11:38                                             P.2

Jacqueline Hua  
Sheet1

## ANALYSIS OF LOST COMPENSATION

| | TOTAL | 1994 | 1995 | 1996 | 1997 | 1998 | 1999 | 2000 | 2001 | 2002 |
|---|---|---|---|---|---|---|---|---|---|---|
| DIFFERENCE IN ANNUAL INCOME | $1,179,416 | $36,900 | $45,468 | $46,853 | $48,258 | $49,706 | $51,197 | $52,733 | $54,315 | $55,945 |
| LOSS ON MEDICAL/DENTAL INS. | $78,025 | $2,360 | $2,478 | $2,602 | $2,732 | $2,868 | $3,012 | $3,162 | $3,320 | $3,486 |
| ANNUAL PENSION PLAN BENEFIT | $42,171 | $1,476 | $1,820 | $1,874 | $1,930 | $1,988 | $2,048 | $2,109 | $2,173 | $2,238 |
| ANNUAL THRIFT BENEFIT | $15,382 | $1,107 | $1,365 | $1,406 | $1,448 | $1,491 | $1,536 | $1,582 | $1,629 | $1,678 |
| GROWTH IN PENSION AND THRIFT ACCOUNTS | $98,750 | $103 | $342 | $628 | $945 | $1,295 | $1,681 | $2,106 | $2,574 | $3,089 |
| TOTAL ANNUAL LOST COMPENSATION | $1,418,230 | $41,946 | $51,492 | $53,362 | $55,313 | $57,348 | $59,473 | $61,693 | $64,012 | $66,436 |
| PRESENT VALUE OF LOSSES @ 4% | $ 965,420 | | | | | | | | | |

Page 1

01522

06 27 2000  16:56                                    NO.945  P08
DEC 22 '99 11:32

Sheet1

| P. 3 | 2003 | 2004 | 2005 | 2006 | 2007 | 2008 | 2009 | 2010 | 2011 | 2012 | 2013 |
|---|---|---|---|---|---|---|---|---|---|---|---|
| DIFFERENCE IN ANNUAL INCOME | $ 57,623 | $ 59,352 | $ 61,132 | $ 62,966 | $ 64,855 | $ 66,801 | $ 68,805 | $ 70,869 | $ 72,995 | $ 75,185 | $ 77,440 |
| LOSS ON MEDICAL/DENTAL INS | $ 3,661 | $ 3,844 | $ 4,036 | $ 4,238 | $ 4,450 | $ 4,672 | $ 4,906 | $ 5,151 | $ 5,408 | $ 5,679 | $ 5,963 |
| ANNUAL PENSION PLAN BENEFIT | $ 2,195 | $ 2,374 | $ 2,445 | $ 2,519 | $ 2,594 | $ 2,672 | $ 2,752 | $ 2,835 | $ 2,920 | $ 3,007 | $ 3,098 |
| A YAL THRIFT BENEFIT | $ 1,729 | $ 1,781 | $ 1,834 | $ 1,889 | $ 1,946 | $ 2,004 | $ 2,064 | $ 2,126 | $ 2,190 | $ 2,256 | $ 2,323 |
| GROWTH IN PENSION AND THRIFT ACCOUNTS | $ 3,654 | $ 4,274 | $ 4,953 | $ 5,697 | $ 6,511 | $ 7,400 | $ 8,372 | $ 9,433 | $ 10,590 | $ 11,852 | $ 13,228 |
| TOTAL ANNUAL LOST COMPENSATION | $ 68,971 | $ 71,624 | $ 74,401 | $ 77,308 | $ 80,355 | $ 83,549 | $ 86,899 | $ 90,413 | $ 94,103 | $ 97,979 | $ 102,052 |
| PRESENT VALUE OF LOSSES @ 4% | | | | | | | | | | | |

Page 2

01523